UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BASSEM AL-TAMIMI, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>SHELDON ADELSON, et al.,<br><br>  Defendants. | No. 1:16-cv-00445-TSC |

**DEFENDANT ELLIOTT ABRAMS'S OPPOSITION TO PLAINTIFFS' MOTION
TO DETERMINE PROPRIETY OF JUSTICE DEPARTMENT
LEGAL REPRESENTATION OF DEFENDANT ABRAMS**

Plaintiffs are suing, among fifty-one defendants, Elliott Abrams, a former Deputy National Security Advisor, for his alleged interactions with high-level Israeli officials regarding settlements in East Jerusalem, the West Bank, and the Gaza Strip during his tenure at the National Security Council. The Department of Justice has provided representation to Mr. Abrams in this litigation. Plaintiffs now move this Court both to investigate the Attorney General's discretionary decision to provide Mr. Abrams counsel, and to grant Plaintiffs discovery into the internal workings of the Department of Justice on representation matters. At bottom, they seek to disqualify the Department of Justice from representing Mr. Abrams. Plaintiffs' extraordinary request is based on speculation, conjecture, a misunderstanding of the facts, and a misunderstanding of the law. This Court should deny their request. The Attorney General's decision to provide representation is unreviewable. In any event, here, it was proper.

**I.   The Attorney General's Discretionary Decision To Provide Department of
      Justice Representation Is Unreviewable.**

The Attorney General's decision, through her designee, to provide Mr. Abrams representation under 28 C.F.R. § 50.15 is unreviewable. Under that regulation, a current or

former federal employee "may be provided representation" in civil suits in which the employee is sued in his or her individual capacity "when the actions for which representation is requested reasonably appear to have been performed within the scope of the employee's employment and the Attorney General or his designee determines that providing representation would otherwise be in the interest of the United States." 28 C.F.R. § 50.15(a). The language of the regulation is discretionary. *See id.* (stating that representation "may be provided"). It also allows for representation where actions for which representation is requested "*reasonably appear* to have been performed" (emphasis added) within the scope of employment. And it places the determination of whether providing representation is in the United States' interest solely in the hands of the Attorney General or her designee. In short, as another judge of this court observed, "the language of the regulation makes clear it is for the Government to determine whether federal employees should receive representation." *Rodriguez v. Shulman*, 843 F. Supp. 2d 96, 100 (D.D.C. 2012) (Boasberg, J.) (citing and quoting language of 28 C.F.R. § 50.15 in denying motion to disqualify United States Attorney's Office from representing defendant).

Indeed, since the Department of Justice's inception, the Attorney General has had the authority to decide whether to provide representation to a current or former federal employee. *See Falkowski v. E.E.O.C.*, 783 F.2d 252, 253 (D.C. Cir. 1986) ("We further observe that the Attorney General has long possessed the power to decide whether to provide counsel for a federal employee. This power dates back at least to the establishment of the Department of Justice in 1870 . . . ."). Moreover, representation decisions, as internal Department of Justice matters, lack significant substantive case law evaluating them. Furthermore, whether providing representation is "in the interest of the United States" rests solely with the Attorney General or her designee. *See* 28 C.F.R. § 50.15(a). Under *Heckler v. Chaney*, 470 U.S. 821 (1985), decisions

to provide representation under § 50.15 are therefore unreviewable. *See id.* at 831-35 (finding unreviewable agency decision not to investigate because there was no law to apply and agency had discretion and expertise in applying its resources); *cf. Falkowski v. E.E.O.C.*, 764 F.2d 907, 911 (D.C. Cir. 1985) (finding unreviewable Department decision not to provide representation). Additionally, given "the superiority of the agency as a decisionmaker" on the question of whether to provide representation, and that such a decision involves "the allocation of an agency's scarce legal resources," such a decision is "better suited to the expertise of the agency than of the courts." *Falkowski*, 764 F.2d at 911. Accordingly, the Attorney General's discretionary decision to provide Mr. Abrams representation in this matter is unreviewable. This Court should deny Plaintiffs' motion on this basis alone.

## II.     Representation of Mr. Abrams Is Proper.

Even if the decision to provide representation under 28 C.F.R. § 50.15 were somehow reviewable, which it is not, the decision is proper and Plaintiffs' motion should be denied. At the outset, courts routinely deny motions to disqualify Department of Justice representation. *See, e.g.*, *Xenos v. Hawbecker*, 441 F. App'x 128, 132 (3d Cir. 2011) (unpublished) (affirming denial of motion to disqualify government counsel); *Bontkowski v. Smith*, 305 F.3d 757, 760 (7th Cir. 2002) (noting the lower court's decision to deny motion to disqualify government counsel "was of course correct"); *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 67 (D.D.C. 2015) (denying motion to disqualify government counsel based on alleged conflict of interest); *Thomas v. Wilkins*, 61 F. Supp. 3d 13, 16 n.4 (D.D.C. 2014) (denying motion to disqualify government counsel provided to judges under 28 U.S.C. § 517); *Heimberger v. Pritzker*, No. 2:12-cv-1064, 2014 WL 1050341, at *17 (S.D. Ohio Mar. 17, 2014) (denying motion to disqualify government counsel); *Rodriguez*, 843 F. Supp. 2d at 100 (denying motion to disqualify government counsel

provided under 28 C.F.R. § 50.15); *Jolley v. Donovan*, 2:10-cv-97, 2011 WL 6400306, at *6 (S.D. Ga. Dec. 19, 2011) (denying motion to disqualify government counsel).

Such rulings are not surprising given that, even in the normal course of litigation between private parties, disqualification of counsel is "a drastic measure." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 965 F. Supp. 2d 104, 110 (D.D.C. 2013) (quoting *Konarksi v. Donovan*, 763 F. Supp. 2d 128, 135-36 (D.D.C. 2011)). *Accord United States v. Bolden*, 353 F.3d 870, 875 (10th Cir. 2003) ("Indeed, the disqualification of Government counsel is a drastic measure." (citation and internal quotations omitted)). *Cf. Steinbuch v. Cutler*, 463 F. Supp. 2d 4, 7 (D.D.C. 2006) (in the context of a motion to disqualify counsel for misconduct, noting the "extraordinarily high burden" a moving party faces). It is also rare. *See Paul v. Judicial Watch, Inc.*, 571 F. Supp. 2d 17, 20 (D.D.C. 2008) ("Disqualification of counsel is uncommon, as evidenced by the relative paucity of case law directly on point.").

This case is no exception. Mr. Abrams's alleged actions "reasonably appear to have been performed within the scope" of his federal employment, 28 C.F.R. § 50.15, as Deputy National Security Advisor. As Plaintiffs themselves repeat in their motion, their complaint alleges that Mr. Abrams interacted with senior aides to Israeli Prime Ministers Ariel Sharon and Ehud Olmert regarding Israeli settlements in East Jerusalem, the West Bank, and the Gaza Strip. *See* Dkt. No. 64, Pls.' Mot. to Disqualify, at 7-10 (citing Compl. at 10 & ¶¶ 42, 135). These alleged interactions "reasonably appear to have been performed" within the scope of Mr. Abrams's employment at the White House. Plaintiffs incorrectly assert that Mr. Abrams "only" worked at the White House for a four-year period from 2005-09. *See* Dkt. No. 64, Pls.' Mot. to Disqualify, at 19. In fact, he was also a Special Assistant to the President and Senior Director of the National Security Council from 2001-05, and thus worked there for approximately eight years. *See* Ex. 1,

4

Feb. 2, 2005 White House Personnel Announcement. The above alleged interactions with Israeli officials therefore occurred during Mr. Abrams's tenure at the White House from 2001 until the beginning of 2009, given that Ariel Sharon served as Israel's Prime Minister from 2001 until 2006 and was succeeded by Ehud Olmert, who served as Prime Minister from 2006 until early 2009. Plaintiffs' "subjective belief" that Mr. Abrams's alleged actions were not within the scope of his federal employment is thus based on incorrect facts. It also "is irrelevant." *Rodriguez*, 843 F. Supp. 2d at 100.

And in terms of the Attorney General having determined it to be "in the interest of the United States" to represent Mr. Abrams, such a determination has been made. The cases Plaintiffs cite in their motion regarding the interests of the United States, *see* Dkt. No. 64, Pls.' Mot. to Disqualify, at 10-12, are of no moment. None of those cases purports to provide an exhaustive list of the "interest of the United States." Nor do any of those cases involve circumstances remotely similar to those here. Accordingly, even if the Court were to review the Attorney General's decision, which it should not, that decision was well within her discretion.[1]

### III. Plaintiffs' Predictions About a Conflict of Interest and Other Arguments Against Representation Are Irrelevant.

Recognizing that the Attorney General is well within her unreviewable discretion to provide Mr. Abrams counsel in this litigation, Plaintiffs speculate that a conflict of interest may arise in the future and put forward other misplaced arguments. *See* Dkt. No. 64, Pls.' Mot. to

---

[1] Plaintiffs' repeated assertions that representation of Mr. Abrams is under 28 U.S.C. § 517 and is therefore inappropriate, *see* Dkt. No. 64, Pls.' Mot. to Disqualify, at 3-4, 10, are both inapposite and wrong. Representation here is under 28 C.F.R. § 50.15, not § 517. Even if representation were being provided under § 517, representation of Mr. Abrams falls well within that statute's "flexible mandate." *Clinton v. Hall*, 285 F.3d 74, 80 (D.C. Cir. 2002). Section 517 allows for representation of even private individuals, so long as a government interest is at stake. *See Clinton*, 285 F.3d at 80. In Mr. Abrams's case, the United States has a clear interest in defending a former Deputy National Security Advisor for claims raised against him based on alleged actions he undertook regarding the Israeli-Palestinian conflict.

Disqualify, at 22-23. Plaintiffs' assertion regarding a potential conflict is pure conjecture based on their own allegations, and is an argument that could be made in any civil case against a federal employee. "The *potential* always exists that the interests of the Government will be at odds with those of the employee." *Caramucci v. United States*, 12 Cl. Ct. 263, 269 (1987). That, of course, is not enough to preclude government representation. If it were, no federal employee could be represented by a Department of Justice attorney. Instead, "[t]he conflict must be existent, and it must rise to the level of a present conflict in factual or legal positions actually taken." *Id.* And even then, § 50.15 appropriately leaves it to the Department of Justice (or the federal employee defendant, who can always decline representation) to make that assessment. *See* 28 C.F.R. § 50.15(a)(12).

Similarly, Plaintiffs' references to conduct by Mr. Abrams more than a quarter-century ago in a wholly unrelated matter, *see* Dkt. No. 64, Pls.' Mot. to Disqualify, at 6, in addition to being inappropriate, are irrelevant. Even where a federal employee faces a concurrent criminal investigation or prosecution, they may nonetheless request and obtain, at the Department's discretion, representation in an unrelated civil matter. *See Department of Justice Representation of Federal Employees Who Have Been Indicted*, 1979 WL 453735, at *1 (Op. O.L.C. Apr. 3, 1979). Here, Plaintiffs gratuitously refer to a past matter entirely unrelated to their allegations. *See* Dkt. No. 64, Pls.' Mot. to Disqualify, at 6. In the process, moreover, they repeatedly and inappropriately mislabel Mr. Abrams as a "convicted felon," *Id.* at 1, 4, 16, which he clearly is not. To set the record straight, the charges against Mr. Abrams involved a misdemeanor, and in any event President George H.W. Bush issued him a full and unconditional pardon. *See In re Abrams*, 698 A.2d 6, 9 (D.C. 1997); *see also* 2 U.S.C. § 192 (classifying a violation of the statute

as "a misdemeanor"). Accordingly, Plaintiffs' arguments regarding potential future conflicts and misconstrued past events offer no assistance to their motion, which this Court should deny.

### IV. Plaintiffs Request Privileged Information.

Setting aside the unreviewable nature of the Attorney General's decision to provide Mr. Abrams with representation, and the appropriateness of that decision, Plaintiffs seek information clearly covered by the attorney-client and deliberative process privileges. Plaintiffs' baseless speculation and conjecture about "political maneuvering" and the "quick decision" involved in providing Mr. Abrams representation notwithstanding, Dkt. No. 64, Pls.' Mot. to Disqualify, at 24, their request for "limited discovery" into such purported matters, *id.*, is simply a nonstarter.

The inner workings of the Attorney General's decision to provide representation to a current or former federal employee, in addition to being unreviewable, are protected from disclosure by both the attorney-client and the deliberative process privileges. Once an individual has requested representation from the Department of Justice, those Department attorneys "who participate in any process utilized for the purpose of determining whether the Department should provide representation" undertake a "full and traditional attorney-client relationship with the employee." 28 C.F.R. § 50.15(a)(3). *See* Dkt. No. 64, Pls.' Mot. to Disqualify, at 22. Accordingly, any Department consideration of Mr. Abrams's request for representation falls within the attorney-client privilege.[2]

Furthermore, the deliberative process privilege protects all materials related to Mr. Abrams's request. This privilege "protects 'documents reflecting advisory opinions,

---

[2] Plaintiffs are therefore correct when they assert "there will be an attorney/client relationship" between Mr. Abrams and his Department counsel. Dkt. No. 64, Pls.' Mot. to Disqualify, at 22. The implication of their statement, however, is incorrect. The attorney-client relationship is not awaiting establishment at some future time—it began when Mr. Abrams requested Department representation, and continues henceforth.


recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015) (citing and quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)). The privilege's purpose is "to preserve the 'open and frank discussion' necessary for effective agency decisionmaking." *Abtew*, 808 F.3d at 898 (quoting *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001)). Without offering credence to any of Plaintiffs' suppositions about information provided in support of Mr. Abrams's request for representation, *see* Dkt. No. 64, Pls.' Mot. to Disqualify, at 13-15, any information, discussions, or documents provided or considered in the course of deciding whether to provide representation in this matter clearly fall within the deliberative process privilege. This Court should therefore deny Plaintiffs' intrusive requests.

### V. Plaintiffs' Motion Is Premature.

Lastly, to the extent Plaintiffs suggest that the operative framework for the Court to assess their motion for disqualification is the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-80 (FTCA), they are legally incorrect. Moreover, any challenge to substitution of the United States as a defendant for Mr. Abrams is premature. Inexplicably, Plaintiffs repeatedly assert that the "Department has chosen not to invoke the FTCA statutory framework." *See* Dkt. No. 64, Pls.' Mot. to Disqualify, at 2-3, 13, 22. Plaintiffs' basis for this assertion is unclear.

In any event, under the Westfall Act, Pub. L. No. 100-694, 102 Stat. 4563 (1988) (codified as amended in relevant part at 28 U.S.C. § 2679), the United States may substitute itself as the sole defendant for certain categories of claims against a federal employee for alleged acts or omissions occurring within the scope of that employee's employment, converting those claims to FTCA claims against the United States. As a general matter, where substitution of the United

States is appropriate, the United States does so at the time of, or shortly before, a responsive pleading to a complaint is due with the court. Currently, Mr. Abrams's responsive pleading is due October 6, 2016. *See* Dkt. No. 45, June 6, 2016 Order, at 1. Should the United States substitute itself as the defendant in place of Mr. Abrams for any of the claims against him, it will do so on or around that date. Assuming the United States does so, at that time, as per the Westfall Act, it will file an appropriate certification with the Court. *See* 28 U.S.C. § 2679(d). Only in the unlikely event that, under the District of Columbia's broad scope-of-employment laws, Plaintiffs were able to raise a colorable challenge to the United States' substitution would this Court perhaps need to consider this issue. Until then, any discussions about whether the Westfall Act has been or should be invoked are both premature and an unnecessary expenditure of the Court's and the parties' time and resources.

## CONCLUSION

This Court should deny Plaintiffs' extraordinary motion. Nothing in this case warrants the drastic measure of disqualifying Department of Justice counsel for Mr. Abrams. The Attorney General's decision to provide representation is unreviewable. In any event, Mr. Abrams's representation was well within her discretion. No conflicts are present. And Plaintiffs seek access to privileged information. For these reasons, and the others mentioned above, this Court should deny Plaintiffs' motion.

Dated: July 27, 2016  Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division

KALI N. BRACEY
Deputy Assistant Attorney General

RUPA BHATTACHARYYA
Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel

  /s/  *Paul E. Werner*
PAUL E. WERNER
(MD Bar, under LCvR 83.2(e))
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)
E-mail: Paul.Werner@usdoj.gov

Attorneys for Defendant Elliott Abrams