# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BASSEM AL-TAMIMI, et al., | |
| Plaintiffs, | |
| v. | No. 1:16-cv-00445-TSC |
| SHELDON ADELSON, et al., | |
| and | |
| UNITED STATES OF AMERICA, | |
| Defendants. | |

## UNITED STATES' MOTION TO DISMISS
## COUNTS I THROUGH III OF PLAINTIFFS' AMENDED COMPLAINT

Under Federal Rule of Civil Procedure 12(b)(1), the United States of America, which has substituted itself under the Westfall Act for Defendant Elliott Abrams with respect to Counts I through III of Plaintiffs' amended complaint, moves to dismiss those counts because this Court lacks jurisdiction over them. The grounds for this motion are set forth in the accompanying memorandum of supporting points and authorities. A proposed order is attached.[1]

---

[1] The Court has ordered that defendants file a motion addressing defenses under Rule 12(b)(1) only. *See* Doc. 97, Dec. 15, 2016 Order, at 1. The United States hereby reserves additional dispositive defenses it has under Federal Rule of Civil Procedure 12(b)(6), and will address those defenses if necessary in a subsequent motion, as per this Court's order. *See* Doc. 97, Dec. 15, 2016 Order, at 1.

Dated: January 27, 2017                  Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General
Civil Division

JOSHUA I. WILKENFELD
Senior Counsel
Office of the Assistant Attorney General

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel

   /s/  *Paul E. Werner*
PAUL E. WERNER
(MD Bar, under LCvR 83.2(e))
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)
E-mail: Paul.Werner@usdoj.gov

Attorneys for the United States

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BASSEM AL-TAMIMI, et al., | |
| Plaintiffs, | |
| v. | No. 1:16-cv-00445-TSC |
| SHELDON ADELSON, et al., | |
| and | |
| UNITED STATES OF AMERICA, | |
| Defendants. | |

## <u>MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES</u>

JOYCE R. BRANDA
Acting Assistant Attorney General
Civil Division

JOSHUA I. WILKENFELD
Senior Counsel
Office of the Assistant Attorney General

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel

PAUL E. WERNER
(MD Bar, under LCvR 83.2(e))
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)
E-mail: Paul.Werner@usdoj.gov

Attorneys for the United States

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 1

STANDARD OF REVIEW .................................................................................................. 3

ARGUMENT ........................................................................................................................ 4

    I.   Sovereign Immunity Bars Counts I through III of Plaintiffs' Complaint. ........................... 4

        a.   Plaintiffs have not exhausted their administrative remedies. ........................................... 4

        b.   The United States has not waived sovereign immunity for alleged violations of the law of nations. ................................................................................................................................ 5

        c.   The foreign-country exception bars Plaintiffs' claims. ..................................................... 8

        d.   The discretionary-function exception applies to Plaintiffs' claims. ................................. 9

    II.   The Political Question Doctrine Precludes Plaintiffs' Claims. .......................................... 12

        a.   The standard for determining whether a case raises political questions. ........................ 12

        b.   Plaintiffs' complaint raises issues that have a "textually demonstrable commitment" to the political branches. ..................................................................................................... 14

        c.   Plaintiffs' complaint raises issues that "lack judicially discoverable and manageable standards." ............................................................................................................................. 17

        d.   Plaintiffs' complaint raises the other *Baker* factors. ....................................................... 18

    III.  The Statutes Plaintiffs Invoke Do Not Provide Jurisdiction for Their Claims. ................ 19

        a.   The Torture Victim Protection Act does not provide jurisdiction for Plaintiffs' claims against the United States. ................................................................................................... 19

        b.   This Court does not have jurisdiction over Plaintiffs' Alien Tort Statute claims. ......... 19

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

Cases

*Adhikari v. Kellogg Brown & Root, Inc.*,
   No 15-20225, 2017 WL 33556 (5th Cir. Jan. 3, 2017) ...................................................... 20, 24

\* *Al Janko v. Gates*,
   831 F. Supp. 2d 272 (D.D.C. 2011), *aff'd on other grounds*, 741 F.3d 136 (D.C. Cir. 2014) ... 6

*Al Shimari v. CACI Premier Tech., Inc.*,
   758 F.3d 516 (4th Cir. 2014) ............................................................................................ 20

*Al-Aulaqi v. Obama*,
   727 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................................ 3

\* *Baker v. Carr*,
   369 U.S. 186 (1962) ................................................................................................... 12, 13

*Bansal v. Russ*,
   513 F. Supp. 2d 264 (E.D. Pa. 2007) ................................................................................... 6

*Corrie v. Caterpillar*,
   503 F.3d 974 (9th Cir. 2007) ............................................................................................. 12

*Daisley v. Riggs Bank, N.A.*,
   372 F. Supp. 2d 61 (D.D.C. 2005) ....................................................................................... 7

\* *Delta Savings Bank v. United States*,
   265 F.3d 1017 (9th Cir. 2001) ........................................................................................ 5, 7

\* *Doe I v. State of Israel*,
   400 F. Supp. 2d 86 (D.D.C. 2005) ............................................................................... passim

*Doe v. Drummond Co., Inc.*,
   782 F.3d 576 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 1168 (2016) ................................ 20, 24

*Doe v. Exxon Mobil Corp.*,
   69 F. Supp. 3d 75 (D.D.C. 2014) ...................................................................................... 20

*El-Shifa Pharm. Indus. Co. v. United States*,
   607 F.3d 836 (D.C. Cir. 2010) .......................................................................................... 16

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ...................................................................................................... 5, 7

*Filártiga v. Peña-Irala*,
   630 F.2d 876 (2d Cir. 1980) ............................................................................................. 21

*Gross v. United States*,
   771 F.3d 10 (D.C. Cir. 2014) ............................................................................................. 9

*Haig v. Agee*,
   453 U.S. 280 (1981) ........................................................................................................ 14

*Hall v. Clinton*,
285 F.3d 74 (D.C. Cir. 2002) .................................................................................... 7

*Harbury v. Hayden*,
522 F.3d 413 (D.C. Cir. 2008) .................................................................................. 13

*Herbert v. Nat'l Acad. of Sciences*,
974 F.2d 192 (D.C. Cir. 1992) .................................................................................... 4

*Industria Panificadora, S.A. v. United States*,
763 F. Supp. 1154 (D.D.C. 1991) ...................................................................... 10, 11

*Jaffe v. Pallotta Teamsworks*,
374 F.3d 1223 (D.C. Cir. 2004) ................................................................................ 24

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*,
478 U.S. 221 (1986) ................................................................................................... 12

*Jawad v. Gates*,
113 F. Supp. 3d 251 (D.D.C. 2015) *aff'd*, 832 F.3d 364 (D.C. Cir. 2016) ............... 8

*Jerez v. Republic of Cuba*,
777 F. Supp. 2d 6 (D.D.C. 2011) .............................................................................. 19

*Kaempe v. Myers*,
367 F.3d 958 (D.C. Cir. 2004) .................................................................................... 2

\* *Kiobel v. Royal Dutch Petroleum Co.*,
133 S. Ct. 1659 (2013) ........................................................................................ 20, 21

*Liranzo v. United States*,
690 F.3d 78 (2d Cir. 2012) .......................................................................................... 7

*Loughlin v. United States*,
393 F.3d 155 (D.C. Cir. 2004) .................................................................................. 11

*Marbury v. Madison*,
1 Cranch 137 (1803) .................................................................................................. 12

*Mastafa v. Chevron Corp.*,
770 F.3d 170 (2d Cir. 2014) ................................................................................ 20, 22

*McDonald v. Salazar*,
831 F. Supp. 2d 313 (D.D.C. 2011) ............................................................................ 2

*McIntyre v. Ohio Elections Comm'n*,
514 U.S. 334 (1995) ................................................................................................... 23

*McNeil v. United States*,
508 U.S. 106 (1993) ..................................................................................................... 5

*Mirmehdi v. United States*,
689 F.3d 975 (9th Cir. 2012) ..................................................................................... 11

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010) ................................................................................................... 20

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ................................................................................. 23

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ................................................................................. 23

*Oetjen v. Cent. Leather Co.*,
    246 U.S. 297 (1918) ................................................................................. 14

*Riddell v. Riddell Wash. Corp.*,
    866 F.2d 1480 (D.C. Cir. 1989) .................................................................. 7

*Saleh v. Titan Corp.*,
    580 F.3d 1 (D.C. Cir. 2009) ...................................................................... 19

*Sanchez ex rel. D.R.-S. v. United States*,
    671 F.3d 86 (1st Cir. 2012) ...................................................................... 11

*Sanchez-Espinoza v. Reagan*,
    770 F.2d 202 (D.C. Cir. 1985) .................................................................... 6

*Schneider v. Kissinger*,
    412 F.3d 190 (D.C. Cir. 2005) ........................................................ 12, 13, 14

*Settles v. U.S. Parole Comm'n*,
    429 F.3d 1098 (D.C. Cir. 2005) ................................................................... 4

*Simpkins v. D.C. Gov't*,
    108 F.3d 366 (D.C. Cir. 1997) .................................................................... 5

*Smith v. United States*,
    507 U.S. 197 (1993) .............................................................................. 8, 20

\* *Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) ......................................................................... passim

*Taylor v. Kellogg Brown & Root Servs., Inc.*,
    658 F.3d 402 (4th Cir. 2011) .................................................................... 18

*U.S. Ecology, Inc. v. U.S. Dep't of Interior*,
    231 F.3d 20 (D.C. Cir. 2000) ................................................................... 3, 7

\* *United States v. Gaubert*,
    499 U.S. 315 (1991) ............................................................................. 9, 11

*United States v. Mitchell*,
    445 U.S. 535 (1980) ................................................................................. 4

*United States v. Mitchell*,
    463 U.S. 206 (1983) ................................................................................. 4

*United States v. Spelar*,
    338 U.S. 217 (1949) ................................................................................. 6

*Wells v. United States*,
    851 F.2d 1471 (D.C. Cir. 1988) ................................................................ 10

\*   *Zivotofsky v. Clinton*,
132 S. Ct. 1421 (2012) ........................................................................... 12, 13, 17


Statutes

18 U.S.C. § 2441 ................................................................................................. 7

28 U.S.C. § 1346(b)(1) .................................................................................... 5, 8

28 U.S.C. § 1350 ................................................................................................. 3

28 U.S.C. § 2675(a) ............................................................................................ 5

28 U.S.C. § 2679 ................................................................................................. 3

28 U.S.C. § 2680 ............................................................................................. 8, 9

Westfall Act, Pub. L. No. 100-694, 102 Stat. 4563 (1988) ............................... 3

Torture Victim Protection Act, Pub. L. No. 102-256 (1992) ............................. 3


Rules

Fed. R. Civ. P. 12 ........................................................................................... 1, 3


Regulations

62 Fed. Reg. 52,650 (Oct. 8, 1997) ................................................................. 18

## INTRODUCTION

For the last fifty years, the tension between Israelis and Palestinians regarding East Jerusalem, the West Bank, and the Gaza Strip has simmered and, at times, boiled over. Multiple nations have exerted considerable efforts to help achieve lasting peace in the region. Numerous administrations of the United States government, including the Reagan, George H.W. Bush, Clinton, George W. Bush, and Obama administrations have worked to advance a resolution to the Israeli-Palestinian conflict, but despite these efforts, the conflict remains unresolved.

Now, Plaintiffs, a group of Palestinians, of whom some are citizens of the United States, ask this Court to intervene in this conflict. They ask this Court to award them $1 billion in damages for alleged unlawful actions and theft of land by members of the Israel Defense Forces (IDF) and by Israeli settlers. They claim that defendants—forty-nine corporations, organizations, and individuals including a former Deputy National Security Advisor—are responsible because they engaged in some ill-defined conspiracy to enable those alleged unlawful actions through fundraising, lobbying, speaking, and interactions with high-level Israeli government officials.

This Court should deny Plaintiffs' request to wade into this arena. At the most basic level, this Court lacks jurisdiction over Plaintiffs' claims against the United States, which has substituted itself as a defendant for Elliott Abrams, because the United States has not waived its sovereign immunity for such claims. In all events, this Court should leave it to the political branches to continue their efforts to address this ongoing conflict.

## BACKGROUND

Plaintiffs are ninety-six individuals comprised mostly of Palestinians from East Jerusalem, the West Bank, and the Gaza Strip, some of whom are allegedly United States citizens, and five village councils of villages presumably located within those areas. Am.

Compl. p. 1, ¶ 29. According to Plaintiffs' amended complaint, "[t]hey themselves or their relatives have been injured, tortured, incarcerated, had their homes and olive groves demolished or confiscated to promote [Israeli] settlement expansion, witnessed their children being physically attacked and traumatized by armed [Israeli] settlers and IDF veteran soldiers." *Id.*

Plaintiffs allege these harms resulted from a wide-ranging conspiracy involving forty-nine defendants, including multinational corporations such as RE/MAX, Volvo, and Hewlett-Packard, and individuals, including Elliott Abrams, former Senior Director for Near East and North African Affairs on the National Security Council who, after promotion, served as Deputy National Security Advisor handling Middle East affairs. *Id.* at pp. 1-10, ¶ 41; John J. Mearsheimer & Stephen M. Walt, *The Israel Lobby and U.S. Foreign Policy* 217 (2007) ("*The Israel Lobby*"); Doc. 72-1, Feb. 2, 2005 White House Pers. Ann.[1] According to their complaint, Mr. Abrams "urged senior aides to former [Israeli] Prime Ministers Sharon, Barack [sic], and Olmert and settlement officials to continue annexing privately-owned Palestinian property." Am. Compl. ¶ 41. He allegedly "had discreet discussions in America, Israel, and Europe" with these officials regarding "the need for additional [Israeli] settlement funding and expansion." *Id.* ¶ 134; *see id.* ¶ 125. Plaintiffs also claim that Mr. Abrams gave speeches at lobbying events, testified before Congress, and wrote articles "claiming that Palestinians are the root cause of Mideast violence" and that Israeli settlements "are not actually expanding." *Id.* ¶ 133.

---

[1] As explained below, *infra* pp. 3-4, courts may consider material outside the complaint in evaluating a motion under Rule 12(b)(1). Additionally, Plaintiffs' complaint repeatedly cites *The Israel Lobby*, *see, e.g.*, Am. Compl. ¶¶ 41, 125, and this Court may consider portions of that book in evaluating the United States' motion. *See McDonald v. Salazar*, 831 F. Supp. 2d 313, 318 (D.D.C. 2011) (noting that documents whose authenticity is not disputed may be considered in a motion to dismiss when "they are referred to in the complaint and are integral to [a plaintiff's] claims" (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)). For the Court's convenience, copies of pages from *The Israel Lobby* that Plaintiffs cite in their complaint are included in Exhibit 1, along with preceding and subsequent pages to offer context.

In their amended complaint, Plaintiffs bring three claims against Mr. Abrams: (1) war crimes, crimes against humanity, and genocide in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350 (ATS), and the Torture Victim Protection Act, Pub. L. No. 102-256, 106 Stat. 73 (1992) (TVPA) (Count II); (2) aiding and abetting the commission of war crimes (Count III); and (3) civil conspiracy to expel all non-Jews from East Jerusalem, the West Bank, and the Gaza Strip (Count I). They seek $1 billion in damages. *See* Am. Compl. ¶ 180.

The United States substituted itself as the defendant in place of Mr. Abrams on Counts I through III under the Westfall Act, Pub. L. No. 100-694, 102 Stat. 4563 (codified as amended in relevant part at 28 U.S.C. § 2679), because those three claims are based on the alleged negligent or wrongful acts or omissions of Mr. Abrams while he acted as a federal official and they fall within the provisions of the Westfall Act. *See* Doc. 103, United States' Notice of Sub., at 1-2. The United States now moves to dismiss the resulting Federal Tort Claims Act (FTCA) claims against it under Federal Rule of Civil Procedure 12(b)(1).

## **STANDARD OF REVIEW**

When faced with a motion to dismiss under Rule 12(b)(1), the party invoking the jurisdiction of the court bears the burden of establishing the court's jurisdiction. *See U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). Courts considering a motion to dismiss under that rule accept the well-pled factual allegations of the complaint as true and construe them in favor of the plaintiff. *See Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 13 (D.D.C. 2010). Those factual allegations, however, "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* at 13-14 (citation and quotation omitted). Accordingly, a court may consider material outside of the

complaint in determining whether it has jurisdiction over the claims. *See Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## ARGUMENT

This case is straightforward. Plaintiffs' claims against the United States must be dismissed because sovereign immunity—and explicit provisions of the FTCA—bar them. Those claims also raise political questions. Moreover, the statutes Plaintiffs invoke do not provide jurisdiction for their claims.

## I.      Sovereign Immunity Bars Counts I through III of Plaintiffs' Complaint.

The United States, as a sovereign, is immune from suit except to the extent it waives its immunity. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *see also Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). Such a waiver must be "unequivocally expressed" and "cannot be implied." *Mitchell*, 445 U.S. at 538 (citation and quotation omitted). For no less than four independent reasons, sovereign immunity bars Plaintiffs' FTCA claims against the United States: (1) Plaintiffs have failed to exhaust their administrative remedies; (2) the United States has not waived sovereign immunity for claims based on customary international law or the law of nations; and the claims are precluded by both (3) the foreign-country exception and (4) the discretionary-function exception to the FTCA.

### a.   Plaintiffs have not exhausted their administrative remedies.

Plaintiffs' claims against the United States are barred because Plaintiffs failed to exhaust their administrative remedies, a necessary prerequisite to any FTCA claim. The FTCA requires that, before bringing a claim against the United States in district court, an individual must present his or her claim to the "appropriate Federal agency" and either receive a denial of the claim in

writing, or wait six months since submitting the claim without receiving a response. 28 U.S.C.

§ 2675(a). *See also Simpkins v. D.C. Gov't*, 108 F.3d 366, 370 (D.C. Cir. 1997) (quoting

§ 2675(a)). This requirement is "straightforward." *McNeil v. United States*, 508 U.S. 106, 112

(1993). It is also jurisdictional. *See Simpkins*, 108 F.3d at 371 (citation omitted). Plaintiffs have

not alleged that they submitted their claims to the "appropriate Federal agency," as § 2675(a)

requires, or indeed to any federal agency. Accordingly, this Court lacks jurisdiction over their

claims against the United States and should dismiss Counts I through III on that basis.

**b. The United States has not waived sovereign immunity for alleged violations of the law of nations.**

Even if Plaintiffs had properly exhausted their administrative remedies—which they have

not—their claims against the United States would still fail because those claims are based on

alleged violations of customary international law, or "the law of nations." The ATS, a "strictly

jurisdictional" statute, does not provide an independent basis for asserting a claim against the

United States. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713 (2004). Plaintiffs' claims against the

United States are under the FTCA. Through the FTCA, as amended by the Westfall Act, the

United States has waived its immunity for tort claims arising from the negligent or wrongful acts

or omissions of federal employees that occurred within the scope of their employment. *See* 28

U.S.C. § 1346(b)(1). This waiver, however, is limited. It waives immunity only under

circumstances where the United States, if a private person, would be liable "in accordance with

the law of the place" where the act or omission occurred. *Id.*

Courts have repeatedly held that "the law of the place" refers to state law only. *See, e.g.*,

*FDIC v. Meyer*, 510 U.S. 471, 477 (1994) ("[W]e have consistently held that § 1346(b)'s

reference to the "law of the place" means law of the State—the source of substantive liability

under the FTCA) (citing cases); *see also Delta Savings Bank v. United States*, 265 F.3d 1017,

1024-25 (9th Cir. 2001) (barring FTCA claim brought under federal law because FTCA action must be based on violation of state law). *Cf. Sosa*, 542 U.S. at 707-08 (explaining that Congress exempted from the FTCA claims arising in foreign countries because it sought "to avoid application of substantive foreign law" in claims against the United States); *United States v. Spelar*, 338 U.S. 217, 221 (1949) (noting that Congress "was unwilling to subject the United States to liabilities depending upon the laws of a foreign power").

Accordingly, an FTCA claim cannot be based on alleged violations of customary international law. *See Al Janko v. Gates*, 831 F. Supp. 2d 272, 283 (D.D.C. 2011), *aff'd on other grounds*, 741 F.3d 136 (D.C. Cir. 2014); *Bansal v. Russ*, 513 F. Supp. 2d 264, 280 (E.D. Pa. 2007). In *Al Janko*, the court dismissed plaintiff's claims for violations of the ATS after substituting the United States as defendant. *Al Janko*, 831 F. Supp. 2d at 283. In doing so, the court emphasized that the United States had not waived its immunity for claims based on customary international law: "the United States has not waived sovereign immunity under the FTCA as it relates to the alleged conduct—such as violations of customary international law, the Third and Fourth Geneva Conventions, and other international standards." *Id. See also Bansal*, 513 F. Supp. 2d at 280 ("[T]he United States has not waived its sovereign immunity with respect to [customary international law] claims." (quotation and citation omitted)).[2]

All of Plaintiffs' claims against the United States are for alleged violations of customary international law or the law of nations. Indeed, Plaintiffs labelled Count II as a claim for "violation of the law of nations," Am. Compl. at p. 145, and explicitly refer in that claim to various international laws, treaties, and standards. *See id.* ¶ 184 (referring to "Nuremberg

---

[2] Additionally, the ATS does not provide a waiver of the United States' sovereign immunity. *See Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207 (D.C. Cir. 1985).

Principles," "Genocide Convention," and "Article 73 of the UN Charter"). Count III is for allegedly "aiding and abetting" the purported violations mentioned in Count II. *See id.* ¶ 228 ("This Count relies upon and specifically tracks the allegations made in Count II . . . ."). And the alleged conspiracy in Count I— "to expel all non-Jews" from East Jerusalem, the West Bank, and the Gaza Strip, *id.* at p. 103—also involves purported violations of customary international law. *See, e.g.*, *id.* ¶¶ 119, 173, 180 (referring to "Customary International Law").

That Plaintiffs' conspiracy claim nominally involves a common-law tort does not alter this analysis. Although "civil conspiracy" is a domestic common-law tort, it provides no independent cause of action. *See Hall v. Clinton*, 285 F.3d 74, 82 (D.C. Cir. 2002). Rather, it is a vehicle through which "vicarious liability for the underlying wrong" may attach to all who are party to a conspiracy, "where the requisite agreement exists among them." *Id.* (quoting *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1493 (D.C. Cir. 1989)). Because the "underlying wrong" alleged in Count I involves purported violations of customary international law—for which the United States has not waived its immunity—Count I, like Counts II and III, is barred. *See Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 73 (D.D.C. 2005).

Nor does Plaintiffs' passing invocation of a federal statute or other federal sources alter the above analysis. *See, e.g.*, Am. Compl. ¶¶ 146 (invoking an unspecified "1995 Executive Order"); 184 (invoking "U.S. War Crimes Statute" and "America's 1863 Lieber Code"); 185 (invoking 18 U.S.C. § 2441). First, as noted above, the United States has not waived its immunity for claims for damages based on purported violations of federal law. *See Meyer*, 510 U.S. at 478; *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012) ("The FTCA does not waive sovereign immunity for claims based solely on alleged violations of federal law." (citing *Meyer*, 510 U.S. at 478)); *Delta Savings*, 265 F.3d at 1024-25. Second, the United States has

waived its immunity only to the extent it would be liable if it were a private person. 28 U.S.C. § 1346(b)(1). None of these federal sources provides a private right of action or creates the requisite form of liability. *See, e.g.*, *Jawad v. Gates*, 113 F. Supp. 3d 251, 259 (D.D.C. 2015) (noting that 18 U.S.C. § 2441 does not create a private cause of action), *aff'd*, 832 F.3d 364 (D.C. Cir. 2016). Therefore, they cannot form the basis for an FTCA claim. In short, Counts I through III are based on bodies of law for which the United States has not waived its immunity. Thus, those claims must be dismissed.

> **c.   The foreign-country exception bars Plaintiffs' claims.**

Furthermore, Plaintiffs' claims against the United States regarding alleged injuries in the Middle East are barred under the FTCA's exception for claims "arising in a foreign country." *See* 28 U.S.C. § 2680(k). Plaintiffs' claims regarding alleged wrongs committed against Palestinians in East Jerusalem, the West Bank, and the Gaza Strip indisputably arose abroad. Moreover, as the Supreme Court has made clear, the reason for this exception is to prevent subjecting the United States to the application of substantive foreign law. *See Sosa*, 542 U.S. at 707-08. Foreign sources of law apply in East Jerusalem, the West Bank, and the Gaza Strip—the areas in which Plaintiffs' claims arose. Those claims thus fall squarely within the foreign-country exception.

Furthermore, the foreign-country exception extends to claims arising in any territory over which the United States does not claim sovereignty. *See Smith v. United States*, 507 U.S. 197, 198 n.1, 204 (1993) (applying foreign-country exception to bar FTCA claims arising in Antarctica, a continent over which the United States "itself does not assert a sovereign interest" (citation omitted)). The United States certainly does not claim sovereignty over East Jerusalem, the West Bank, or the Gaza Strip. Therefore, the foreign-country exception also applies to Plaintiffs' claims on this basis.

8

Additionally, even to the minimal extent Plaintiffs allege events occurring in the United States, their claims still fall within the foreign-country exception. The foreign-country exception applies to claims whenever the alleged *injuries* occurred abroad, even if alleged planning that led to the injuries occurred within the United States. The Supreme Court made that clear in *Sosa*: "We therefore hold that the FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." 542 U.S. at 712. *See also Gross v. United States*, 771 F.3d 10, 12-13 (D.C. Cir. 2014). In sum, the foreign-country exception applies to Plaintiffs' claims. They must be dismissed.

### d.   The discretionary-function exception applies to Plaintiffs' claims.

Lastly, Plaintiffs' claims against the United States are barred because they involve the alleged exercise of a discretionary function by Mr. Abrams, a former government official, and in turn, the United States. Under 28 U.S.C. § 2680(a), the United States has not waived its immunity for claims based on "the exercise or performance or the failure to exercise or perform a discretionary function" on the part of a federal employee. *Id.* This exception, known as the discretionary-function exception, applies "whether or not the discretion involved be abused." *Id.*

The Supreme Court has developed a two-part test to determine whether the discretionary-function exception applies to an FTCA claim. *See United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). First, a court assesses whether a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id.* at 322. Because the discretionary-function exception covers only acts that "involve an element of judgment or choice," *id.*, any such statute, regulation, or policy would preclude an employee from exercising his or her "judgment or choice."

Second, where an act involves "an element of judgment or choice," a court asks whether the "judgment or choice" is "of the kind that the discretionary-function exception was designed to shield." *Id.* As the Supreme Court explained, because Congress included the exception "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy" through an FTCA claim, the exception applies to "governmental actions and decisions based on considerations of public policy." *Id.* at 323. Indeed, "the most important modern policy basis for sovereign immunity is that under 'principles of separation of powers, courts should refrain from reviewing or judging the propriety of the policymaking acts of coordinate branches.'" *Wells v. United States*, 851 F.2d 1471, 1476 (D.C. Cir. 1988) (applying discretionary-function exception to FTCA claims) (citation and quotation omitted). *See also Industria Panificadora, S.A. v. United States*, 763 F. Supp. 1154, 1156 (D.D.C. 1991) (noting the discretionary-function exception "embodies the separation of powers").

This exception plainly applies to Plaintiffs' claims against the United States. No federal statute, regulation, or policy precluded Mr. Abrams from exercising his "judgment or choice" in the course of his alleged actions in the manner Plaintiffs suggest. Moreover, Plaintiffs' complaint against the United States focuses on alleged communications and interactions between Mr. Abrams—in his role as a Deputy National Security Advisor in the White House—and former Israeli Prime Minister Ariel Sharon, aides to Sharon, and aides to former Israeli Prime Ministers Ehud Olmert and Ehud Barak regarding Israeli settlements and the alleged treatment of Palestinians in the region. *See, e.g.*, Am. Compl. at p. 20, ¶¶ 41, 134, 142. In other words, Plaintiffs' claims challenge judgments and choices Mr. Abrams allegedly made regarding United States foreign policy in the Middle East, a highly geopolitically sensitive area of the world that

long has and continues to present numerous foreign policy and national security challenges for the United States.

Litigating any such choices is precisely the sort of "second-guessing" that the discretionary-function exception is meant to prevent. It is beyond peradventure that Mr. Abrams's alleged communications and interactions with high-level Israeli officials regarding Israeli settlements in the region and purported policies regarding the Middle East would have involved "decisions grounded in . . . political policy." *Gaubert*, 499 U.S. at 323.

Indeed, such alleged decisions—which typically would involve weighing and considering their effect on national security and foreign affairs, including the reactions of Israelis, Palestinians, and nations throughout the Middle East, Europe, and Asia—require the quintessential sort of "judgment or choice" that the discretionary-function exception covers. *See, e.g.*, *Sanchez ex rel. D.R.-S. v. United States*, 671 F.3d 86, 103 (1st Cir. 2012) (in applying discretionary-function exception to claims based on the Navy's allegedly negligent release of pollutants during military exercises, noting that "[t]he Navy's choices were . . . pursuant to its judgment as to how it conducted its military operations"); *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) ("Because the decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the Attorney General and implicates issues of foreign policy, . . . it falls within this exception."); *Loughlin v. United States*, 393 F.3d 155, 164 (D.C. Cir. 2004) (barring FTCA claims based on decision to bury World War I munitions because decision "required balancing competing concerns of secrecy, and safety, national security and public health" (citation omitted)); *Industria Panificadora*, 763 F. Supp. at 1158 (applying discretionary-function exception to tort claims arising from the U.S. invasion of Panama). Thus, this Court lacks jurisdiction over Plaintiffs' claims against the United States.

## II.       The Political Question Doctrine Precludes Plaintiffs' Claims.

Relatedly, Plaintiffs' claims at their core ask this Court to weigh in on numerous issues surrounding the Israeli-Palestinian conflict. Those include whether alleged actions taken or statements made by a United States official with respect to United States policy in the Middle East prompted purportedly unlawful conduct by Israeli security forces and settlers against Palestinians; as well as the determination by a domestic United States court of the ownership of lands in East Jerusalem, the West Bank, and the Gaza Strip. *See, e.g.*, Am. Compl. ¶¶ 41, 124, 150, 223, 230. Such issues are "quintessential[]" sources of non-justiciable political questions. *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 111-12 (D.D.C. 2005) (dismissing on political question grounds tort claims by Palestinians that asked the court to determine, *inter alia*, "to whom the land in the West Bank actually belongs").

### a.   The standard for determining whether a case raises political questions.

The Supreme Court has long noted that certain controversies, "in their nature political," are not fit for adjudication. *Marbury v. Madison*, 1 Cranch 137, 170 (1803). "The nonjusticiability of a political question is primarily a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 210 (1962). The political question doctrine "recognizes the limits that Article III imposes upon courts and accords appropriate respect to the other branches' exercise of their own constitutional powers." *Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1431 (2012) (Sotomayor, J., concurring). Such questions arise in "controversies which revolve around policy choices and value determinations" that are constitutionally committed to the Executive or Legislative Branches of our tripartite system of government. *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986). As such, the political question doctrine "is inherently jurisdictional." *Corrie v. Caterpillar*, 503 F.3d 974, 981 (9th Cir. 2007). *See also Schneider v.*

*Kissinger*, 412 F.3d 190, 193 (D.C. Cir. 2005) ("The principle that the courts lack jurisdiction over political decisions that are by their nature committed to the political branches to the exclusion of the judiciary is as old as the fundamental principle of judicial review." (citation omitted)).

In determining whether a plaintiff's claims raise political questions, "a court must first identify with precision the issue it is being asked to decide." *Zivotofsky*, 132 S. Ct. at 1434 (Sotomayor, J., concurring). Once the court has identified the specific issue or issues a plaintiff's complaint raises, the court evaluates whether any of the six factors the Supreme Court listed in *Baker v. Carr* apply. The *Baker* Court explained that courts should refrain from adjudicating suits raising issues that: (1) have a "textually demonstrable constitutional commitment" to the political branches; (2) lack "judicially discoverable and manageable standards" for resolution; (3) require "an initial policy determination of a kind clearly for nonjudicial discretion" for resolution; (4) require the court to express "lack of the respect due coordinate branches of government" through their resolution; (5) present "an unusual need for unquestioning adherence to a political decision already made"; or (6) risk embarrassing the government through "multifarious pronouncements by various departments on one question." 369 U.S. at 217. The first two factors are the "most important." *Harbury v. Hayden*, 522 F.3d 413, 418 (D.C. Cir. 2008). To dismiss a case on political question grounds, however, a court "need only conclude that one factor is present, not all." *Schneider*, 412 F.3d at 194.

Plaintiffs' complaint against the United States is a clear example of a case that seeks to second-guess United States foreign policy decisions and is rife with issues raising political questions. Indeed, in a similar case brought over a decade ago, a judge of this Court noted, "[i]t is hard to conceive of an issue more quintessentially political in nature than the ongoing Israeli-

13

Palestinian conflict, which has raged on the world stage with devastation on both sides for decades." *Doe I*, 400 F. Supp. 2d at 111-13 (dismissing as non-justiciable claims brought by Palestinians against United States officials, Israeli officials, and private United States and Israeli citizens for alleged violations of the ATS, the TVPA, customary international law, and the tort laws of various states arising from purported Israeli policies in the West Bank and the Gaza Strip). Like the complaint in *Doe*, Plaintiffs' complaint against the United States raises issues implicating all the *Baker* factors.

**b. Plaintiffs' complaint raises issues that have a "textually demonstrable commitment" to the political branches.**

A decision by a court on any of the issues raised by Plaintiffs' claims against the United States would directly interfere with the United States' "conduct of the foreign relations of our government," which is "committed by the Constitution to the Executive and the Legislative— 'the political'—Departments of the Government." *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918). *See also Schneider*, 412 F.3d at 195 ("It cannot then be denied that decision-making in the areas of foreign policy and national security is textually committed to the political branches."). Article II of the Constitution states that the President "shall have Power, by and with the Advice and Consent of the Senate, to make Treaties . . . [and] appoint Ambassadors," and also "shall receive Ambassadors and other public Ministers." *Id.* art. II, §§ 2-3. Article I gives Congress the power to "regulate Commerce with foreign Nations" and "To define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." *Id.* art. I, § 8. As such, the "propriety of what may be done" in the exercise of the foreign relations power "is not subject to judicial inquiry or decision." *Oetjen*, 246 U.S. at 302. *See also Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention.").

Here, Plaintiffs' complaint urges this Court to insert itself directly into the ongoing Israeli-Palestinian conflict. It asks this Court to hold the United States liable, through the purported actions of Mr. Abrams, for the alleged theft of Palestinian land by Israeli settlers in East Jerusalem, the West Bank, and the Gaza Strip. *See, e.g.*, Am. Compl. at p. 11 & n.2 (defining "Occupied Palestinian Territories" as East Jerusalem, the West Bank, the Gaza Strip, and unspecified "other Palestinian territory"); ¶¶ 41 (alleging that Abrams, while Deputy National Security Advisor, "urged senior aides to former Prime Ministers Sharon, Barack [*sic*], and Olmert . . . to continue annexing privately-owned Palestinian property"); 124 (listing "malicious theft and property destruction" and "illegal property confiscation" as acts underlying their civil conspiracy claim against the United States). Resolution of such a request "would have this Court adjudicate the rights and liabilities of the Palestinian and Israeli people." *Doe I*, 400 F. Supp. 2d at 112.[3]

Their complaint also asks this Court to determine whether alleged actions taken by the Israeli military—including IDF soldiers—and settlers that Mr. Abrams purportedly supported constituted self-defense or genocide. *See, e.g.*, Am. Compl. ¶¶ 210, 221 (alleging that Abrams promoted the "false premise" that "peaceful settlers raising their families are constantly being attacked by violent Palestinian famers [*sic*] armed with baskets to collect olives"); 124, 182-83 (alleging "criminal conduct," including the funding, promoting, encouragement, assistance, and facilitation of "wholesale violence, ethnic cleansing, arms trafficking, [and] malicious wounding

---

[3] Plaintiffs' self-serving "point of clarification" that they are not asking the Court to determine the legality of Israeli settlements, Am. Compl. at p. 30, does not alter this analysis. Plaintiffs argue that land in East Jerusalem, the West Bank, and the Gaza Strip that is in the hands of Israeli citizens belongs to Palestinians, and are asking this Court to award them damages based on that contention.

of [Israeli settlers'] Palestinian neighbors," by Abrams, and alleging that "Israeli army soldiers" are included as "war criminals").

Indeed, Plaintiffs ask this Court to order compensation for damages that allegedly arose from acts of war between Israel and other non-state actors. Many of the damages listed in Plaintiffs' "Initial Damages Database" are based on purported strikes by Israeli Air Force (IAF) fighter jets against targets in the Gaza Strip during Israel's Operation Protective Edge in 2014. *See, e.g.*, Doc. 77-3, Pls.' Ex. C., at 6-10, 12-15, 17, 18, 20 (referring to alleged damages caused by "a series of Israeli bombardments by the IAF . . . during the 2014 invasion of Gaza"). Some of the damages are even based on alleged events that occurred nearly seventy years ago involving non-state militias that existed before the establishment of the State of Israel in 1948. *See id.* at 2, 4, 11 (referring to alleged damages caused by "Haganah/Palmach/Irgun/Lehi"—all groups that existed before Israel's establishment as a state—in 1948). Whatever specific role Mr. Abrams might or might not have had in such events—and none is plausibly alleged—it would be of the sort that squarely implicates the first *Baker* factor.[4]

As the court in *Doe I* succinctly put it: "The Court can do none of this." *Doe I*, 400 F. Supp. 2d at 112. "[C]ourts are not a forum for reconsidering the wisdom of discretionary decisions made by the political branches in the realm of foreign policy or national security." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010). In sum, Plaintiffs' complaint against the United States raises numerous issues that have a "textually demonstrable commitment" to the political branches and must be dismissed.

---

[4] The United States cannot understand how Plaintiffs bring claims for the alleged actions of Mr. Abrams in 1948—when he was an infant. In any event, such claims are clearly time-barred.

### c. **Plaintiffs' complaint raises issues that "lack judicially discoverable and manageable standards."**

Moreover, the issues raised by Plaintiffs' claims against the United States lack "judicially discoverable and manageable standards." As but one example, Plaintiffs invite this Court to opine on "the root cause of violence in the Middle East." Am. Compl. ¶ 221. Plaintiffs allege that in 2005, Mr. Abrams, while a federal employee, "sabotaged" an agreement regarding freedom of movement for the inhabitants of the Gaza Strip so as to "heighten tension in the area," and thereby "convince Congress and the American people that Palestinian farmers are terrorists, not the violence-prone settlers intent on stealing their neighbors' property." *Id.* ¶ 223. Adjudicating such a claim would require this Court to assess Mr. Abrams's alleged motives in purported foreign policy engagement on behalf of the United States government, and the appropriateness of any exchanges he had. Such a judgment is precisely what the political question doctrine precludes. And the Judiciary simply lacks the standards to assess and determine the "root cause of violence in the Middle East."

Furthermore, "discoverable and manageable standards" do not exist that would enable this Court to determine adequately the status and proper ownership of land in East Jerusalem, the West Bank, and the Gaza Strip. *Cf. Zivotofsky*, 132 S. Ct. at 1428 (stating that were the issue raised by the case "whether the Judiciary may decide the political status of Jerusalem," concerns regarding "judicially discoverable and manageable standards" would arise). For starters, resolving such issues likely would require obtaining documents from foreign governments, including the government of Israel and the Palestinian Authority, as well as deposing Israeli and Palestinian officials, along with Israelis and Palestinians living in those areas (including, but not limited to, Plaintiffs). Setting aside the comity and other politically charged issues presented in such a scenario, Plaintiffs' claims with respect to the Gaza Strip involve an area currently under

the *de facto* control of Hamas—a designated Foreign Terrorist Organization, *see* 62 Fed. Reg. 52,650 (Oct. 8, 1997)—which would make any discovery regarding damages or property in that area wholly impractical if not impossible. These very same issues arise regarding Plaintiffs' claims that Israeli soldiers and settlers assaulted Palestinian farmers in those areas.

The presence of the first two, "most important," *Baker* factors would require a court to dismiss a claim raised in far more routine contexts. *See, e.g.*, *Taylor v. Kellogg Brown & Root Servs., Inc.*, 658 F.3d 402, 408-09 (4th Cir. 2011) (barring, based on presence of first, second, and fourth *Baker* factors, negligence claim of Marine against contractor for injuries sustained during maintenance of tank in Iraq). They certainly require the Court to do so in *this* context, in which, given the sensitivities of and the deep interest in the matters at stake, pronouncements and judgments by Israelis, Palestinians, and other governments including that of the United States (be it by the Executive, Legislature, or Judiciary), could have immediate, significant, and far-reaching ramifications not only throughout the Middle East, but throughout the world.

> **d. Plaintiffs' complaint raises the other *Baker* factors.**

In addition to raising issues that implicate the "most important" *Baker* factors, Plaintiffs' complaint implicates the other *Baker* factors as well. Determining the equities of both sides in the Israeli-Palestinian conflict would require an "initial policy determination of a kind clearly for nonjudicial discretion." *See Doe I*, 400 F. Supp. 2d at 111. Similarly, any pronouncements by this Court in this case about the legality of purported IDF and Israeli settler actions against Palestinians, and the involvement of any United States officials in such alleged events, would express a "lack of the respect due" to the Executive and its efforts to address this ongoing conflict. In this respect, the context and substance of Plaintiffs' claims also implicate the last two *Baker* factors. They present an "unusual need for unquestioning adherence to a political decision

already made"—that is, the ongoing efforts to resolve the Israeli-Palestinian conflict. And, were this Court to delve into this arena, it could risk embarrassing the United States government through "multifarious pronouncements" on the nature and equities of the conflict. Given the presence of all the *Baker* factors, this Court should dismiss Plaintiffs' complaint and allow the political branches to continue to address the Israeli-Palestinian conflict.

### III. The Statutes Plaintiffs Invoke Do Not Provide Jurisdiction for Their Claims.

Even without the above threshold barriers facing Plaintiffs' claims, this Court should dismiss their claims against the United States brought under the TVPA and the ATS because those statutes do not provide jurisdiction for those claims.

#### a. The Torture Victim Protection Act does not provide jurisdiction for Plaintiffs' claims against the United States.

Plaintiffs' claims related to alleged war crimes must be dismissed because the two statutes Plaintiffs invoke—the TVPA and the ATS, *see* Am. Compl. ¶¶ 1-3—do not provide jurisdiction over their claims against the United States. The TVPA does not provide jurisdiction because Mr. Abrams, a former United States government official, was not acting under the authority of a "foreign nation." *See Saleh v. Titan Corp.*, 580 F.3d 1, 13 n.9 (D.C. Cir. 2009) ("In the TVPA . . . Congress exempted American government officers and private U.S. persons from the statute."); *Jerez v. Republic of Cuba*, 777 F. Supp. 2d 6, 18 (D.D.C. 2011) (explaining that a cause of action under the TVPA is available only against an individual acting "under actual or apparent authority, or color of law, of any *foreign nation*" (emphasis added)).

#### b. This Court does not have jurisdiction over Plaintiffs' Alien Tort Statute claims.

For the reasons stated above in Parts I and II, Plaintiffs' ATS claims must be dismissed because the United States has not waived its sovereign immunity and because those claims raise political questions. Additionally, those claims involve alleged events, including injuries

occurring abroad, that do not "touch and concern" the territory of the United States "with sufficient force to displace the presumption against extraterritorial application" of federal statutes to claims brought under the ATS. *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1669 (2013). *Cf. Smith*, 507 U.S. at 203-04 (discussing the "presumption against extraterritorial application of United States statutes" in dismissing FTCA claim for events in Antarctica).

In *Kiobel*, the Supreme Court held that the presumption against the extraterritorial application of federal statutes applies to claims brought under the ATS. *See Kiobel*, 133 S. Ct. at 1669. There, the Court dismissed a case against foreign corporations based on foreign conduct and added that "even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." *Id.* Since *Kiobel*, several circuit courts have struggled with developing a legal framework to determine precisely when claims "touch and concern" United States territory "with sufficient force to displace the presumption," largely in the context of claims against corporations. *See, e.g.*, *Adhikari v. Kellogg Brown & Root, Inc.*, No 15-20225, 2017 WL 33556, *4-5 (5th Cir. Jan. 3, 2017) (adopting framework based on *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)); *Doe v. Drummond Co., Inc.*, 782 F.3d 576, 586-93 (11th Cir. 2015) (surveying approaches of other circuits and adopting its own framework), *cert. denied*, 136 S. Ct. 1168 (2016); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 181-94 (2d Cir. 2014) (adopting framework based on *Morrison*); *Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 528 (4th Cir. 2014) (adopting framework based on a fact-based inquiry).[5]

---

[5] The D.C. Circuit has not weighed in on the appropriate legal framework to apply. *See Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 94-97 (D.D.C. 2014) (basing analysis on opinions of the Second, Fourth, and Eleventh Circuits).

That debate, however, is irrelevant here. In addition to the United States' sovereign immunity and the political question doctrine, which provide ample grounds to dismiss Plaintiffs' claims against the United States, those claims as pled here do not "touch and concern" the territory of the United States with "sufficient force." Plaintiffs' complaint against the United States alleges that Palestinians suffered various injuries abroad at the hands of Israeli soldiers and citizens, who were somehow encouraged by a United States official. On its face, and absent any other United States interest sufficient to support jurisdiction here,[6] such a claim does not displace the presumption against extraterritorial application of federal statutes to claims brought under the ATS. This is so because most of the allegations against Mr. Abrams are either conclusory or irrelevant to the purported ATS claims; the nexus between Mr. Abrams and the alleged torts is highly attenuated; the specific acts pled against Mr. Abrams primarily occurred abroad; the alleged torts by the IDF and by Israeli settlers—including the purported injuries and the commission of the tortious acts—occurred abroad; acceptance of Plaintiffs' theory of liability here risks rendering the Supreme Court's holding in *Kiobel* academic, at least at the pleadings stage; and no United States interest is sufficient to support jurisdiction over Plaintiffs' claims against the United States.[7]

At the outset, the vast majority of Plaintiffs' allegations against Mr. Abrams are either conclusory or have no bearing on their claims. *See, e.g.*, Am. Compl. pp. 19 (conclusory

---

[6] For example, the United States' brief in *Kiobel II* emphasized the importance that the United States "not be viewed as having harbored or otherwise provided refuge to an actual torturer or other 'enemy of all mankind.'" *See* Supp. Br. for the United States as *Amicus Curiae* in Partial Support of Affirmance at 19, *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013) (No. 10-1491) (citing *Filártiga v. Peña-Irala*, 630 F.2d 876, 890 (2d Cir. 1980)).

[7] In this respect, Plaintiffs' "aiding and abetting" claim, *see* Am. Compl. at p. 180, is legally indistinguishable from their war crimes claim. The same analysis applies to both claims. Indeed, *Kiobel* involved a claim for aiding and abetting war crimes. *See Kiobel*, 133 S. Ct. at 1663.

allegation that Abrams "encouraged . . . wholesale violence"); 27 (conclusory allegation that Abrams "encouraged and justified" settlement expansions and ethnic cleansing); ¶¶ 1 (conclusory allegation that Abrams "formulated" his plan to conspire while in the United States); 17 (allegation that Abrams has been a featured speaker at AIPAC conferences, which has no bearing on claim); 41 (conclusory allegation that Abrams has been unofficial paid spokesman of settlements); 86 (conclusory allegation that Abrams "encouraged" illegal land seizures by Israeli settlers); 186 (conclusory allegation that Abrams "encouraged" war crimes). Such conclusory or irrelevant allegations are insufficient to displace the presumption against extraterritorial application of the ATS. *See Mastafa*, 770 F.3d at 190 ("[O]ur jurisdictional analysis need not take into account allegations that, on their face, do not satisfy basic pleading requirements.").

As for Plaintiffs' allegations regarding Mr. Abrams's purported testimony to Congress and articles in news publications, *see, e.g.*, Am. Compl. p. 20, ¶¶ 24, 125, 123, those allegations do not form the basis of Plaintiffs' claims against the United States, and instead simply offer context to Plaintiffs' claims in terms of Mr. Abrams's alleged motivations during his purported interactions with Israeli officials, discussed below.[8] Moreover, Mr. Abrams's testimony to Congress and authorship of opinion pieces regarding prominent issues and policies in

---

[8] The United States recognizes that Mr. Abrams's congressional testimony in 2015, *see* Am. Compl. at p. 20 n.21, and authorship of opinion pieces in 2011 and 2014, *see id.* ¶ 24 n.69, did not occur during his tenure at the White House. While those allegations—viewed entirely in isolation—would not be within the scope of his federal employment, their sole purpose is to offer context to Mr. Abrams's alleged motivations while acting as Deputy National Security Advisor, when he most certainly was acting within scope, and therefore do not constitute the operative allegations of a requisite tort under the ATS. Moreover, as explained in the text, because those actions by Mr. Abrams are protected by the First Amendment, they do not form the basis for liability under the ATS. Regardless of whether this Court finds the above allegations against Mr. Abrams as part of Plaintiffs' underlying claims, they are still barred under the ATS because they do not sufficiently touch and concern the United States and because, at bare minimum, they raise political questions. *See supra* Part II.

international affairs are core First Amendment-protected activities that do not constitute an actionable tort. *See, e.g.*, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 933 (1982) (emotional speech supporting civil rights boycott and threatening "discipline" to boycott violators protected by First Amendment and could not form basis for tort claim). Indeed, testimony to Congress and authorship of opinion pieces presenting a perspective on political issues "is the essence of First Amendment expression." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995); *see also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271 (1964) ("debate on public issues should be uninhibited, robust, and wide-open").[9]

The remaining allegations regarding purported interactions between Mr. Abrams and Israeli officials are insufficient to displace the presumption against extraterritorial application of federal statutes to claims brought under the ATS. Those allegations involve alleged events occurring abroad that are far too attenuated and removed from the supposed war crimes to be relevant to Plaintiffs' claims. For example, Plaintiffs' allegation that Mr. Abrams met abroad with former Prime Minister Sharon in Rome and with aides to Israeli Prime Ministers in Europe, Am. Compl. p. 20, do not displace the presumption. In any event, Mr. Abrams's alleged interactions with Israeli government officials regarding Israeli settlement policy, wherever they occurred, are too attenuated from the purported actions of Israeli settlers themselves or from

---

[9] Notably, nowhere in Mr. Abrams's cited testimony or articles does he "advocate" violence against Palestinians or the expulsion of Palestinians from East Jerusalem, the West Bank, or the Gaza Strip. *See Words Have Consequences: Palestinian Authority Incitement to Violence and Markup of H. Res. 293, Expressing Concern over Anti-Israel and Anti-Semitic Incitement Within the Palestinian Authority*, 104th Cong. 6-11, 34, 37, 39-42, 46-50 (opening statement and testimony of Abrams), attached as Exhibit 2; Elliott Abrams, *The Settlement Obsession: Both Israel and the United States Miss the Obstacles to Peace*, Foreign Affairs, July-Aug. 2011, at 152, attached as Exhibit 3; Elliott Abrams, *Everything You Know About Israeli Settlements Is Wrong*, Foreign Policy, Sept. 5, 2014, attached as Exhibit 4. Instead, he proposes *removing* from the West Bank those Israeli settlements that lie beyond Israel's security barrier, a proposal that contradicts the very premise of his alleged involvement in Plaintiffs' claim. *See* Ex. 3 at 152.

Plaintiffs' allegations of injury, and are, as a general matter, insufficient to displace the presumption. *See, e.g.*, *Drummond Co.*, 782 F.3d at 598 (holding that allegations regarding decision-making, funding, and policy choices occurring in the United States insufficient to displace presumption where agreement, planning, and execution of purported crimes occurred abroad).

Moreover, the injuries Plaintiffs allege clearly occurred abroad. In conjunction with the other factors discussed above regarding Plaintiffs' claims against the United States, this weighs against displacing the presumption in this case. At bottom, Plaintiffs allege that a United States official was in some highly attenuated and ill-defined manner involved in the conduct of foreign agents who allegedly caused harm abroad. Under basic tort principles, those foreign agents' alleged torts occurred abroad, the location of the alleged injuries is abroad, and the jurisdiction with the more substantial interest in the resolution of this litigation is abroad. *Cf. Sosa*, 542 U.S. at 711 (holding that for purposes of the foreign-country exception to the FTCA, 28 U.S.C. § 2680(k), a tort "aris[es]" where the injury occurs); *Jaffe v. Pallotta Teamworks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004) (noting that in tort cases, D.C. courts apply "the law of the jurisdiction with the more substantial interest in the resolution of the issue," which considers "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship is centered" (internal citations and quotations omitted)); *see also Adhikari*, 2017 WL 33556, at *7-8. Indeed, the substantial implications of the resolution of Plaintiffs' claims for the conduct of United States foreign relations buttresses the fact that those claims raise non-justiciable political questions. *See supra* Part II.

Furthermore, to the extent Plaintiffs' claims are based on the alleged conspiracy between Mr. Abrams and other defendants, such a claim does not automatically rebut the presumption against extraterritorial application of federal statutes to claims brought under the ATS. In effect, that claim echoes the "headquarters doctrine" that the *Sosa* Court rejected in the context of tort claims brought under the FTCA. *See* 542 U.S. at 702-03. As with the foreign-country exception, allowing such claims automatically to overcome the presumption against extraterritoriality would "swallow" that presumption whole, "certainly at the pleadings stage." *Id.* at 703.

Lastly, there is no United States interest sufficient to support exercising jurisdiction over Plaintiffs' claims. *See supra*, note 6. In sum, regardless of which legal framework applies to determining when claims brought under the ATS "touch and concern" the United States with sufficient force to rebut the presumption against extraterritorial application of federal statutes, Plaintiffs' claims certainly do not. Their claims against the United States should be dismissed.

## <u>CONCLUSION</u>

Sovereign immunity bars Plaintiffs' claims because they have not complied with the threshold administrative requirements of the FTCA, their claims are based on customary international law, their purported injuries occurred abroad, and because they call into question highly discretionary actions by an Executive Branch official. Moreover, their claims regarding the ongoing Israeli-Palestinian conflict raise substantial political questions. Lastly, the TVPA and the ATS do not provide jurisdiction for their claims. This Court should therefore dismiss those claims and allow the constitutionally empowered branches of government to continue focusing attention on the delicate foreign policy and national security matters enmeshed in this ongoing conflict, as they have done over the course of numerous Congresses and Presidential administrations.

Dated: January 27, 2017        Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General
Civil Division

JOSHUA I. WILKENFELD
Senior Counsel
Office of the Assistant Attorney General

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch

MARY HAMPTON MASON
Senior Trial Counsel

    /s/  *Paul E. Werner*
PAUL E. WERNER
(MD Bar, under LCvR 83.2(e))
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)
E-mail: Paul.Werner@usdoj.gov

Attorneys for the United States