**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BASSEM AL-TAMIMI, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>SHELDON ADELSON, et al.,<br><br>          Defendants. | Case No. 16-cv-445 (TSC)<br><br>[Oral Argument Requested] |

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants Sheldon Adelson*[+], Lawrence Ellison*, John Hagee*, Irving Moskowitz[+], Haim Saban*, American Friends of Ariel*, American Friends of Ulpana Ofra*, American Friends of Bet El Yeshiva, Christian Friends of Israeli Communities*, Efrat Development Foundation*, Falic Family Foundation, Inc., Friends of the Israel Defense Forces*, Gush Etzion Foundation*, Honenu National Legal Defense Organization*, The Hebron Fund*, Bank Leumi Le-Israel B.M.*, Bank Leumi USA*, Bank Hapoalim B.M.*[+], RE/MAX, LLC, Access Industries, Inc.[+], Veolia Environnement S.A.*[+], Veolia North America, LLC*, Hewlett Packard Enterprise Co.*, Hewlett Packard (Israel) Ltd.*, Motorola Solutions, Inc.*, Motorola Solutions Israel Ltd.*[+], and Jewish National Fund (Keren Kayemeth Le Israel) Inc.* (collectively "Defendants") move to dismiss Plaintiffs' Amended Complaint (the "Complaint" or "AC").

As detailed in the accompanying Memorandum of Law, Defendants move this Court for an order dismissing the Complaint pursuant to Rule 12(b)(1) as none of the claims asserted in the Complaint is justiciable under the political question and act of state doctrines. A proposed order is attached to this Motion.

As previewed in the Notice previously filed by Defendants (Dkt. 93), Defendants also move to dismiss the Complaint under Rule 12(b) on the grounds that it fails to plead an actionable claim and improperly seeks to invoke jurisdiction over extraterritorial matters under the Alien Tort Statute ("ATS") and, in the event of dismissal of the federal ATS claims, it fails to establish diversity jurisdiction over the non-federal claims.  In addition, each defendant above whose name is designated with an asterisk ("*") also moves on the ground of lack of personal jurisdiction, and each defendant above whose name is designated with a plus sign ("+") also moves on the ground of lack of proper service of process.  Pursuant to the Court's December 15, 2016 Order (Dkt. 97), the accompanying Memorandum of Law does not brief these further grounds for dismissal, pending further instruction by the Court.

Dated: Washington, D.C.
January 27, 2017

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ Jonathan I. Blackman*

Jonathan I. Blackman (admitted *pro hac vice*)
Alexis L. Collins (D.C. Bar # 474599)
Teale E. Toweill (D.C. Bar # 996061)
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
T: 202-974-1500
F: 202-974-1999
jblackman@cgsh.com
acollins@cgsh.com
ttoweill@cgsh.com

*Counsel for Defendants Bank Leumi Le-Israel B.M. and Bank Leumi USA*

COVINGTON & BURLING LLP

By: */s/ John E. Hall /Signature with Permission*

John E. Hall (D.C. Bar No. 415364)
David M. Zionts (D.C. Bar No. 995170)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jhall@cov.com
dzionts@cov.com

*Counsel for Defendants Hewlett Packard Enterprise Co. and Hewlett-Packard (Israel) Ltd.*

2

CHADBOURNE & PARKE LLP

By: */s/ Abbe David Lowell /Signature with Permission*

Abbe David Lowell (D.C. Bar No. 358651)
Michael Bhargava (D.C. Bar No. 978078)
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 974-5600
Facsimile: (202) 974-5602
E-mail: adlowell@chadbourne.com;
mbhargava@chadbourne.com

*Counsel for Defendant Bank Hapoalim B.M.*

BAKER BOTTS L.L.P.

By: */s/ William H. Jeffress, Jr. /Signature with Permission*

William H. Jeffress, Jr. (D.C. Bar No. 041152)
Aaron Stein Rabinowitz (D.C. Bar No. 1017165)
The Warner
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 639-7844
Fax: (202) 585-1004
william.jeffress@bakerbotts.com
aaron.rabinowitz@bakerbotts.com

*Counsel for Defendants Lawrence Ellison and Haim Saban*

IFRAH PLLC

By: */s/ George R. Calhoun /Signature with Permission*

George R. Calhoun (D.C. Bar No. 459717)
1717 Pennsylvania Ave., NW
Suite 650
Washington D.C., 20006
T: (202) 524-4140
F: (202) 524-4141
george@ifrahlaw.com

*Counsel for Defendant Motorola Solutions, Inc. and Motorola Solutions Israel Ltd.*

FOLEY & LARDNER LLP

By: */s/ Barry G. Felder /Signature with Permission*

Barry G. Felder (D.C. Bar No. 307736)
90 Park Avenue
New York, New York 10016
T: 212-338-3540
F: 212-687-2329
bgfelder@foley.com

Michael J. Tuteur (Bar No. D00202)
111 Huntington Avenue, Suite 2500
Boston, Massachusetts 02199
T: 617-342-4016
F: 617-341-4001
mtuteur@foley.com

*Counsel for Defendant Sheldon G. Adelson*

COFFEY BURLINGTON, P.L.

By:  */s/ Andrew H. Marks /Signature with Permission*

Andrew H. Marks, Esq. (DC Bar No. 932269)
amarks@coffeyburlington.com
Gabriel Groisman, Esq.
Admitted pro hac vice
Florida Bar No. 25644
ggroisman@coffeyburlington.com
yvb@coffeyburlington.com
service@coffeyburlington.com
2601 South Bayshore Drive, Penthouse  One
Miami, Florida  33133
Telephone: (305) 858-2900
Facsimile:  (305) 858-5261

*Counsel for Defendant Falic Family Foundation*


SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:  */s/ Christopher M. Loveland /Signature with Permission*

CHRISTOPHER M. LOVELAND
(D.C. Bar No. 473969)
2099 Pennsylvania Ave., N.W.
Suite 100
Washington, D.C. 20006-6801
Telephone: (202) 747-1924
Facsimile: (202) 747-3832
cloveland@sheppardmullin.com

*Counsel for Defendant Irving Moskowitz*


FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

By:  */s/ Elliot E. Polebaum /Signature with Permission*

Elliot E. Polebaum (DC Bar No. 358748)
Douglas W. Baruch (DC Bar No. 414354)
Joseph J. LoBue (DC Bar No. 484097)
Jennifer M. Wollenberg (DC Bar No. 494895)
801 17th Street, NW
Washington, DC 20006
Telephone:  (202) 639-7000
Facsimile:  (202) 639-7003
Email: Elliot.Polebaum@friedfrank.com

*Counsel for Defendants Veolia North America, LLC and Veolia Environnement S.A.*


O'HAGAN MEYER

By:  */s/ Michael E. Barnsback /Signature with Permission*

Michael E. Barnsback (USDC Bar No. VA015)
411 E. Franklin Street, Suite 500
Richmond, VA 23219
PH 804-403-7100
FX 804-403-7110
mbarnsback@ohaganmeyer.com

*Counsel for Defendant RE/MAX, LLC*

4

ZELL, ARON & CO.

By:  */s/ Lawrence Marc Zell /Signature with Permission*

Lawrence Marc Zell
D.C. Bar No. 959437
34 Ben Yehuda Street
15th Floor
City Tower Building
Jerusalem 9423001 ISRAEL
Direct Phone: 011-972-2-633-6301
Main Telephone: 011-972-2-633-6300
Cell Phone: 011-972-52-869-9000
Email: mzell@fandz.com

*Counsel for Defendants American Friends of Ariel, Inc., American Friends of Ulpana Ofra, Gush Etzion Foundation, The Hebron Fund, Christian Friends of Israeli Communities, Honenu National Legal Defense Organization [sic]*

PROSKAUER ROSE LLP

By:  */s/ Mark D. Harris /Signature with Permission*

Mark D. Harris (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3530
Facsimile: (212) 969-2900
Email: mharris@proskauer.com

Rachel O. Wolkinson (DC Bar No. 975548)
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, D.C. 20004
Telephone: (202) 416-5811
Facsimile: (202) 416-6899
Email: rwolkinson@proskauer.com

*Counsel for Defendant
Friends of the Israel Defense Forces*

LARS LIEBELER PC

By:  */s/ Lars H. Liebeler /Signature with Permission*

Lars H. Liebeler
D.C. Bar No. 416666
1828 L Street, N.W., Suite 705
Washington, D.C. 20036
Direct Telephone: (202) 587-4747
Main Telephone: (202) 466-4110
Email: LLiebeler@LHL-LawFirm.com

*Counsel for Defendant John Hagee*

RIFKIN WEINER LIVINGSTON LLC

By:  */s/ Charles S. Fax /Signature with Permission*

Charles S. Fax (DC Bar No. 198002)
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Facsimile: (301) 951-0172
Email: cfax@rwlls.com

*Counsel for Defendant Jewish National Fund (Keren Kayemeth Le Israel) Inc.*

DAVID ABRAMS, ATTORNEY AT LAW

By: */s/ David Abrams /Signature with Permission*

David Abrams (Bar No. NY0201)
305 Broadway, Suite 601
New York, NY 10007
212-897-5821
dnabrams@gmail.com

*Counsel for Defendant Efrat Foundation USA*

KIRKLAND & ELLIS LLP

By: */s/ Jay P. Lefkowitz /Signature with Permission*

Jay P. Lefkowitz
Atif Khawaja
David S. Flugman
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
lefkowitz@kirkland.com
atif.khawaja@kirkland.com
david.flugman@kirkland.com

*Counsel for Defendant Access Industries, Inc.*

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: */s/ Shelley Ivan /Signature with Permission*

Shelley Ivan (DC Bar No. 985488)
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Email: sivan@kasowitz.com

*Counsel for Defendant American Friends of Bet El Yeshiva*

THE AMERICAN CENTER FOR LAW AND JUSTICE

By: */s/ Jay Alan Sekulow /Signature with Permission*

Jay Alan Sekulow (D.C. Bar No. 496335)
Stuart J. Roth  (D.C. Bar No. 475937)
Andrew J. Ekonomou (admitted *pro hac vice*)
Jeffrey Harold Ballabon (admitted *pro hac vice*)
Benjamin P. Sisney (admitted *pro hac vice*)
201 Maryland Avenue, N.E.
Washington, D.C.  20002
Email: sekulow@aclj.org
Telephone: (202) 546-8890
Facsimile: (202) 546-9309

*Co-Counsel for Defendant Gush Etzion Foundation*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BASSEM AL-TAMIMI, et al.,

                 Plaintiffs,

     v.

SHELDON ADELSON, et al.,

                 Defendants.

Case No. 16-cv-445 (TSC)

**[Oral Argument Requested]**


# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT
# TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ......................................................................... ii

PRELIMINARY STATEMENT ......................................................................1

ALLEGATIONS OF THE COMPLAINT........................................................3

      *Conduct By Israeli Settlers And The Israeli Government*....................................4

      *The Plaintiffs* ...........................................................................................4

      *The Defendants* .........................................................................................6

      *Plaintiffs' Claims* ...................................................................................10

ARGUMENT ..........................................................................................12

      THE POLITICAL QUESTION AND THE ACT OF STATE DOCTRINES BAR
      ALL OF PLAINTIFFS' CLAIMS ...........................................................12

      A.     Plaintiffs' Claims Are Not Justiciable Under The Political Question
            Doctrine...........................................................................................13

            1.     The Issues Raised In The Complaint Previously Have Been
                  Deemed Political Questions Under *Baker v. Carr*....................................14

            2.     The *Baker v. Carr* Factors Confirm That Plaintiffs' Complaint
                  Raises Non-Justiciable Political Questions...............................................16

      B.     Plaintiffs' Claims Are Not Justiciable Under The Act Of State Doctrine ............22

CONCLUSION........................................................................................26

APPENDIX A…………………………………………………………………….27

i

# TABLE OF AUTHORITIES[*]

**PAGE**

**CASES**

*Abu Ali v. Ashcroft*,
  350 F. Supp. 2d 28 (D.D.C. 2004) ....................................................................24

*\*Baker v. Carr*,
  369 U.S. 186 (1962) .......................................................................... *passim*

*\*Banco Nacional de Cuba v. Sabbatino*,
  376 U.S. 398 (1964) ....................................................................................22

*Biton v. Palestinian Interim Self-Gov't Auth.*,
  310 F. Supp. 2d 172 (D.D.C. 2004) ................................................................22

*Biton v. Palestinian Interim Self-Gov't Auth.*,
  412 F. Supp. 2d 1 (D.D.C. 2005) ...................................................................22

*Corrie v. Caterpillar, Inc.*,
  503 F.3d 974 (9th Cir. 2007) .................................................................18, 20

*\*Doe v. State of Israel*,
  400 F. Supp. 2d 86 (D.D.C. 2005) ........................................................ *passim*

*\*Doe v. Exxon Mobil Corp.*,
  69 F. Supp. 3d 75 (D.D.C. 2014) ....................................................................26

*El-Shifa Pharm. Indus. Co. v. United States*,
  607 F.3d 839 (D.C. Cir. 2010) ........................................................................13

*Glen v. Club Mediterranée, S.A.*,
  450 F.3d 1251 (11th Cir. 2006) ......................................................................24

*Haig v. Agee*,
  453 U.S. 280 (1981) ........................................................................................16

*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952) ........................................................................................16

*Matar v. Dichter*,
  500 F. Supp. 2d 284 (S.D.N.Y. 2007) .............................................................20

---

[*]   Asterisks identify those authorities on which Defendants chiefly rely.

*Mobarez v. Kerry*,
No. 15-cv-516 (KBJ), 2016 U.S. Dist. LEXIS 64437 (D.D.C. May 17, 2016)................17

*Oetjen v. Central Leather Co.*,
246 U.S. 297 (1918)..................................................................................................25

*Schneider v. Kissinger*,
310 F. Supp. 2d 251 (D.D.C. 2004) .........................................................................18

*Underhill v. Hernandez*,
168 U.S. 250 (1897)..................................................................................................25

*World Wide Minerals Ltd. v. Republic of Kazakhstan*,
296 F.3d 1154 (D.C. Cir. 2002)................................................................................22

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,
493 U.S. 400 (1990)......................................................................................22, 23, 24

*Zivotofsky v. Kerry*,
576 U.S. ___, 135 S. Ct. 2076 (2015) ......................................................................17

## REGULATIONS

Anti-Terrorism Act,
18 U.S.C. § 2331 *et seq.*...........................................................................................22

## RULES

Fed. R. Civ. P. 12(b)(1)......................................................................................1, 7, 26

## OTHER AUTHORITIES

Cong. Research Serv., U.S. Foreign Aid to Israel, Appendix B
(RL33222 Dec. 22, 2016), www.fas.org/sgp/crs/mideast/RL33222.pdf ...........................17

Exec. Order No. 12,947,
60 Fed. Reg. 5079 (Jan. 25, 1995) ...................................................................................21

Exec. Order No. 13,099,
63 Fed. Reg. 45,167 (Aug. 25, 1998),...............................................................................21
Notice No. 2016-01427, 81 Fed. Reg. 3937 (Jan. 22, 2016) ............................................21

G.A. Res. 66/225, U.N. Doc. A/RES/66/225 (Mar. 29, 2012),
http://www.un.org/en/ga/search/view_doc.asp?symbol=%20A/RES/66/225 ..................19

John Kerry, Sec'y of State, U.S. Dep't of State, Statement on Vote in the
UN Security Council (Dec. 23, 2016), https://2009-
2017.state.gov/secretary/remarks/2016/12/266070.htm ..................................................20

Susan E. Rice, U.S. Ambassador to the United Nations, Explanation of Vote on the
 Resolution on the Situation in the Middle East, (Feb. 18, 2011), https://2009-2017-
 usun.state.gov/remarks/4978...............................................................................................19

Thomas A. Shannon, Jr., Under Sec'y of State for Political Affairs, U.S. Dep't of State,
 Susan E. Rice, Nat'l Sec. Advisor, and Jacob Nagel, Israeli Acting Nat'l Sec.
 Advisor, Statements at the Signing of a Memorandum of Understanding
 between the United States and Israel on Security Assistance (Sept. 14, 2016),
 https://2009-2017.state.gov/p/nea/rls/rm/261928.htm .......................................................17

Trade Facilitation and Trade Enhancement Act of 2015
 Pub. L. No. 114-125, 130 Stat. 122 (Feb. 24, 2016)...........................................................19
 § 909(a) ...............................................................................................................19
 § 909(b)................................................................................................................19
 § 909(e)................................................................................................................20

U.N. GAOR, 66th Sess., 91st plen. mtg., U.N. Doc. A/66/PV.91 (Dec. 23, 2001),
 http://www.un.org/en/ga/search/view_doc.asp?symbol=A/66/PV.91 ...............................19

U.S. State Department Press Releases on Israel,
 https://2009-2017.state.gov/p/nea/ci/is/c5218.htm ...........................................................19

Defendants Sheldon Adelson, Lawrence Ellison, John Hagee, Irving Moskowitz, Haim Saban, American Friends of Ariel, American Friends of Ulpana Ofra, American Friends of Bet El Yeshiva, Christian Friends of Israeli Communities, Efrat Development Foundation, Falic Family Foundation, Inc., Friends of the Israel Defense Forces, Gush Etzion Foundation, Honenu National Legal Defense Organization, The Hebron Fund, Bank Leumi Le-Israel B.M., Bank Leumi USA, Bank Hapoalim B.M., RE/MAX, LLC, Access Industries, Inc., Veolia Environnement S.A., Veolia North America, LLC, Hewlett Packard Enterprise Co., Hewlett Packard (Israel) Ltd., Motorola Solutions, Inc., Motorola Solutions Israel Ltd., and Jewish National Fund (Keren Kayemeth Le Israel) Inc. (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Amended Complaint (Dkt. 77, the "Complaint" or "AC") pursuant to Federal Rule of Civil Procedure 12(b)(1).[1]

## PRELIMINARY STATEMENT

The Complaint in this action is a strident political diatribe, thinly garbed as a legal pleading. Its subject, the Israeli-Palestinian conflict (and, in particular, the settlements established by Israel in the West Bank after the 1967 War), is one of the world's longest-running,

---

[1] Pursuant to the Court's order of December 15, 2016 (the "December 15 Order"), this memorandum is limited to Defendants' contention that the Court lacks subject matter jurisdiction under Rule 12(b)(1). It does not address the failure of the AC to state an actionable claim. Because of the unique nature of the Alien Tort Statute ("ATS") as a jurisdictional grant, the numerous pleading deficiencies in the AC's ATS claims could be resolved under Rule 12(b)(1). The jurisdictional issues, however, are intertwined with Plaintiffs' failure to plead an actionable claim under that statute, and Defendants understand that the December 15 Order defers such briefing. Because this brief does not address ATS-specific issues, it also does not address Plaintiffs' failure to establish diversity jurisdiction over the non-federal claims, which would be a basis for dismissal of those claims in the event that the federal ATS claims were dismissed.

Should the AC survive the Rule 12(b)(1) arguments briefed here, Defendants would thereafter intend to brief all the deficiencies in the ATS claim at one time. Also, in accordance with the December 15 Order, this memorandum does not address other aspects of Defendants' Motion, including issues of personal jurisdiction or service, which the affected Defendants also will brief, if necessary, at a later time as instructed by the Court.

most tragic, and, so far, regrettably intractable political controversies.  This dispute is of great consequence not only to the U.S. but to the rest of the world community, which recognizes the importance of the dispute in the complex politics of the entire Middle East.  The rights and wrongs of the parties to that conflict, including with respect to Israel's settlements, have been, and will continue to be, fiercely debated in the political arena.  The most recent United Nations Security Council resolution on the settlements in December 2016 and the hotly contested positions of various countries (and within U.S. domestic politics) demonstrate that debate surrounding this issue endures in the international and national political arenas and that the position of the U.S. Government itself may well be fluid.

Whatever else the settlement dispute might be and wherever else it may be decided, it is not a proper subject for adjudication by a U.S. court.  This Court recognized the non-justiciability of this conflict over a decade ago in *Doe v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005) (Bates, J.) ("*Doe I")*, when it dismissed a complaint by anonymous Palestinians that, except for the identity of the defendants, was nearly identical to this one.  This Court held, *inter alia*, that claims similar to those asserted here regarding settlement activities in the West Bank are non-justiciable under the political question and act of state doctrines.

The present Complaint suffers from the same defects.  While Plaintiffs have spent a great deal of time presenting a generalized account of alleged mistreatment of unnamed Palestinians by unnamed soldiers and settlers, they have not pleaded claims justiciable in a U.S. court.  Whatever forum may be appropriate for presenting this political controversy, this Court is not it.

**ALLEGATIONS OF THE COMPLAINT**[2]

The Complaint is premised on an alleged conspiracy among Defendants, the Israeli military, and unidentified settlers living in Israel and in the area referenced in the Complaint as the "Occupied Palestinian Territories" (or "OPT").  AC at 12-13, 16, ¶ 124 (referring to settlement leaders as co-conspirators), ¶¶ 214-215 (alleging the Israel Defense Force ("IDF") as co-conspirator with the settlers); Ex. C at 1 (identifying the Israel Air Force ("IAF") as a "perpetrator" with the IDF, settlers, and Israeli-based non-governmental organizations).  Plaintiffs' claims are centered on activities occurring in the "OPT" (hereinafter also referred to as "the West Bank and Gaza").  The Complaint defines "settlements" as "all Israeli civilian communities built on lands occupied or otherwise administered by Israel during its second occupation (post-1967 Six-Day War) . . ." and the "OPT" as "[East Jerusalem], the West Bank, Gaza, and other Palestinian territory."[3]  AC at 11 nn.1 & 2.  Throughout, the Complaint employs politically charged terms that highlight the political and diplomatic questions Plaintiffs would have this Court adjudicate.  In substance, Plaintiffs seek to litigate in U.S. court almost 50 years of politically fraught relations between Israel and the Palestinian inhabitants of the West Bank and Gaza.

---

[2]     We recite the salient allegations of the Complaint to show that, on their face, they demonstrate that this is not a justiciable case or controversy.  *See, e.g.*, *Doe I*, 400 F. Supp. 2d at 112-14 (referencing complaint's allegations to determine applicability of the political question and act of state doctrines).  Defendants do not accept the truth of these allegations.

[3]     All Defendants herein join fully in the legal arguments and relief sought in the Motion and this Memorandum.  However, some Defendants take issue with the usage of certain terminology in describing the Israeli-Palestinian conflict, including the words used to describe the geographic area where the settlements are located, which they believe should be called Judea and Samaria.  The views of these Defendants are summarized in the attached Appendix A.  Nevertheless, in recognition of the fact that the Court's task is to resolve a motion to dismiss and not the Israeli-Palestinian conflict, the terms used in the Complaint are used herein.

### *Conduct By Israeli Settlers And The Israeli Government*

The Complaint contends that, since 1967, Israeli settlers, aided by the IDF, have "threaten[ed] and intimidate[d] the local Palestinian population on a daily basis," resulting in "the expulsion of approximately 400,000 Palestinians from the OPT" and "the demolition or confiscation of 49,000 Palestinian homes," as well as the denial of medical care and the destruction of schools, mosques, and hospitals in the West Bank and Gaza.  AC at 16 & ¶¶ 78, 92, 176.  Plaintiffs further allege that settlers have committed a long list of misdeeds, including "daily violent attacks on Palestinian homeowners and farmers, . . . the slaughtering of livestock and the poisoning of water wells and destruction of electric grids, . . . [and] devastation of the Palestinian agricultural sector, especially destruction of olive groves . . . ."[4]  AC ¶ 79.  The purported goal of the alleged conspiracy is "the expulsion of all non-Jews from [the] OPT and the creation of new segregated 'Jewish-only' cities and villages."  AC at 12.   The Complaint alleges that the founding and expansion of settlements have been encouraged by the Israeli government since "Prime Minister Sharon's advice to seize any and all Palestinian-owned hilltops" forty years ago, AC ¶ 120, and asserts that, while settlement activity is illegal under Israeli and international law and has been condemned by U.S. policymakers, it has been consistently condoned by Israel throughout this period through the active participation of the Israeli army in the alleged illegal activity.  AC at 16.

### *The Plaintiffs*

Plaintiffs claim to be American citizens or Palestinian nationals whose relatives, or themselves, allegedly have suffered physical injury, death, or property damage or loss as a result

---

[4]     The Complaint extensively quotes from a 2012 book entitled *Our Harsh Logic*, s*ee*, *e.g.*, AC at 13 n.9, 30 & ¶¶ 89, 187-189, 205, 208, which is a compilation by an advocacy group of stories allegedly told by anonymous Israeli soldiers.

of Israeli settlement activity.  AC ¶ 29.  Only a few of Plaintiffs are alleged to be American

citizens; the others are apparently Palestinians, but many are unnamed altogether, being merely

referred to as a "Village Council" or as a family who allegedly suffered damages represented by

a named Plaintiff.  AC ¶ 29; *see also* caption.

While disclaiming a challenge to IDF confiscations or a request that the Court resolve the

legality of the settlements or Palestinians' "right to return to their homeland," AC at 30,

Plaintiffs nonetheless seek $1 billion in damages (reduced from $34.5 billion in the original

complaint) from Defendants based on injuries alleged to have been suffered by Palestinians

generally as a result of "heinous war crimes committed by IDF personnel in the OPT" and

establishment of settlements in the West Bank encouraged by Israeli government officials.  *See*,

*e.g.*, AC at 30-31 & ¶¶ 29, 80-81, 83, 85, 88, 91.  Strikingly, no attempt is made to link any harm

suffered by a particular Plaintiff to the conduct of any particular Defendant.[5]  Rather, the

Complaint asserts in generic and conclusory terms injuries such as unpaid rent; loss of

unidentified businesses owned by unspecified individuals; loss of unidentified infrastructure

improvements; theft of unidentified land, both by settlers and in connection with the separation

wall and roads built by the Israeli government; costs of counseling services for "thousands of

traumatized Palestinian children"; the destruction of "thousands of homes"; and deaths of

unspecified relatives.  AC at 30-31.

Typical of this generic and improper pleading technique is the allegation that Plaintiffs

and/or their unnamed relatives suffered "loss of loved ones including children, destruction of

---

[5]     Attached to the Complaint is an Exhibit C that is titled "Plaintiff's [*sic*] Initial Damages
Database" and purports to describe individual Plaintiffs' damages.  It fails, however, except in
wholly conclusory fashion, to link any particular Plaintiff's injury with any particular
Defendant's conduct.  Instead, it simply repeats formulaic accusations that various categories of
Defendants either donated or transferred funds to generally unidentified persons who allegedly
caused an injury.

homes, destruction of revenue-producing arable property, poisoning of water wells, slaughtering

of livestock, destruction of electric grids, diminished water supply capacity, and destruction of

schools, mosques and hospitals" as "the direct and proximate result" of Defendants' conspiracy.

AC ¶ 176.  What is alleged, in short, are generalized grievances by "Palestinians" as a group,

over the course of decades, which have little or nothing to do with the alleged injuries suffered

by identified Plaintiffs described in Exhibit C.

### *The Defendants*

Defendants in this case are *not* the unidentified settlers or IDF members who allegedly

have committed those wrongs.  Rather, they are a number of U.S. individuals, U.S. tax-exempt

charities, foreign banks, and U.S. or foreign corporations that allegedly have "knowingly"

supported Israeli settlers' activities for decades in connection with the expansion of settlements.

AC ¶¶ 33-77.  *None* of the named Defendants is alleged to have engaged in any violent actions

causing personal injuries in the West Bank and Gaza or elsewhere, nor is alleged to have taken,

forcefully or otherwise, any property from any Plaintiff or other unidentified Palestinian.[6]

Defendants instead, at most, are alleged to be *secondarily* liable for the actions of

unidentified settlers or soldiers simply by virtue of their financial or moral support or provision

of routine banking and commercial services or products to these persons.  Supposedly, based on

"common knowledge," public statements by media, NGOs, and international organizations (and,

in the case of the banks, alleged "know your customer protocols"), Defendants "know" that such

support "causes" criminal mistreatment of Palestinians.  AC ¶¶ 151, 205, 212.  In substance, and

shorn of its pejorative rhetoric, the Complaint alleges that Defendants should be held liable either

---

[6]     The Complaint does state that Defendant Jewish National Fund participated in
unspecified "physical destruction of many villages" and "military operations," AC ¶ 54.  This
lone conclusory allegation is so vague and non-specific that it cannot be considered "well-pled"
under any standard.

for donating or raising funds for U.S. tax-exempt charitable organizations that, in turn, donate

money to settlements and IDF veterans, advocating in support of Israeli settlement policies, or

engaging in normal business transactions with settlers, settlements, and parts of the Israeli

government that, in turn, allegedly promote settlement expansion – all without any allegation

that Defendants direct or control the actions of either these settlers, settlements, or the Israeli

state.  AC ¶¶ 32-77.

The Complaint groups Defendants into five categories.[7]  The first category is comprised

of eight individuals and one foundation based in the U.S. who allegedly donated funds to U.S.

tax-exempt entities ("Donor Defendants").[8]  *See* AC ¶¶ 32-40.  Plaintiffs allege that Donor

Defendants "share a pro-Zionist agenda and are dedicated to doing anything they can to promote

the growth of settlements in the OPT."  AC ¶ 32.  Equating settlement support with criminal

conduct, the Complaint asserts that "individual donors knew and intended that their donations"

would be used in support of illegal settler or IDF activities, AC ¶ 105, that "necessarily entail the

ethnic cleansing of all Palestinian families living near OPT settlements," AC ¶ 32.  The

Complaint (including the newly added Exhibit C) does not contain any non-conclusory factual

allegations of any specific donation by a Donor Defendant, or the transmission of any such

donation to a specified recipient, that caused any alleged injury to any Plaintiff.

---

[7]     Not all Defendants are named in all counts, and the allegations differ even as to
Defendants in the same "group."  The issues on Defendants' Rule 12(b)(1) motion are
sufficiently common to all Defendants such that, in this consolidated brief, it is unnecessary to
discuss the particular allegations against each Defendant.

[8]     The Donor Defendants are Sheldon Adelson, Norman Braman, Lawrence Ellison, Daniel
Gilbert, John Hagee, Lev Leviev, Irving Moskowitz, Haim Saban, and the Irving I. Moskowitz
Foundation.  AC ¶¶ 32-40.

The second category, identified in the Complaint as "Settlement and IDF Advocate/Promoter," is comprised of one person, Defendant Elliott Abrams ("Abrams"), represented in this action by the U.S. Government.  AC ¶ 41.

The third category of Defendants is comprised of thirteen U.S. tax-exempt charitable entities ("Charitable Entity Defendants") that allegedly provided funds to support settlement expansion by transferring money to Israeli settlements and in support of the IDF.[9]  AC ¶¶ 42-54. Plaintiffs – again asking the Court to subscribe to their mantra that settlements are inherently criminal – claim that these transfers of funds were conducted "knowing that those funds would be used by settlement leaders to arm the local settlement population and have them engage in ethnic cleansing and wanton property destruction . . .," as well as to enable the IDF to commit purported war crimes.  AC ¶¶ 103, 215-216.  Among these generalizations, the Complaint alleges that Charitable Entity Defendants "partially financed the [Israeli government's] Second (2008) and Third (2014) Gaza Invasions" – armed conflicts between Israeli troops and rocket-firing terrorist groups designated as such by the U.S. – through donations to support the IDF. AC ¶ 216.  As with Donor Defendants, the Complaint does not contain any non-conclusory factual allegations regarding any specific money transfers to a particular recipient that related to any alleged injury suffered by any Plaintiff.

---

[9]    Charitable Entity Defendants are American Friends of Ariel, American Friends of Bet El Yeshiva, American Friends of Har Homa, American Friends of Ulpana Ofra, Christian Friends of Israeli Communities, Efrat Development Foundation, Falic Family Foundation, Friends of the Israel Defense Forces, Gush Etzion Foundation, Honenu National Legal Defense Organization, Karnei Shomron Foundation, The Hebron Fund, and the Jewish National Fund.  AC ¶¶ 42-54. American Friends of Har Homa is listed in the case caption, a single footnote, and the "illustrative" "Causal Chain of Damages for Har Homa Plaintiffs," but is not referenced in any allegation made by Plaintiffs or included in the "Defendants" section of the AC.  AC at 4, 18.

The fourth category of Defendants is comprised of three banks ("Bank Defendants").[10] AC ¶¶ 55-56.  The Complaint makes conclusory allegations that Bank Defendants transferred funds from unidentified customers to similarly unidentified settlements for the purpose of encouraging settlement expansion.  AC ¶¶ 55-56, 109.  However, it lacks any allegation regarding any specific transfer of funds by the Bank Defendants, and it does not identify any specific transferor or recipient.  The Complaint does not even contain any factual allegation that identifies which particular Donor or Charitable Entity Defendant (if any) deposited funds with which Bank Defendant (if any) or transferred funds through which Bank Defendant (if any).

The Complaint alleges that, "[b]ased on the banking protocol 'Know Your Customer,' [Bank Defendants'] officials knew exactly what the funds would be used for . . . promotion of wholesale violence, arms trafficking, ethnic cleansing, theft and malicious property destruction." AC ¶ 109.  But there is no allegation, nor could there be, that "Know Your Customer" rules require banks to fully investigate the *recipient* of funds transferred from a customer or to "know" the use to which a particular funds transfer would be put by them.  The only requirements are to take reasonable steps to ensure that the recipient is not a sanctioned entity or individual and to report suspicions of unlawful activity.  Notably, none of Defendants is alleged to have violated any sanctions imposed by the U.S. by sending funds, or otherwise directly or indirectly giving support, to any sanctioned individual or organization.

Finally, Bank Defendants also are alleged to have engaged in other routine business activity purportedly in support of settlement expansion, including operating bank branches and ATMs in settlement areas, AC ¶ 240, discussing the financing of construction projects involving settlements, AC ¶ 135, and "offering essential banking services and below-rate long-term

---

[10]     Bank Defendants are Bank Leumi Le-Israel, Bank Leumi USA, and Bank Hapoalim.  AC ¶¶ 55-56.

mortgage financing to settler customers," AC ¶ 152.  Again, there is no allegation relating these activities to any alleged injury suffered by a particular Plaintiff.

The last category of Defendants is comprised of U.S., international, and Israeli corporations (collectively, "Construction/Support Defendants"), eight of which allegedly provide construction, real estate development, and infrastructure services to settlements in the West Bank and eleven of which allegedly provide support services and products to other Defendant companies, the settlements (such as security-related services and products), or the Israeli government (such as buses and equipment for Israeli prisons and military technology for the Israeli army allegedly used in the so-called "Gaza invasions").[11]  AC ¶¶ 57-77.  None of the Complaint's allegations states any facts that connect these Defendants' business activities to any alleged injury suffered by a Plaintiff.

### *Plaintiffs' Claims*

Plaintiffs set forth their claims in four Counts.  In Count I, Plaintiffs allege a civil conspiracy "to expel all non-Jews from the OPT."  AC at 103.  Count I claims that "U.S.

---

[11]      Construction/Support Defendants are RE/MAX, LLC, RE/MAX Israel – Impact Property Developers Ltd., Africa Israel Investments, Ltd., AFI USA, Danya Cebus Ltd., Veolia Environnement S.A., Veolia North America, LLC, Veolia Environmental S.A. (Israel) Ltd., G4S PLC, G4S North America, G4S Israel, Volvo Group, Volvo Bussar AB, Merkavim Transportation Technologies, Hewlett Packard Enterprise Co. and Hewlett-Packard (Israel) Ltd. (collectively, "HPE"), Motorola Solutions, Inc., Motorola Solutions Israel Ltd., and Orbital ATK, Inc.  AC ¶¶ 57-77.

         Six additional companies are mentioned in the Complaint, but Plaintiffs do not appear to press any claims against them.  The Court already has dismissed one, Hanson Israel, Ltd., s*ee* Dec. 15, 2015 Order, Dkt. 97, and the Complaint should be summarily dismissed as to the rest. Two companies – Access Industries and CRH PLC – are listed in the caption but have been deleted from the "Defendants" section.  *See* AC ¶¶ 57-77.  There is only a single footnoted allegation with respect to these two Defendants – claiming that they engaged in unspecified lobbying activities in the U.S.  *See* AC ¶ 19 & n.63.  Another three companies – Readymix Industries (Israel) Ltd., Nesher Israel Cement Enterprises, and HeidelbergCement AG – were deleted from the caption as well as the "Defendants" discussion, but are referenced in scattershot allegations throughout the body of the Complaint.

donor/entities and their co-conspirators, including [Elliot] Abrams and [Bank Leumi

Le-Israel/Bank Hapoalim's] U.S. employees, have all conspired to encourage, raise, solicit,

contribute, or transfer significant sums overseas to promote settlement expansion," knowing that

those funds would be used, *inter alia*, to "arm the settler population with military hardware" and

"encourage militia members, with the assistance of IDF/G4S personnel, to terrorize and violently

expel their Palestinian neighbor[s] who were peacefully occupying nearby property tracts that the

settlement leaders coveted." AC ¶ 127. Plaintiffs further allege in Count I that

"construction/support firms . . . made it possible for the settlements to thrive and expand" by,

*inter alia*, "destroy[ing] Palestinian villages . . . and buil[ding] expensive housing developments,

shopping malls, and infrastructure improvements (tunnels, highways, light rail, solid waste

facilities) on private Palestinian property." AC ¶ 130.

In Count II, Plaintiffs allege "war crimes, crimes against humanity and genocide." AC at

145. Plaintiffs claim that Defendants named in this count are "war criminals" who "funded,

promoted, encouraged, assisted, and facilitated wholesale violence, ethnic cleansing, arms

trafficking, malicious wounding of their Palestinian neighbors, and theft and destruction of

private property." AC ¶ 182; *see also, e.g.*, AC ¶ 186. Plaintiffs separately allege "aiding and

abetting the commission of war crimes" in Count III, AC at 180, which "relies upon and

specifically tracks the allegations made in Count II, i.e., the commission of war crimes," AC

¶ 228. Finally, in Count IV, Plaintiffs allege an "aggravated and ongoing trespass against all

defendants who have been trespassing on private Palestinian property during the occupation."

AC at 184.

The Complaint asserts, in generic and sweeping terms, that the expansion of settlements

in the West Bank and Gaza over several decades would not have occurred without the

"knowing" conduct of Defendants, *see, e.g.*, AC ¶¶ 83, 86, and that "each one of the Plaintiffs named herein can trace the cause of his damages from violent settlers in nearby settlements back through Israel-based settlements and their bank accounts to U.S. 501(c)(3) entities and wealthy U.S. donors," AC at 17.  But there is no non-conclusory allegation that any one of Defendants did anything except to somehow "support" Israel, and, in particular, the Israeli army, Israeli settlers, settlements, and settlement policies – that is to say, Plaintiffs are asking the Court to take one side, rather than the other, in a highly controversial political dispute that has gone on for years without diplomatic resolution.  This is quintessentially the stuff of politics and decision-making by the political branches of our Government, and not of judicial adjudication.

## ARGUMENT

### THE POLITICAL QUESTION AND ACT OF STATE DOCTRINES BAR ALL OF PLAINTIFFS' CLAIMS

The Complaint fails to state a justiciable claim against any of Defendants and should be dismissed in its entirety pursuant to both the political question doctrine and the act of state doctrine.  The Complaint calls into question and asks this Court to substitute its judgment for the delicate policy decisions and choices made by the governments of Israel and the U.S. during the course of the Israeli-Palestinian conflict in the half century since the 1967 Six-Day War.

In order for Plaintiffs to obtain relief on any of the Counts, the Court necessarily would have to make an adjudicative determination that Israel does not have sovereign rights over the disputed land where the settlements are located, notwithstanding Plaintiffs' acknowledgement that the "settlements" are comprised of land that the Israeli government has "occupied" or "administered."  *See* AC at 11 n.1.  The Court also would have to make an adjudicative determination that the funding of settlement activity and related Israeli military activity, as well as the performance of construction and other services in the West Bank and Gaza, are unlawful.

12

Further, for Plaintiffs to obtain relief on their ATS claims, the Court would have to make adjudicative determinations on whether the Israeli activities in the West Bank and Gaza constitute international crimes, including "war crimes," "genocide," and "ethnic cleansing." For Plaintiffs to obtain relief on Count IV, the Court again would have to adjudicate whether the settlement activity in the West Bank is tortious in nature under U.S. law.

The Court is thus explicitly invited by Plaintiffs to step into the middle of what is both an internal Israeli political controversy and a major international political dispute and to add its own policy views to those of the U.S. Executive Branch and Congress, which have been wrestling with how to resolve the Israeli-Palestinian dispute for decades. Courts lack jurisdiction over inherently "political" questions, such as these, which arise out of and are intertwined with sensitive issues of foreign policy, and actions that challenge the acts of a recognized sovereign state taken within its own territory. The Court cannot resolve the questions outlined above without making pronouncements on, and thereby interjecting itself into, sensitive and complex foreign policy issues that are the province of the Executive and Legislative Branches. Furthermore, the Court cannot resolve these issues without judging the sovereign actions of the Israeli government taken within its own territory or otherwise in the context of armed conflicts. For all these reasons, the Complaint fails to state a justiciable claim against any of Defendants under the political question and act of state doctrines.

### A.   Plaintiffs' Claims Are Not Justiciable Under The Political Question Doctrine

Under the political question doctrine, federal courts may not resolve "controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 839, 840 (D.C. Cir. 2010). The political question doctrine is rooted in the Constitutional separation of powers and recognizes that decisions clearly committed to the

political branches of the Government are non-justiciable. The seminal decision on the political

question doctrine is *Baker v. Carr*, 369 U.S. 186 (1962), in which the Supreme Court held that a

question is political and therefore non-justiciable when any one of the following six factors is

present:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department, or
>
> [2] a lack of judicially discoverable and manageable standards for resolving it, or
>
> [3] the impossibility of deciding without an initial policy determination of a kind clearly for non-judicial discretion, or
>
> [4] the impossibility of a court's undertaking independent resolution without expressing a lack of the respect due coordinate branches of government, or
>
> [5] an unusual need for unquestioning adherence to a political decision already made, or
>
> [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217. Virtually all these factors apply directly to Plaintiffs' Complaint.

### 1.    The Issues Raised In The Complaint Previously Have Been Deemed Political Questions Under *Baker v. Carr*

The application of the political question doctrine to claims like these, stemming from the

decades-old conflict between Israel and the Palestinians, already has been confirmed in this

district. In *Doe I*, Palestinian plaintiffs filed a complaint remarkably similar to this one, asserting

claims under the ATS, the Torture Victims Protection Act ("TVPA"), assorted international

conventions and agreements, the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

and other laws, against the President and Secretary of State, the State of Israel, and a number of

its officials, including several generals of the army, a number of American defense contractors

and manufacturers, and so-called "settler defendants," including a New Jersey congregation and

its rabbi, who allegedly raised funds for Israeli settlers in the West Bank. The court, in a lengthy

and carefully reasoned opinion by Judge Bates, dismissed the complaint as to all defendants

based, *inter alia,* on the political question and act of state doctrines. *Doe I*, 400 F. Supp. 2d at

96.

In finding that the plaintiffs' complaint raised non-justiciable political questions, Judge

Bates wrote: "It is hard to conceive of an issue more quintessentially political in nature than the

ongoing Israeli-Palestinian conflict, which has raged on the world stage with devastation for both

sides for decades." *Id.* at 111-12.  Judge Bates explained that the plaintiffs' claims "would have

this Court adjudicate the rights and liabilities of the Palestinian and Israeli people," requiring

determinations (i) regarding "to whom the land in the West Bank actually belongs," (ii) "that

Israel's self-defense policies are tantamount to terrorism," (iii) "that the Israeli settlement

activities are illegal or tortious," and (iv) "characteriz[ing] the ongoing armed conflict in the

West Bank as either 'genocide' . . . or self-defense." *Id.* at 112.  The court found that it could not

rule on these issues:

> The Court can do none of this.  Whether plaintiffs dress their claims in the garb of
> RICO or other federal statutes, or the tort laws of various states, the character of
> those claims is, at its core, the same: peculiarly volatile, undeniably political, and
> ultimately nonjusticiable.  A ruling on any of these issues would draw the Court
> into the foreign affairs of the United States, thereby interfering with the sole
> province of the Executive Branch.

*Id.*  The court further held that a conclusion that Israeli settlement activities are illegal or tortious

"would also implicitly condemn American foreign policy by suggesting that support of Israel is

wrongful.  Conclusions like these present a potential for discord between the branches that

further demonstrates the impropriety of a judicial decision on these quintessential political

issues." *Id.*

These findings and assessments by Judge Bates in *Doe I* are equally applicable in this

case.  Plaintiffs seek a U.S. judicial determination that Israeli activities in the West Bank and

Gaza constitute unlawful activity (Count I), war crimes (Counts II and III), and aggravated and ongoing trespass (Count IV).   All of these Counts rest on the notion that Israeli settlement activities have taken place on Palestinian land and resulted in "ethnic cleansing" and "genocide" of Palestinian nationals, as well as "malicious theft and destruction of property" belonging to Palestinians.  *See generally* AC at 11-32 (Introduction/Summary).  All of Plaintiffs' alleged injuries as described in Exhibit C arise from those activities or Israeli military activities during armed conflicts in the West Bank and Gaza.  *See generally* Ex. C.  Like the claims found non-justiciable in *Doe I*, Plaintiffs' claims would improperly require the Court to decide "to whom the land in the West Bank actually belongs," to declare "that the Israeli settlement activities are illegal or tortious," and to "characterize the ongoing armed conflict in the West Bank as [] 'genocide.'"  400 F. Supp. 2d at 112.  As in *Doe I*, the claims set forth in the Complaint are non-justiciable as to all Defendants.

**2.      The *Baker v. Carr* Factors Confirm That Plaintiffs' Complaint Raises Non-Justiciable Political Questions**

The political climate has not changed meaningfully since the *Doe I* decision, other than to have become, if anything, even more politicized, volatile, and complicated.  Accordingly, the *Baker v. Carr* factors require that the Complaint be dismissed.

*First*, the conduct of foreign policy, which is at the heart of this case, unquestionably is committed to the political branches of the Federal Government.  *Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention."); *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952) (observing that matters relating "to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference").   America's policy toward the State of Israel and Israel's conflict with the

Palestinians are among the most delicate and vexing foreign policy issues of our time and have been so for decades. The U.S. Government has provided over $100 billion in aid to Israel during the past 20 years, including over $40 billion in grants for its military forces, and the U.S. State Department recently announced additional grants of $38 billion in military aid over the next 10 years.[12] Every President and Secretary of State during the last 40 years has tried to find a delicate balance that provides a path to peace between Israel and its neighbors and protects U.S. national interests. Recent debates concerning the United Nations Security Council's resolution on Israeli settlements further reinforce the political nature of the issues. What the Supreme Court recently said concerning Jerusalem in *Zivotofsky v. Kerry*, 576 U.S. ___, 135 S. Ct. 2076, 2081 (2015), is equally applicable to the West Bank and Gaza:

> Questions touching upon the history of the ancient city and its present legal and international status are among the most difficult and complex in international affairs. In our constitutional system those matters are committed to the Legislature and the Executive, not the judiciary.

*Second*, as noted above, Plaintiffs contend that the activities of Israeli settlers and the Israeli armed forces constitute war crimes, crimes against humanity, and genocide. The government of Israel and others take an opposite view. They advocate that the settlers' activities constitute lawful economic development, and its military's activities constitute lawful self-defense against persons and organizations who have publicly advocated for the destruction

---

[12]    Cong. Research Serv., U.S. Foreign Aid to Israel, Appendix B (RL33222 Dec. 22, 2016), https://2009-2017.state.gov/p/nea/rls/rm/261928.htm; Thomas A. Shannon, Jr., Under Sec'y of State for Political Affairs, U.S. Dep't of State, Susan E. Rice, Nat'l Sec. Advisor, and Jacob Nagel, Israeli Acting Nat'l Sec. Advisor, Statements at the Signing of a Memorandum of Understanding between the United States and Israel on Security Assistance (Sept. 14, 2016), http://www.state.gov/p/nea/rls/rm/261928.htm.  "The D.C. Circuit has consistently treated the political-question doctrine as bearing on subject-matter jurisdiction," and courts resolving a motion to dismiss for lack of subject matter jurisdiction may consider materials outside the pleadings. *Mobarez v. Kerry*, No. 15-cv-516 (KBJ), 2016 U.S. Dist. LEXIS 64437, at *8-9 (D.D.C. May 17, 2016).

of Israel.  Regardless of how any litigant or this Court might view this dispute along any point

between the ends of this political spectrum, the simple fact remains that this dispute is a political

question that this forum cannot resolve:  U.S. courts are simply in no position to find "judicially

discoverable and manageable standards for resolving" these disputed issues.  *Baker*, 369 U.S. at

217.  These issues would require the Court "to measure and balance a myriad of thorny foreign

and domestic political considerations," rendering them "inherently political" questions that

cannot be resolved by the law of torts or other statutory law.  *Schneider v. Kissinger*, 310

F. Supp. 2d 251, 262 (D.D.C. 2004); *accord Doe I,* 400 F. Supp. 2d at 112-13.

     *Third*, the Court cannot decide the issues raised in the Complaint without rendering

"initial policy determination[s] of a kind clearly for nonjudicial discretion."  *Baker*, 369 U.S. at

217 (factor 3).  To grant Plaintiffs relief, the Court would have to characterize the conflict in the

West Bank and Gaza and the actions of the Israeli government (through the IDF or in

constructing infrastructure, such as the separation wall, *see* AC ¶¶ 91-92) as "genocide" and

"ethnic cleansing," and the construction and development activities performed by certain

Defendants as "aggravated trespass" and "malicious destruction of property."  The entire

Complaint depends upon the notion that each of the activities alleged to underlie Plaintiffs'

claims – donations and fundraising for lawful entities, political advocacy, and normal banking

and commercial transactions with counterparties that have not been sanctioned by the U.S.

Government – becomes unlawful because Plaintiffs allege that any dealings with Israeli

settlements, settlers, or armed forces are *ipso facto* violations of international law or otherwise

inherently unlawful.  It is hard to imagine a more blatant case of a court being asked to make a

political judgment on matters that our legal system properly leaves to the political branches.  *See*

*Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 984 (9th Cir. 2007) (dismissing ATS case against

Caterpillar for selling to the Israeli army bulldozers used to demolish Palestinian homes in the West Bank because "[a]llowing this action to proceed would necessarily require the judicial branch of our government to question the political branches' decision to grant extensive military aid to Israel").

*Fourth* and *fifth*, Plaintiffs call for a judgment by this Court that, if granted, would express "a lack of the respect due coordinate branches of government" and raise "the potentiality of embarrassment from multifarious pronouncements by various departments on one question." *Baker*, 369 U.S. at 217 (factors 4 & 6).  Executive Branch officials and members of Congress consistently voice support for the Israeli government,[13] and, while they have tried to walk a fine line on activities in the West Bank and Gaza, they have never suggested that support for Israeli settlements is illegal – which this Court would have to do to find in favor of Plaintiffs.  For example, the U.S. voted against U.N. General Assembly Resolution 66/225, dated March 29, 2012, which stated that Israeli settlements are contrary to international law and Israel's legal obligations,[14] and it abstained on the recent U.N. Security Council Resolution 2334, dated

---

[13]     *See, e.g.*, U.S. State Department Press Releases on Israel, https://2009-2017.state.gov/p/nea/ci/is/c5218.htm; Trade Facilitation and Trade Enhancement Act of 2015, Pub. L. No. 114-125, 130 Stat. 122 (Feb. 24, 2016) ("TFTEA") (stating that "Israel is America's dependable, democratic ally in the Middle East – an area of paramount strategic importance to the United States," TFTEA § 909(a), and opposing as a matter of policy "politically motivated actions that penalize or otherwise limit commercial relations specifically with Israel, such as boycotts of, divestment from, or sanctions against Israel," TFTEA § 909(b)).

[14]     G.A. Res. 66/225, U.N. Doc. A/RES/66/225 (Mar. 29, 2012), http://www.un.org/en/ga/search/view_doc.asp?symbol=%20A/RES/66/225; U.N. GAOR, 66th Sess. 91st plen. mtg. at 17, U.N. Doc. A/66/PV.91 (Dec. 23, 2001), http://www.un.org/en/ga/search/view_doc.asp?symbol=A/66/PV.91 (evidencing U.S. vote against resolution); *see also* Susan E. Rice, U.S. Ambassador to the United Nations, Explanation of Vote on the Resolution on the Situation in the Middle East (Feb. 18, 2011), https://2009-2017-usun.state.gov/remarks/4978 (explaining veto of Security Council resolution condemning Israeli settlements as illegal, stating in part, "It is the Israelis' and Palestinians' conflict, and even the best-intentioned outsiders cannot resolve it for them.  Therefore, every potential action must be measured against one overriding standard: will it move the parties closer to negotiations and an

December 23, 2016, because it could not "in good conscience stand in the way of a resolution at

the United Nations that makes clear that both sides must act now to preserve the possibility of

peace."[15]  Any judgment from a U.S. court suggesting that settlement activity is unlawful,

criminal, or tortious surely would serve only as a prop to be brandished by opponents of U.S.

policy in the U.N. and elsewhere.[16]  Such action could only undermine coordinate branches of

Government and further complicate an already very difficult and delicate political situation.

It would also undermine the Legislative Branch.  In the TFTEA, Congress prohibited

domestic courts from recognizing or enforcing foreign civil judgments entered against U.S.

persons and entities doing business in Israel (including "any territory controlled by Israel") or

with Israeli entities if the judgment is based in whole or part on a determination that such

business dealings constitute a violation of law.  *See* TFTEA § 909(e).  It would be entirely

incongruous if Plaintiffs could obtain a judgment from a U.S. court based on a determination that

doing business with Israel or Israeli settlements was illegal, where the same court would be

barred from enforcing such a judgment if Plaintiffs had pressed their suit overseas.

---

agreement?  Unfortunately, this draft resolution risks hardening the positions of both sides. . . .   While we agree with our fellow Council members – and indeed, with the wider world – about the folly and illegitimacy of continued Israeli settlement activity, we think it unwise for this Council to attempt to resolve the core issues that divide Israelis and Palestinians.").

[15]      John Kerry, Sec'y of State, U.S. Dep't of State, Statement on the Vote in the UN Security Council (Dec. 23, 2016), https://2009-2017.state.gov/secretary/remarks/2016/12/266070.htm.

[16]      "It is not the role of the courts to indirectly indict Israel for violating international law… Plaintiffs may purport to look no further than Caterpillar itself, but resolving their suit will necessarily require us to look beyond the lone defendant in this case and toward the foreign policy interests and judgments of the United States government itself."  *Corrie*, 503 F.3d at 984; *see also Matar v. Dichter*, 500 F. Supp. 2d 284, 295 (S.D.N.Y. 2007) (granting defendant's motion for dismissal and stating, in a case alleging war crimes and brought pursuant to the ATS and TVPA, that "[t]his Court cannot ignore the potential impact of this litigation on the Middle East's delicate diplomacy").

Further, the decisions each and every year by the President to request, and Congress to authorize, financial support to the military forces of Israel reflect a judgment that the interests of the U.S. warrant such support and that it is consistent with American values.[17]  Plaintiffs are asking this Court to determine that alleged general financial support to those same military forces by Defendants constitutes participation in war crimes, crimes against humanity, and genocide. Such a decision would implicitly condemn the consistent policy decisions of the Executive and Legislative Branches over the past several decades.

Finally, the President has exercised his power under laws enacted by Congress to deal with "grave acts of violence committed by foreign terrorists that disrupt the Middle East peace process."  Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 25, 1995).  That order prohibits donations by U.S. persons to persons or organizations specified in or pursuant to the order.  The list includes Hamas, Hezbollah, and the Popular Front for the Liberation of Palestine, but it does not include the Israeli army, Israeli settlements, or anyone claimed in the Complaint to have engaged in terrorism.[18]  Plaintiffs make the patently false claim that a donor's financial support to IDF soldiers "directly contravenes this Executive Order."  AC ¶ 97(e).  On the contrary, the order reflects a determination by the President as to what organizations in the Middle East may not receive contributions by Americans because of their acts of terrorism, and the President has not included the organizations alleged to have received donations in this case.  In effect, Plaintiffs seek to have a court overrule the President's determination, which he is exclusively authorized to make.  Such a judicial decision would not only intrude upon the authority of the

---

[17]     *See* footnote 12, *supra*.

[18]     The order was amended to include additional terrorists by Executive Order No. 13,099 on August 20, 1998 (Exec. Order No. 13,099, 63 Fed. Reg. 45,167 (Aug. 25, 1998)) and was continued in effect by President Obama on January 20, 2016 (Notice No. 2016-01427, 81 Fed. Reg. 3937 (Jan. 22, 2016)).

political branches to conduct foreign affairs, but would also present the final description of a

political question in *Baker* – one presenting "the potentiality of embarrassment from multifarious

pronouncements by various departments on one question." 369 U.S. at 217.

The Supreme Court has stated that the existence of any one of the six *Baker* factors

requires dismissal. *Id.* Here, where five of the six factors are clearly present, there can be no

doubt that this Complaint must be dismissed under the political question doctrine.[19]

**B.    Plaintiffs' Claims Are Not Justiciable Under The Act Of State Doctrine**

The act of state doctrine also precludes all of Plaintiffs' claims.  The act of state doctrine

prevents U.S. courts from inquiring into the validity of public acts committed by a foreign

sovereign within its own territory.  *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401

(1964); *accord World Wide Minerals Ltd .v. Republic of Kazakhstan*, 296 F.3d 1154, 1164-65

(D.C. Cir. 2002).  The doctrine applies "when the outcome of the case turns upon [] the effect of

official action by a foreign sovereign."  *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l*,

493 U.S. 400, 407 (1990).  Like the political question doctrine, the act of state doctrine is rooted

---

[19]    The reasoning set forth in *Doe I* and the facts detailed above fundamentally distinguish the instant case from those such as *Biton v. The Palestinian Interim Self-Government Authority*, 310 F. Supp. 2d 172 (D.D.C. 2004) and 412 F. Supp. 2d 1 (D.D.C. 2005).  The court in *Biton* held justiciable a suit against the Palestinian Authority and others for a terrorist attack under the Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq*. (the "ATA"), because it was an "ordinary tort suit" that could be judicially resolved based on the statutory definition of "international terrorism" and the common law of tort and presented no separation of powers concerns since the Executive and Legislative Branches had "'expressly endorsed'" suits against terrorist organizations by enacting the ATA.  310 F. Supp. 2d. at 175, 184.  In that case and others like it, the Israeli-Palestinian conflict was the contextual backdrop and perhaps the motivation for the defendants' alleged unlawful acts, but it was not the central issue for resolution.  By contrast, the foundation of Plaintiffs' claims here is the proposition that they own land allegedly unlawfully seized and settled by Israel and that their injuries were allegedly inflicted by the Israeli military and settlers during Israel's purportedly wrongful occupation of the West Bank and Gaza.  Resolution of these issues would require the Court to directly decide the core issues that lie at the heart of the political conflict, namely, the proper owners of the disputed land in the West Bank and Gaza and the legitimacy of Israel's self-defense and settlement policies and activities.

in the Constitutional separation of powers, "reflecting 'the strong sense of the Judicial Branch

that its engagement in the task of passing on the validity of foreign acts of state may hinder' the

conduct of foreign affairs." *W.S. Kirkpatrick,* 493 U.S. at 405 (quoting *Banco Nacional de

Cuba*, 376 U.S. at 423).

An essential question – indeed, *the* essential question – raised in Plaintiffs' Complaint is

the propriety of decades of Israeli activities in the West Bank and Gaza.  That issue underlies all

Counts of the Complaint.  The applicability of the act of state doctrine to such Israeli activities in

the West Bank and Gaza already has been confirmed by the *Doe I* court, which found that

"federal courts have long recognized that the exploitation of natural resources and land within a

nation's own borders is, by legal definition, an act of state."  400 F. Supp. 2d at 114.  Notably,

while the plaintiffs in *Doe I* disputed whether the challenged actions occurred within Israel's

"borders," Judge Bates found that this argument itself "raises a political question – the court is

not competent to adjudicate whether the West Bank, in dispute for decades, belongs to the

Israelis or the Palestinians."  *Id.* at 114 n.6.  The court held that the defendants' alleged taking of

land for the use of Israel and its people was an act "of the Israeli state, through individual actors

carrying out the mandate of the state for its benefit."  *Id.*

Plaintiffs here ask the Court to find that the alleged financial support provided to

settlements and the IDF by the Donor and Charitable Entity Defendants, purportedly through the

Bank Defendants, and the services allegedly provided in the West Bank and Gaza by

Construction/Support Defendants constitute war crimes, trespass, and other tortious and criminal

activity.  Deciding these claims would require the Court to "adjudicate sensitive issues of a

political nature that would offend notions of international comity," which it cannot do under the

act of state doctrine.  *Id.*  This conclusion is not altered by the fact that Defendants are private

actors rather than the State of Israel and its officials or the fact that the Complaint, in part, targets the actions of "armed settlers" that allegedly were supported or encouraged by certain Defendants.[20]  *See, e.g.*, AC ¶¶ 79, 87, 96.  In this respect, the instant case is no different from *Glen v. Club Mediterranée, S.A.*, 450 F.3d 1251 (11th Cir. 2006), in which the plaintiffs brought state law claims of trespass and unjust enrichment against a hotel chain as a result of its operation of a resort on land that the Cuban government had expropriated from plaintiffs.  The Court of Appeals for the Eleventh Circuit affirmed the district court's decision dismissing the plaintiffs' claims pursuant to the act of state doctrine.  *Id.* at 1252.  The Eleventh Circuit found that the plaintiffs' claims were "predicated on their continued *ownership*" of the property and therefore "[t]he validity of the Cuban government's act of expropriation is directly at issue in this litigation."  *Id.* at 1254 (emphasis in original).

As recognized both in *Doe I* and by Plaintiffs here, the land on which Israeli settlements have been built is land to which the Israeli government has laid claim.  400 F. Supp. 2d at 114; AC at 11 n.1 ("The term 'settlements' includes all Israeli civilian communities *built on lands occupied or otherwise administered by Israel during its second occupation . . . .*") (emphasis added).  Defendants that are alleged to have developed and funded the development of land in the West Bank have done so in connection with actions of the Israeli government.  Yet, Plaintiffs' claims depend on the notion that Palestine has sovereign rights over the land in question.  This is not a justiciable dispute for a federal court to resolve.

---

[20]    Plaintiffs' allegations differ from those found not to raise act of state issues in cases like *W.S. Kirkpatrick* and *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28 (D.D.C. 2004).  In those cases, the issue was not the legality of conduct by a foreign government but rather the role that non-foreign entities played in "obtaining" or "procuring" the actions of the foreign government.  *See W.S. Kirkpatrick*, 493 U.S. at 406; *Abu Ali*, 350 F. Supp. 2d at 59.  The Complaint does not allege – nor could it – that Defendants obtained or procured Israeli government actions in the West Bank and Gaza; rather, it is based on the notion that these settlements themselves are illegal and that anything that helps the settlements is therefore also inherently illegal.

To a great extent, Plaintiffs rest their claims on support by Defendants for alleged actions of the armed forces of the State of Israel.  Indeed, as to Defendants Friends of the Israel Defense Forces, Lawrence Ellison, and Haim Saban, their alleged financial support to the IDF is the sole basis for Plaintiffs' claims.  For the Court to entertain these claims would necessarily require it to adjudicate whether the Israeli armed forces engaged in war crimes or other tortious conduct on Israeli soil, including second-guessing the legality of specific targeting and other real-time military decisions under the laws of war.  The Court has no jurisdiction to make these adjudications under the act of state doctrine.

The acts of the military of a foreign nation within its own borders are classic acts of state. In *Underhill v. Hernandez*, 168 U.S. 250 (1897), the plaintiff – an American citizen – sued a Venezuelan military commander who had allegedly assaulted and detained him in Venezuela. Declaring that "the courts of one country will not sit in judgment of the acts of the government of another," *id*. at 252, the court held the damages lawsuit against the commander presented a political question.  In *Oetjen v. Central Leather Co.*, 246 U.S. 297 (1918), the Court reached the same conclusion where an army general in revolutionary Mexico ordered the seizure of hides from a dealer who refused to pay a tax levied for support of the army.  After the hides were sold by the army and shipped to the U.S., the plaintiff filed suit in replevin, claiming the hides were its property which had been assigned to the Mexican dealer.  Although neither Mexico nor any of its officials was a defendant in the lawsuit, the Court held the seizure "was the action, in Mexico, of the legitimate Mexican government when dealing with a Mexican citizen," and "is not subject to re-examination and modification by the courts of this country."  *Id.* at 311.

While the Complaint comments on misconduct by individual Israeli soldiers, it is unquestionably the Israeli army itself, not rogue individuals, whose activity Plaintiffs ask the

Court to characterize as war crimes and genocide.  *Compare Doe v. Exxon Mobil Corp.*, 69

F. Supp. 3d 75, 88 (D.D.C. 2014), where plaintiffs did not claim "that Exxon's security forces,

while admittedly soldiers in the Indonesian military, injured them pursuant to official policies of

the GOI [government of Indonesia] or orders from military commanders."  Here, the support

provided by Friends of the Israel Defense Forces was allegedly to the army itself, not to any

particular soldiers.  *See, e.g.*, AC at 21 (Defendants "directly fund the Israeli army and the

criminal activities that its personnel have engaged in.").  Further, Plaintiffs cannot credibly argue

that the actions of the IDF in the territories occupied by Israel as a result of the 1967 Six-Day

War are not within its "borders" for purposes of the act of state doctrine.  That argument was

made in *Doe I, supra*, and Judge Bates correctly noted that it "also raises a political question –

the court is not competent to adjudicate whether the West Bank, in dispute for decades, belongs

to the Israelis or the Palestinians."  400 F. Supp. 2d at 114 n.6.

In sum, Plaintiffs seek rulings regarding the legitimacy of actions by a foreign sovereign,

and their case largely depends on the Court's determinations of those questions.  The Court

cannot make these determinations as they are constitutionally committed to the political branches

of our Government.  Plaintiffs' Complaint is therefore non-justiciable under the act of state

doctrine.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint in its entirety with

prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).

### APPENDIX A

Separately, Defendants Gush Etzion Foundation, American Friends of Ariel, American Friends of Ulpana Ofra, Christian Friends of Israeli Communities, Honenu National Legal Defense Organization, The Hebron Fund, and the Efrat Development Foundation state as follows: These Defendants object to the use of the terms "OPT" and "West Bank" in this case and to the implied premise that suggests that the Plaintiffs enjoy any rights, let alone superior rights, to Judea, Samaria, the City of Jerusalem, or any part of the land of Israel.  This is another reason why the current action must be dismissed for lack of subject matter jurisdiction for lack of justiciability under the political question doctrine.  The area in question has been part of the Jewish homeland, and constant home to an unbroken succession of Jewish people, for over 3,000 years.[1]  For centuries, emissaries from the Land of Israel have engaged in collecting charitable contributions from Jews and Gentiles the world over for the support of Jewish communities in Judea, Samaria and Jerusalem, a time-honored practice that Plaintiffs allege the indigenous NGO Defendants continue to engage in.

The entire area at the heart of this lawsuit was part of the territory acknowledged as and earmarked for a Jewish homeland in 1920 at the San Remo Conference that drafted the League of Nations Charter.  Two years later, the League of Nations Mandate explicitly stated that the Mandatory Power was responsible for putting into effect the Balfour Declaration[2] in favor of a Jewish national home in Palestine, and that Jews have the right to settle anywhere therein,

---

[1]     Charles Krauthammer, Fact #1: Jews have been living in Israel continuously for over 3,000 years, 10 Facts About the Arab-Israeli Conflict, http://arabisraeliconflict.info/arab-israel-facts/fact-1-jewish-history-israel (last visited Jan. 26, 2017).

[2]     *The Balfour Declaration*, BBC NEWS (Nov. 29, 2001, 3:19 AM), http://news.bbc.co.uk/2/hi/in_depth/middle_east/israel_and_the_palestinians/key_documents/1682961.stm.

including Judea, Samaria and all parts of Jerusalem.[3]  That same year, a joint resolution of Congress, H.J. Res. 360, unanimously endorsed the legality of the Mandate and confirmed the irrevocable right of Jews to settle anywhere between the Jordan River and the Mediterranean Sea.[4]  In 1947, Israel agreed to the UN Partition Plan, as approved by the General Assembly and recommended to the Security Council.  The other relevant parties did not agree, however, and so the Resolution was never acted upon and rendered a dead letter legally.[5]  Israel was attacked by the Arab world in 1948 and Jordan illegally attempted to annex Judea, Samaria and ancient Jerusalem.[6]  As a result, the legal status of Judea, Samaria and Jerusalem remained subject to the terms of the League of Nations Mandate and therefore was preserved to this day by Article 80 of the UN Charter.[7]  In 1967, Israel liberated those territories in a clearly defensive war under Article 51 of the UN Charter[8] thereby legitimately regaining full possession and control over land it already had rights to.  The volatile political nature of the issue addressed in this Appendix alone should make it clear that this is, at the very least, a deeply political question.

---

[3]     *The Palestine Mandate*, YALE L. SCH. LILLIAN GOLDMAN L. LIBR., http://avalon.law.yale.edu/20th_century/palmanda.asp (last visited Jan. 26, 2017).

[4]     Eli E. Hertz, *"Mandate for Palestine" The Legal Aspects of Jewish Rights*, MYTHS & FACTS, http://www.mythsandfacts.org/conflict/mandate_for_palestine/mandate_for_palestine.htm (last visited Jan. 26, 2017).

[5]     Eugene W. Rostow, *Historical Approach to the Issue of Legality of Jewish Settlement Activity*, THE NEW REPUBLIC, Apr. 23, 1990.

[6]     Abraham Bell & Eugene Kontorovich, *Palestine, Uti Possidetis Juris, and the Borders of Israel*, 58 ARIZ. L. REV. 633 (2016).

[7]     U.N. Charter art. 80.

[8]     U.N. Charter art. 51.