**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BASSEM AL-TAMIMI, et al., | |
| Plaintiffs, | Case No. 16-cv-445 (TSC) |
| v. | |
| SHELDON ADELSON, et al., | **[Oral Argument Requested]** |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ......................................................................................1

ARGUMENT ...........................................................................................3

    A.    The Complaint Raises Non-Justiciable Questions ....................................3

    B.    The Cases Relied On By Plaintiffs Are Inapposite..................................6

    C.    The Government's Statements Regarding Non-Justiciability Should Be
        Afforded Substantial Weight .................................................................9

    D.    Plaintiffs' Arguments That They Have Pled Viable Claims Under The
        Alien Tort Statute Are Irrelevant And In Any Event Incorrect ...........................10

CONCLUSION........................................................................................13

# TABLE OF AUTHORITIES[*]

**PAGE**

**CASES**

*Baker v. Carr*,
    369 U.S. 186 (1962)........................................................................2, 3

*Biton v. Palestinian Interim Self-Gov't Auth.*,
    310 F. Supp. 2d 172 (D.D.C. 2004) ...................................................6

*Biton v. Palestinian Interim Self-Gov't Auth.*,
    412 F. Supp. 2d 1 (D.D.C. 2005).....................................................6, 7

*Cardona v. Chiquita Brands Int'l, Inc.*,
    760 F.3d 1185 (11th Cir. 2014) .........................................................12

*Doe v. State of Israel*,
    400 F. Supp. 2d 86 (D.D.C. 2005) ...............................2, 3, 4, 6, 8, 11

*Doe v. Exxon Mobil Corp.*,
    69 F. Supp. 3d 75 (D.D.C. 2014) .......................................................9

*Doe v. Exxon Mobil Corp.*,
    Civ. No. 01-1357(RCL), 2015 U.S. Dist. LEXIS 91107 (D.D.C. July 6, 2015) ...............12

*El-Shifa Pharm. Indus. Co. v. United States*,
    607 F.3d 839 (D.C. Cir. 2010) ............................................................1

*In re Papandreou*,
    139 F.3d 247 (D.C. Cir. 1998) ............................................................9

*Joo v. Japan*,
    413 F.3d 45 (D.C. Cir. 2005) ............................................................10

*Kiobel v. Royal Dutch Petroleum Co.*,
    133 S. Ct. 1659 (2013)......................................................................11

*Lev v. Arab Bank*,
    08 CV 3251 (NG)(VP), 2010 U.S. Dist. LEXIS 16887 (E.D.N.Y. Jan. 29, 2010)....7, 9, 10

*Linde v. Arab Bank, PLC*,
    384 F. Supp. 2d 571 (E.D.N.Y. 2005) .................................................7

---

[*]     Asterisks identify those authorities on which Defendants chiefly rely.

**PAGE**

*Mastafa v. Chevron Corp.*,
    770 F.3d 170 (2d Cir. 2014)......................................................................................12

*Simon v. Republic of Hungary*,
    812 F.3d 127 (D.C. Cir. 2016) ...............................................................................8, 9, 11

*Sokolow v. Palestine Liberation Org.*,
    583 F. Supp. 2d 451 (S.D.N.Y. 2008)..........................................................................8

*Whiteman v. Dorotheum GmbH & Co. KG*,
    431 F.3d 57 (2d Cir. 2005)..........................................................................................9

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ..................................................................................1

Federal Rule of Civil Procedure 12(b)(6) ............................................................................3, 11

Defendants Sheldon Adelson, Lawrence Ellison, John Hagee, Irving Moskowitz, Haim Saban, American Friends of Ariel, American Friends of Ulpana Ofra, American Friends of Bet El Yeshiva, Christian Friends of Israeli Communities, Efrat Development Foundation, Falic Family Foundation, Inc., Friends of the Israel Defense Forces, Gush Etzion Foundation, Honenu National Legal Defense Organization, The Hebron Fund, Bank Leumi Le-Israel B.M., Bank Leumi USA, Bank Hapoalim B.M., RE/MAX, LLC, Access Industries, Inc., Veolia Environnement S.A., Veolia North America, LLC, Hewlett Packard Enterprise Co., Hewlett Packard (Israel) Ltd., Motorola Solutions, Inc., Motorola Solutions Israel Ltd., and Jewish National Fund (Keren Kayemeth Le Israel) Inc. (collectively, "Defendants") respectfully submit this reply memorandum in support of their motion to dismiss Plaintiffs' Amended Complaint (Dkt. 77, "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(1) (Dkt. 107, "Motion").

## **INTRODUCTION**

The political question doctrine prevents federal courts from resolving "controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 840 (D.C. Cir. 2010). Plaintiffs' opposition to the Motion (Dkt. 111, "Opposition" or "Opp.") fails to rebut – and, in fact, reinforces – that this is precisely the exercise Plaintiffs would have this Court undertake.

Plaintiffs cannot prevail on any of their claims without this Court making judicial findings that: (1) Israel does not have sovereign rights over the disputed land where the settlements are located; (2) the funding of settlement activity and Israeli military activity, as well as the performance of construction and other services, in the West Bank and Gaza, are unlawful; and (3) Israeli activities in the West Bank and Gaza constitute (a) tortious activity under U.S. law

and (b) international crimes, including "terrorism, "war crimes," "genocide," and "ethnic cleansing." *See* Opp. at 6, 8, 11, 12-13, 14, 20-21. These are the very types of "political" questions that federal courts lack jurisdiction to resolve because they arise out of, and are intertwined with, sensitive issues of foreign policy. As described in detail in the Motion, the Supreme Court's decision in *Baker v. Carr*, 369 U.S. 186 (1962), set forth the six factors that render a question political and therefore non-justiciable, and, although the presence of any *one* of those factors would suffice to warrant dismissal of Plaintiffs' Complaint, at least *five* of the six factors are present here. Mot. at 16-22.

Plaintiffs seek to stave off dismissal by recasting their claims and pointing to a handful of inapposite cases. As shown below, each case touted by Plaintiffs in their Opposition is factually and legally distinguishable from the Complaint, since none of the cases required a court to adjudicate decades of politically fraught relations between Israel and the Palestinian inhabitants of the West Bank and Gaza. In contrast, the principal decision relied on by Defendants, *Doe v. State of Israel*, 400 F. Supp. 2d 86 (D.D.C. 2005) (Bates, J.) ("*Doe I*"), involved claims that arose out of the very same Israeli-Palestinian conflict at issue here. Judge Bates properly dismissed those claims under both the political question and act of state doctrines, and this Court should do the same.

Far from advancing Plaintiffs' position, Plaintiffs' cited cases are notable for a different reason – one that bolsters *Defendants'* Motion: The cases emphasize the importance and weight that courts should afford to the Executive Branch's assessment that claims raise non-justiciable political questions. That very circumstance is present here, where the United States (a substitute defendant for Defendant Elliott Abrams) has clearly expressed the Executive Branch's position that these issues depend on non-justiciable political questions. (Dkt. 104, "Gov. Brief.")

Finally, this Court should not be distracted by Plaintiffs' rambling arguments concerning Alien Tort Statute ("ATS") or Anti-Terrorism Act ("ATA") claims.  As shown below, (1) the arguments are irrelevant because this is not an ATA case and there is no ATS "exception" to non-justiciability bars, and (2) as Defendants' additional briefing on its motion to dismiss (including on Rule 12(b)(6) grounds) would amplify should it become necessary, Plaintiffs cannot rebut the presumption against extraterritorial application of the ATS.

In sum, under the political question and act of state doctrines, the Complaint fails to state a justiciable claim against any of the Defendants and must be dismissed.

## **ARGUMENT**

### A.    **The Complaint Raises Non-Justiciable Questions**

In a prior case making remarkably similar claims, this same court applied the *Baker v. Carr* factors and dismissed the complaint under the political question and act of state doctrines. The same analysis and result are warranted here.  In *Doe I*, Palestinian plaintiffs asserted claims under the ATS and other laws against American defense contractors and manufacturers, U.S. officials, and other defendants, including a U.S.-based congregation and its rabbi (who allegedly raised funds for Israeli settlers in the West Bank).  After analyzing the various claims and the applicable law, Judge Bates determined that the claims raised non-justiciable questions over which the court lacked jurisdiction.  *Doe I*, 400 F. Supp. 2d at 96.  The essence of the court's reasoning is captured by the following statement:

> It is hard to conceive of an issue more quintessentially political in nature than the ongoing Israeli-Palestinian conflict, which has raged on the world stage with devastation for both sides for decades.

*Id.* at 111-12.

Plaintiffs' attempt to circumvent the holding in *Doe I* does not withstand scrutiny. Plaintiffs contend that the fatal mistake of the *Doe I* plaintiffs was their "requested . . . award of declaratory relief that necessarily implicated the political question doctrine" since it "sought a ruling from Judge Bates that 'Israel was a terrorist state.'"  Opp. at 6.  Plaintiffs seek to distinguish *Doe I* by noting that Plaintiffs "are instead requesting entry of a monetary judgment." *Id.*  But these purported distinctions fail because (1) the *Doe I* complaint did *not* seek declaratory relief; (2) the *Doe I* plaintiffs, like Plaintiffs here, sought monetary damages; and (3) there is no basis for asserting that the *Doe I* court's holding limits itself due to any type of relief sought. 400 F. Supp. 2d at 97 ("The complaint seeks punitive and treble damages, compensatory damages and injunctive relief. . . .").  More importantly, these are distinctions without a difference because – whether through a formal request for relief or otherwise – Plaintiffs' claims here and the *Doe I* plaintiffs' claims both necessarily ask a court to make determinations (*i.e.*, implicit declarations) and award monetary damages on the same underlying, non-justiciable political questions.  Whatever the specific relief sought, the point is that Plaintiffs' claims are based on a Complaint that overtly and repeatedly implicates non-justiciable political questions.

Indeed, Judge Bates explained that the *Doe I* plaintiffs' claims "would have this Court adjudicate the rights and liabilities of the Palestinian and Israeli people," requiring determinations (1) regarding "to whom the land in the West Bank actually belongs," (2) "that Israel's self-defense policies are tantamount to terrorism," (3) "that the Israeli settlement activities are illegal or tortious," and (4) "characteriz[ing] the ongoing armed conflict in the West Bank as either 'genocide' . . . or self-defense."  *Id.* at 112.  Here, as set forth in the Motion, the Complaint rests on the contention that Israeli activities resulted in "ethnic cleansing" and "genocide" of Palestinian nationals, as well as "malicious theft and destruction of property"

4

belonging to Palestinians.  Mot. at 7-9, 11, 13, 18.  Plaintiffs' Opposition reinforces these points

through its characterizations of and assertions about the activity at issue in their case, including,

for example, as follows:

- "settlement expansion … necessarily entails ethnic cleansing and genocide" (Opp. at 6);

- "[these Defendants finance] outrageous criminal conduct . . . to intimidate a civilian population, i.e., genocide and ethnic cleansing" (*id*. at 8);

- "the fulfillment of that goal—ridding the West Bank of all non-Jews—necessarily entailed ethnic cleansing and genocide . . . war crimes" (*id*. at 10);

- "confiscating their homes constituted a grave war crime, i.e. genocide" (*id*. at 11);

- "[Defendants] finance theft of private property, settlement expansion, arms trafficking, and ethnic cleansing and genocide" (*id*. at 13);

- "pro-occupation U.S. donors and 501(c)(3) officials have conspired on U.S. soil for approximately 30 years to finance horrific criminal activity—maim and murder Palestinians, steal their property, engage in ethnic cleansing and genocide" (*id*. at 16);

- "[Defendants] finance the horrific terrorist attacks described herein" (*id*. at 17); and

- "Defendants have been . . . financing the commission of international acts of terrorism" (*id*. at 22).

Further, Plaintiffs ask the Court to determine that the actions of the State of Israel,

through its armed forces' activities in Gaza and the West Bank, constitute war crimes and other

tortious activity.  *See, e.g.*, Opp. at 2, 11.  As explained in the Motion, the act of state doctrine

bars a court from ruling on such claims.  Mot. at 22-26.  And, Plaintiffs make no serious effort to

rebut these points from the Motion.

Plaintiffs' accusations – fundamental to the Complaint and indeed emphasized by

Plaintiffs in their Opposition (as illustrated above) – present the very same questions that the

*Doe I* court determined to be non-justiciable under the political question and act of state

doctrines.  This Court should make the same determination as the *Doe I* court.

### B.  <u>The Cases Relied On By Plaintiffs Are Inapposite</u>

Plaintiffs inexplicably assert that Defendants (1) "ignored" Judge Collyer's decision in

*Biton v. The Palestinian Interim Self-Government Authority* and similar decisions (Opp. at 9) and

(2) made "no attempt to distinguish any of these prior decisions in their moving papers" (*id.* at

10).  Neither contention is true.  Defendants' Motion addresses – and distinguishes – *Biton* and

similar cases:

> The reasoning set forth in *Doe I* and the facts detailed above
> fundamentally distinguish the instant case from those such as *Biton
> v. The Palestinian Interim Self-Government Authority*, 310
> F. Supp. 2d 172 (D.D.C. 2004) and 412 F. Supp. 2d 1 (D.D.C.
> 2005).  The court in *Biton* held justiciable a suit against the
> Palestinian Authority and others for a terrorist attack under the
> Anti-Terrorism Act, 18 U.S.C. § 2331 *et seq.* (the "ATA"),
> because it was an "ordinary tort suit" that could be judicially
> resolved based on the statutory definition of "international
> terrorism" and the common law of tort and presented no separation
> of powers concerns since the Executive and Legislative Branches
> had "'expressly endorsed'" suits against terrorist organizations by
> enacting the ATA. 310 F. Supp. 2d. at 175, 184.  In that case and
> others like it, the Israeli-Palestinian conflict was the contextual
> backdrop and perhaps the motivation for the defendants' alleged
> unlawful acts, but it was not the central issue for resolution.  By
> contrast, the foundation of Plaintiffs' claims here is the proposition
> that they own land allegedly unlawfully seized and settled by Israel
> and that their injuries were allegedly inflicted by the Israeli
> military and settlers during Israel's purportedly wrongful
> occupation of the West Bank and Gaza.  Resolution of these issues
> would require the Court to directly decide the core issues that lie at
> the heart of the political conflict, namely, the proper owners of the
> disputed land in the West Bank and Gaza and the legitimacy of
> Israel's self-defense and settlement policies and activities.

Mot. at 22 n.19.

Although Plaintiffs try to portray the circumstances of *Biton* as "similar" to those alleged

in their Complaint, there is no meaningful comparison.  The *Biton* case centered on a specific

6

terrorist attack – a single school bus bombing, which injured one of the plaintiffs and killed the

other plaintiff's husband. *Biton*, 412 F. Supp. 2d at 3. In addressing defense arguments to the

contrary, Judge Collyer correctly decided that adjudicating liability for the attack did not require

the court to "assess the Israeli-Palestinian conflict and the illegality of Israel's oppressive actions

in its occupation of the West Bank and Gaza." *Id.* at 5. By contrast, Plaintiffs' Complaint here

requires this Court to make just such an assessment, namely a finding that any persons or entities

assisting with the settlements and settlement expansion are complicit in an act of terrorism. In

short, whether a school bus bombing is a tortious or terrorist act is not a political question, while

all of the issues presented by Plaintiffs' Complaint are political at their core.

Next, Plaintiffs point to a decision by Judge Gershon of the Eastern District of New

York. Opp. at 2, 17-19.[1] But that case also did not concern the settlements at issue here, arising

instead out of specific terrorist bombings of buses and restaurants by terrorist organizations such

as "Hamas and other terrorist groups." *Lev v. Arab Bank*, 08 CV 3251 (NG)(VP), 2010 U.S.

Dist. LEXIS 16887, at *15 (E.D.N.Y. Jan. 29, 2010). In her decision, Judge Gershon

specifically noted that Hamas is one of the "Specially Designated Global Terrorist Entities." *Id.*

at *25. Therefore, in order to find any apt comparison between the two cases, this Court would

have to equate settlement-related conduct with the violent terrorist activities of Hamas and other

specifically-designated terrorist entities, which received their designations as terrorist entities

*from the Executive Branch*. Of course, there is no such equivalency, and, in any event, any such

---

[1]       Plaintiffs' Opposition makes repeated references to *Linde v. Arab Bank, PLC*, 384
F. Supp. 2d 571 (E.D.N.Y. 2005) (Opp. at 17-18), a decision that does not address the political
question doctrine. To the extent that Plaintiffs meant to cite to *Lev v. Arab Bank*, 08 CV 3251
(NG)(VP), 2010 U.S. Dist. LEXIS 16887 (E.D.N.Y. Jan. 29, 2010), they have misquoted that
decision in material fashion (as discussed below) by substituting the generic "terrorist entities"
for the court's phrasing – "Specially Designated Global Terrorist Entities like Hamas." *See* Opp.
at 18; *Lev v. Arab Bank*, 2010 U.S. Dist. LEXIS 16887, at *25.

comparison would require this Court to make the very type of political determination – *i.e.*, that

Israel's self-defense policies are akin to terrorism – that Judge Bates said the judiciary cannot

make.[2]

The remaining case touted by Plaintiffs, *Simon v. Republic of Hungary*, 812 F.3d 127

(D.C. Cir. 2016), offers no relevant comparison to the allegations in the Complaint.  Far from

being "identical" to the claims made in the Complaint as Plaintiffs contend (Opp. at 1, 11), the

*Simon* plaintiffs, 14 survivors of the Hungarian Holocaust, sought compensation for takings of

their property in connection with the Hungarian government's actions during the Holocaust in

the 1940s.  The fundamental issue in *Simon* was not whether Hungary had engaged in genocide

during World War II, a fact that was not in dispute.  Rather, the *Simon* court only had to

determine whether the question of how reparations for property damage attendant to that

genocide were to be compensated was a non-justiciable political question.  Defendant Hungary

contended that the question was committed to the political branches via the post-World War II

treaty and executive agreement at issue. The *Simon* court disagreed, holding that the treaty and

executive agreement at issue did not govern the plaintiffs' claims.  In contrast, the plaintiffs'

claims in *Doe I*, like the Plaintiffs' claims here, would have required the court to decide the

"undeniably political" question of whether "Israel's self-defense policies are tantamount to

terrorism . . . or some other form of illegal activity."  *Doe I,* 400 F. Supp. 2d at 112.

Importantly, in *Simon,* the court properly determined that there was little risk that judicial

adjudication of the Hungarian victims' claims would undermine actions by the political

---

[2]     The same is true with respect to the *Sokolow* case, which Plaintiffs claim is "remarkable on its facts to the case *sub judici* [*sic*]" (Opp. at 14-15).  *See Sokolow v. Palestine Liberation Org.*, 583 F. Supp. 2d 451, 454 (S.D.N.Y. 2008) (describing the allegations as being based on "injuries and death allegedly suffered as a result of a series of terrorist attacks occurring over a three year period . . . two shooting incidents and five bombings").

branches, particularly given the Executive Branch's silence on the issue.  812 F.3d. at 150-51.

Here, in contrast, the Government has expressly stated its belief that this case involves non-justiciable political questions, as discussed below.[3]

C.     **The Government's Statements Regarding Non-Justiciability Should Be Afforded Substantial Weight**

Many of the cases cited by Plaintiffs in their Opposition are noteworthy for a reason not highlighted by Plaintiffs:  The cases emphasize the substantial weight that the court should afford to the Executive Branch's assessment – which is the Government's position here – that claims are non-justiciable.  For example, the *Exxon Mobil Corp.* decision, relying on *In re Papandreou*, 139 F.3d 247, 252 (D.C. Cir. 1998), noted that "[e]vidence of the State Department's views as to this issue are accorded 'substantial weight' because the effect of litigation on the foreign policy interests of the nation is 'at the heart of the Department's expertise.'"  *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 92 (D.D.C. 2014) (denying dismissal because there was "an insufficiently recent and definite statement from the Executive that this case interferes with the foreign policy of the United States"); *see also Simon*, 812 F.3d at 150-51 ("The Executive often files a statement in court if it believes that judicial consideration of a case would interfere with the operation of the United States's treaties and agreements or would otherwise impinge on the conduct of foreign relations . . . .  [S]ilence by the government . . . fortifies our conclusion that the claims against the Hungarian defendants do not present a non-justiciable political question."); *Lev v. Arab Bank*, 2010 U.S. Dist. LEXIS 16887, at *26 ("In addition, while the defendant

---

[3]     In addition, Plaintiffs' reliance on *Whiteman v. Dorotheum GmbH & Co. KG*, 431 F.3d 57 (2d Cir. 2005) (*see* Opp. at 20-21), is misplaced.  Plaintiffs' multiple purported quotations of the "Second Circuit" in reference to that case are actually passages from the dissenting opinion.  *See Whiteman*, 431 F.3d at 76-77.  Notably, the *Whiteman* majority, giving great weight to the United States' assertion of foreign policy interest, found the case non-justiciable under the political question doctrine.  *Id*. at 70-73.

attempts to explain away the fact that the United States government has chosen not to submit a statement of interest to this court, the fact itself remains.").

Here, the Government has not been silent, but has instead presented its view to the Court that the Complaint allegations are non-justiciable and must be dismissed:

- "Here, Plaintiffs' complaint urges this Court to insert itself directly into the ongoing Israeli-Palestinian conflict." Gov. Brief at 15.

- "In sum, Plaintiffs' complaint . . . raises numerous issues that have a 'textually demonstrable commitment' to the political branches and must be dismissed." *Id*. at 16.

- "Such a judgment is precisely what the political question doctrine precludes.  And the Judiciary simply lacks the standards to assess and determine the 'root cause of violence in the Middle East.'" *Id*. at 17.

- "[G]iven the sensitivities of and the deep interest in the matters at stake, pronouncements and judgments by Israelis, Palestinians, and other governments[,] including that of the United States (be it by the Executive, Legislature, or Judiciary), could have immediate, significant, and far-reaching ramifications not only throughout the Middle East, but throughout the world." *Id*. at 18.

- "And, were this Court to delve into this arena, it could risk embarrassing the United States government through 'multifarious pronouncements' on the nature and equities of the conflict." *Id*. at 19.

- "Given the presence of all the *Baker* factors, this Court should dismiss Plaintiffs' complaint and allow the political branches to continue to address the Israeli-Palestinian conflict." *Id*.

Under applicable law, the Court should give considerable weight to these Executive Branch assessments of the non-justiciability of the claims asserted in the Complaint.

### D.     Plaintiffs' Arguments That They Have Pled Viable Claims Under The Alien Tort Statute Are Irrelevant And In Any Event Incorrect

Plaintiffs devote a significant portion of their Opposition to pointing out that "Alien Torts [*sic*] Statute claims have been entertained by federal courts" in the past.  Opp. at 14.  If Plaintiffs mean to suggest that any claim brought under the ATS necessarily is justiciable, they are wrong. *See, e.g.*, *Joo v. Japan*, 413 F.3d 45, 48-53 (D.C. Cir. 2005) (dismissing ATS claim under the

political question doctrine).  In fact, Judge Bates commented in *Doe I* that "[w]hether plaintiffs dress their claims in the garb of RICO or other federal statutes, or the tort laws of various states, the character of those claims is, at its core, the same:  peculiarly volatile, undeniably political, and ultimately nonjusticiable."  400 F. Supp. 2d at 112.

If Plaintiffs instead mean to argue that they have adequately pled non-extraterritorial law of nations violations under the ATS, they are anticipating arguments that Defendants have not yet advanced.  Consistent with this Court's December 15 Order separating the motion to dismiss briefing into two phases, and because the jurisdictional defenses to Plaintiffs' ATS claims are intertwined with Defendants' 12(b)(6) defenses, Defendants did not address ATS-specific pleading defects in this Motion.  *See* Mot. at 1 n.1.   Accordingly, Plaintiffs' arguments as to why their ATS claims are properly pled are premature and would be mooted in their entirety if the Court grants the pending motion to dismiss.

Even if Plaintiffs' ATS-specific arguments were before the Court, they are unpersuasive.[4] The fact is that the ATS does not apply to claims "seeking relief for violations of the law of nations occurring outside the United States."  *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1669 (2013).  To proceed under the ATS, a claim must "touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application."  *Id.*  Here, all of the allegations of killing, torture, and other international law violations occurred outside of the United States.  *See Cardona v. Chiquita Brands Int'l, Inc.*, 760

---

[4]     For example, Plaintiffs' assertion that "the D.C. Circuit has recently in [*sic*] affirmed in *Simon v. Republic of Hungary*, 812 F.3d 127 (D.C. 2016) that alien Plaintiffs can rely on the [ATS] to pursue claims based on the illegal confiscation of private property abroad" (Opp. at 1) is wholly inaccurate.  The *Simon* decision mentions the ATS only in passing and instead focuses on the Foreign Sovereign Immunities Act's exceptions and the political question doctrine.  *See* 812 F.3d 127.

F.3d 1185, 1191 (11th Cir. 2014) (dismissing ATS claims because "[t]here is no allegation that any torture," or "any other act constituting a tort in terms of the ATS," "occurred on U.S. territory").

Where courts have recognized the viability of ATS claims based on foreign injury, they have done so only in the presence of "*substantial and specific* U.S.-based conduct *relevant to the ATS claims*." *See, e.g.*, *Doe v. Exxon Mobil Corp.*, Civ. No. 01-1357(RCL), 2015 U.S. Dist. LEXIS 91107, at *26 (D.D.C. July 6, 2015) (emphasis added). Although Plaintiffs assert in conclusory fashion that they "have detailed the U.S. based criminal activity" of various Defendants (Opp. at 12), the opposite is true. The Complaint contains no specific allegations of extensive U.S. conduct by these Defendants[5] that could satisfy the elements of aiding and abetting liability. *Cf. Mastafa v. Chevron Corp.*, 770 F.3d 170, 191 (2d Cir. 2014) (for purposes of presumption of extraterritoriality, considering only plausible, non-conclusory allegations of domestic conduct "if such conduct . . . aid[ed] and abett[ed] a violation of the law of nations").[6]

---

[5]    And, notably, Plaintiffs cannot even make conclusory allegations of U.S. conduct by many of the Defendants. *See* Opp. at 7, 16, 22 (referring only to "U.S. Defendants," "pro-occupation U.S. donors," and "U.S. tax-exempt entit[ies]"). Plaintiffs limit their argument in opposition to the Motion to the Donor Defendants and Charitable Entity Defendants. *See*, *e.g.*, *id*. at 10, 12-13, 14, 16 (asserting that the claims arise out of the "financing" of "war crimes," the "funding" for "arms trafficking," and the "financ[ing]" of "horrific criminal activity"). As such, Plaintiffs tacitly have abandoned their claims against the Bank Defendants and the Construction/Support Defendants. If Plaintiffs had not done so, the claims would have failed in any event for all the reasons set forth here and in the Motion.

[6]    In responding to Plaintiffs' suggestion that their claims rebut the presumption of extraterritoriality, Defendants do not attempt to brief that issue in full here. Nor are Defendants suggesting that this is the only deficiency in Plaintiffs' ATS claims. Should the Complaint survive the pending motion, Defendants will brief the ATS deficiencies per a Court-ordered briefing schedule.

## **CONCLUSION**

For the reasons described in the Motion and for the foregoing reasons, the Court should dismiss with prejudice the Complaint in its entirety.

Dated: Washington, D.C.
March 10, 2017

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

COVINGTON & BURLING LLP

By: */s/ Jonathan I. Blackman*

Jonathan I. Blackman (admitted *pro hac vice*)
Alexis L. Collins (D.C. Bar # 474599)
Teale E. Toweill (D.C. Bar # 996061)
2000 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
T: 202-974-1500
F: 202-974-1999
jblackman@cgsh.com
acollins@cgsh.com
ttoweill@cgsh.com

*Counsel for Defendants Bank Leumi Le-Israel B.M. and Bank Leumi USA*

By: */s/ John E. Hall /Signature with Permission*

John E. Hall (D.C. Bar No. 415364)
David M. Zionts (D.C. Bar No. 995170)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jhall@cov.com
dzionts@cov.com

*Counsel for Defendants Hewlett Packard Enterprise Co. and Hewlett-Packard (Israel) Ltd.*

CHADBOURNE & PARKE LLP

BAKER BOTTS L.L.P.

By: */s/ Abbe David Lowell /Signature with Permission*

Abbe David Lowell (D.C. Bar No. 358651)
Michael Bhargava (D.C. Bar No. 978078)
1200 New Hampshire Avenue, N.W.
Washington, D.C.  20036
Telephone: (202) 974-5600
Facsimile: (202) 974-5602
E-mail: adlowell@chadbourne.com;
mbhargava@chadbourne.com

*Counsel for Defendant Bank Hapoalim B.M.*

By: */s/ William H. Jeffress, Jr. /Signature with Permission*

William H. Jeffress, Jr. (D.C. Bar No. 041152)
Aaron Stein Rabinowitz (D.C. Bar No. 1017165)
The Warner
1299 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 639-7844
Fax: (202) 585-1004
william.jeffress@bakerbotts.com
aaron.rabinowitz@bakerbotts.com

*Counsel for Defendants Lawrence Ellison and Haim Saban*

14

IFRAH PLLC

By: */s/ George R. Calhoun /Signature with Permission*

George R. Calhoun (D.C. Bar No. 459717)
1717 Pennsylvania Ave., NW
Suite 650
Washington D.C., 20006
T: (202) 524-4140
F: (202) 524-4141
george@ifrahlaw.com

*Counsel for Defendant Motorola Solutions, Inc. and Motorola Solutions Israel Ltd.*

FOLEY & LARDNER LLP

By: */s/ Barry G. Felder /Signature with Permission*

Barry G. Felder (D.C. Bar No. 307736)
90 Park Avenue
New York, New York 10016
T: 212-338-3540
F: 212-687-2329
bgfelder@foley.com

Michael J. Tuteur (Bar No. D00202)
111 Huntington Avenue, Suite 2500
Boston, Massachusetts 02199
T: 617-342-4016
F: 617-341-4001
mtuteur@foley.com

*Counsel for Defendant Sheldon G. Adelson*

COFFEY BURLINGTON, P.L.

By: */s/ Andrew H. Marks /Signature with Permission*

Andrew H. Marks, Esq. (DC Bar No. 932269)
amarks@coffeyburlington.com
Gabriel Groisman, Esq.
Admitted pro hac vice
Florida Bar No. 25644
ggroisman@coffeyburlington.com
yvb@coffeyburlington.com
service@coffeyburlington.com
2601 South Bayshore Drive, Penthouse  One
Miami, Florida  33133
Telephone: (305) 858-2900
Facsimile:  (305) 858-5261

*Counsel for Defendant Falic Family Foundation*

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP

By: */s/ Douglas W. Baruch /Signature with Permission*

Douglas W. Baruch (DC Bar No. 414354)
Joseph J. LoBue (DC Bar No. 484097)
Jennifer M. Wollenberg (DC Bar No. 494895)
801 17th Street, NW
Washington, DC 20006
Telephone:  (202) 639-7000
Facsimile:  (202) 639-7003
Email: Douglas.Baruch@friedfrank.com

*Counsel for Defendants Veolia North America, LLC and Veolia Environnement S.A.*

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By: */s/ Christopher M. Loveland /Signature with Permission*

CHRISTOPHER M. LOVELAND
(D.C. Bar No. 473969)
2099 Pennsylvania Ave., N.W.
Suite 100
Washington, D.C. 20006-6801
Telephone: (202) 747-1924
Facsimile: (202) 747-3832
cloveland@sheppardmullin.com

*Counsel for Defendant Irving Moskowitz*

ZELL, ARON & CO.

By: */s/ Lawrence Marc Zell /Signature with Permission*

Lawrence Marc Zell
D.C. Bar No. 959437
34 Ben Yehuda Street
15th Floor
City Tower Building
Jerusalem 9423001 ISRAEL
Direct Phone: 011-972-2-633-6301
Main Telephone: 011-972-2-633-6300
Cell Phone: 011-972-52-869-9000
Email: mzell@fandz.com

*Counsel for Defendants American Friends of Ariel, Inc., American Friends of Ulpana Ofra, Gush Etzion Foundation, The Hebron Fund, Christian Friends of Israeli Communities, Honenu National Legal Defense Organization [sic]*

O'HAGAN MEYER

By: */s/ Michael E. Barnsback /Signature with Permission*

Michael E. Barnsback (USDC Bar No. VA015)
411 E. Franklin Street, Suite 500
Richmond, VA 23219
PH 804-403-7100
FX 804-403-7110
mbarnsback@ohaganmeyer.com

*Counsel for Defendant RE/MAX, LLC*

PROSKAUER ROSE LLP

By: */s/ Mark D. Harris /Signature with Permission*

Mark D. Harris (admitted *pro hac vice*)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3530
Facsimile: (212) 969-2900
Email: mharris@proskauer.com

Rachel O. Wolkinson (DC Bar No. 975548)
1001 Pennsylvania Avenue, N.W.
Suite 600 South
Washington, D.C. 20004
Telephone: (202) 416-5811
Facsimile: (202) 416-6899
Email: rwolkinson@proskauer.com

*Counsel for Defendant*
*Friends of the Israel Defense Forces*

LARS LIEBELER PC

By:  _/s/ Lars H. Liebeler /Signature with Permission_

Lars H. Liebeler
D.C. Bar No. 416666
1828 L Street, N.W., Suite 705
Washington, D.C. 20036
Direct Telephone: (202) 587-4747
Main Telephone: (202) 466-4110
Email: LLiebeler@LHL-LawFirm.com

_Counsel for Defendant John Hagee_


RIFKIN WEINER LIVINGSTON LLC

By:  _/s/ Charles S. Fax /Signature with Permission_

Charles S. Fax (DC Bar No. 198002)
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Facsimile: (301) 951-0172
Email: cfax@rwlls.com

_Counsel for Defendant Jewish National Fund (Keren Kayemeth Le Israel) Inc._


DAVID ABRAMS, ATTORNEY AT LAW

By:  _/s/ David Abrams /Signature with Permission_

David Abrams (Bar No. NY0201)
305 Broadway, Suite 601
New York, NY 10007
212-897-5821
dnabrams@gmail.com

_Counsel for Defendant Efrat Foundation USA_


KIRKLAND & ELLIS LLP

By:  _/s/ Jay P. Lefkowitz /Signature with Permission_

Jay P. Lefkowitz
Atif Khawaja
David S. Flugman
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-6460
lefkowitz@kirkland.com
atif.khawaja@kirkland.com
david.flugman@kirkland.com

_Counsel for Defendant Access Industries, Inc._

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP


By:  */s/ Shelley Ivan /Signature with Permission*

Shelley Ivan (DC Bar No. 985488)
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Email: sivan@kasowitz.com


*Counsel for Defendant American Friends of Bet El Yeshiva*

THE AMERICAN CENTER FOR LAW AND JUSTICE


By:  */s/ Jay Alan Sekulow /Signature with Permission*


Jay Alan Sekulow (D.C. Bar No. 496335)
Stuart J. Roth  (D.C. Bar No. 475937)
Andrew J. Ekonomou (admitted *pro hac vice*)
Jeffrey Harold Ballabon (admitted *pro hac vice*)
Benjamin P. Sisney (admitted *pro hac vice*)
201 Maryland Avenue, N.E.
Washington, D.C.  20002
Email: sekulow@aclj.org
Telephone: (202) 546-8890
Facsimile: (202) 546-9309


*Co-Counsel for Defendant Gush Etzion Foundation*

18