**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| BASSEM AL-TAMIMI et al., | |
| Plaintiffs, | Case No. 16-cv-445 (TSC) |
| v. | |
| SHELDON ADELSON et al., | **Oral Argument Requested** |
| Defendants. | |

**DEFENDANTS' RENEWED MOTION
TO DISMISS THE AMENDED COMPLAINT**

Defendants Sheldon Adelson*[+], Lawrence Ellison*, John Hagee*, Dr. Irving Moskowitz*[+], Haim Saban*, Norman Braman*[+], American Friends of Ariel*, American Friends of Bet El Yeshiva*[+], Christian Friends of Israeli Communities*, Efrat Development Foundation*, The Falic Family Foundation, Inc.*, Friends of the Israel Defense Forces, Gush Etzion Foundation*, Honenu National Legal Defense Organization*, The Hebron Fund*, Bank Leumi USA*,  RE/MAX, LLC*, Hewlett Packard Enterprise Co.*, Motorola Solutions, Inc.*,

and Jewish National Fund* (collectively "Defendants") hereby renew[1] their motion to dismiss

Plaintiffs' Amended Complaint (the "Complaint" or "AC").[2]

As detailed in the memoranda of law, appendices, and supporting papers filed herewith,

and as previewed in Defendants' Motion to Dismiss the Amended Complaint, dated January 27,

2017, ECF No. 107, and Defendants' Notice Regarding Forthcoming Motions to Dismiss, dated

September 15, 2016, ECF No. 93, all of the above Defendants move this Court for an order

dismissing the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) as

the Court lacks subject matter jurisdiction over the claims asserted in the Complaint, and the

Complaint also fails to state any valid claims for relief.  In addition, each Defendant above

whose name is designated with an asterisk ("*") also moves on the ground of lack of personal

jurisdiction pursuant to Rule 12(b)(2), and each Defendant whose name is designated with a plus

sign ("+") also moves on the ground of lack of proper service of process pursuant to Rule

12(b)(5).  Pursuant to the Court's Order dated December 15, 2016, ECF No. 97, Defendants

reserved these arguments until after the resolution of their earlier motion to dismiss pursuant to

Rule 12(b)(1).  A proposed order is filed herewith.

---

[1]     Because Defendant Norman Braman never was properly served, he had not yet entered an appearance when Defendants first moved to dismiss.  Defendant Braman now joins the renewed motion to dismiss on all grounds.

[2]     Plaintiffs' Notice of Voluntary Dismissal of Veolia North America, dated June 30, 2020, ECF No. 160, negates Defendant Veolia North America's need to renew its motion to dismiss.

Dated:  Washington, D.C.
July 3, 2020

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON
LLP

By:  */s/ Alexis L. Collins*

Alexis L. Collins (D.C. Bar No. 474599)
2112 Pennsylvania Avenue, NW
Suite 1000
T: 202-974-1500
F: 202-974-1999
alcollins@cgsh.com

Jonathan I. Blackman (admitted *pro hac vice*)
One Liberty Plaza
New York, NY 20006
T: 212-225-2000
jblackman@cgsh.com

*Counsel for Defendant Bank Leumi USA*

COVINGTON & BURLING LLP

By:  */s/ John E. Hall*
*/Signature with Permission*

John E. Hall (D.C. Bar No. 415364)
David M. Zionts (D.C. Bar No. 995170)
Carlton E. Forbes (D.C. Bar No. 1656612)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jhall@cov.com
dzionts@cov.com

*Counsel for Defendant Hewlett Packard
Enterprise Co.*

BAKER BOTTS L.L.P.

By:  */s/ William H. Jeffress, Jr.*
*/Signature with Permission*

William H. Jeffress, Jr. (D.C. Bar No. 041152)
Adam Michael Dec (D.C. Bar No. 888187500)
Julie B. Rubenstein
700 K St. NW
Washington, DC 20001
Tel: (202) 639-7844
Fax: (202) 585-1004
william.jeffress@bakerbotts.com
adam.dec@bakerbotts.com
julie.rubenstein@bakerbotts.com

*Counsel for Defendants Lawrence Ellison and
Haim Saban*

IFRAH PLLC

By:  */s/ George R. Calhoun*
*/Signature with Permission*

George R. Calhoun (D.C. Bar No. 60641)
1717 Pennsylvania Ave., NW
Suite 650
Washington D.C., 20006
T: (202) 524-4140
F: (202) 524-4141
george@ifrahlaw.com

*Counsel for Defendant Motorola Solutions,
Inc.*

MELAND RUSSIN & BUDWICK, P.A.

By: */s/ Gabriel Groisman*
*/Signature with Permission*


Gabriel Groisman, Esquire (admitted *pro hac vice*)
(Florida Bar No. 25644)
200 South Biscayne Blvd., Suite 3200
Miami, Florida 33131
Phone: (305) 358-6363
Fax: (305) 358-1221
E-mail: ggroisman@melandrussin.com

COFFEY BURLINGTON, PL

Andrew H. Marks (D.C. Bar No. 932269)
amarks@coffeyburlington.com
yvb@coffeyburlington.com
service@coffeyburlington.com
2601 South Bayshore Drive, Penthouse One
Miami, Florida  33133
Telephone: (305) 858-2900
Facsimile:  (305) 858-5261

*Counsel for Defendant The Falic Family*
*Foundation, Inc.*

FOLEY & LARDNER LLP

By: */s/ Barry G. Felder*
*/Signature with Permission*


Barry G. Felder (D.C. Bar No. 307736)
90 Park Avenue
New York, New York 10016
T: 212-338-3540
F: 212-687-2329
bgfelder@foley.com

Michael J. Tuteur (Bar No. D00202)
111 Huntington Avenue, Suite 2500
Boston, Massachusetts 02199
T: 617-342-4016
F: 617-341-4001
mtuteur@foley.com

*Counsel for Defendant Sheldon G. Adelson*

SHEPPARD MULLIN RICHTER &
HAMPTON LLP

By: */s/ Christopher M. Loveland*
*/Signature with Permission*

Christopher M. Loveland
(D.C. Bar No. 473969)
2099 Pennsylvania Ave., N.W.
Suite 100
Washington, D.C. 20006-6801
Telephone: (202) 747-1924
Facsimile: (202) 747-3832
cloveland@sheppardmullin.com

*Counsel for Defendant Dr. Irving Moskowitz*

PROSKAUER ROSE LLP

By: */s/ Mark D. Harris*
*Signature with Permission*

Mark D. Harris (D.C. Bar No. 445900)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3530
Facsimile: (212) 969-2900
Email: mharris@proskauer.com

Jennifer E. Tarr (D.D.C. Bar No. IL0028)
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004-2533
Telephone: (202) 416-6846
Facsimile: (202) 416-6899
Email:  jtarr@proskauer.com

*Counsel for Defendant Friends of the
Israel Defense Forces*

ZELL, ARON & CO.

By: */s/ Lawrence Marc Zell*
*/Signature with Permission*

Lawrence Marc Zell
(D.C. Bar No. 959437)
34 Ben Yehuda Street
15th Floor
City Tower Building
Jerusalem 9423001 Israel
Direct Phone: 011-972-2-633-6301
Main Telephone: 011-972-2-633-6300
Cell Phone: 011-972-52-869-9000
Email: mzell@fandz.com

*Counsel for Defendants American Friends of
Ariel, Inc., Gush Etzion Foundation, The
Hebron Fund, Christian Friends of Israeli
Communities, Honenu National Legal Defense
Organization*


LARS LIEBELER PC


By: */s/ Lars H. Liebeler*
*/Signature with Permission*

Lars H. Liebeler (D.C. Bar No. 416666)
900 7th Street, N.W., Suite 725
Washington, D.C. 20001
Direct Telephone: (202) 774-1510
Email: LLiebeler@LHL-LawFirm.com

*Counsel for Defendant John Hagee*

O'HAGAN MEYER

By: */s/ Michael E. Barnsback*
*/Signature with Permission*

Michael E. Barnsback (USDC Bar No.
VA015)
411 E. Franklin Street, Suite 500
Richmond, VA 23219
PH 804-403-7100
FX 804-403-7110
mbarnsback@ohaganmeyer.com

KELLY LAW PARTNERS, LLC

By: */s/ William J. Kelly III*
*/Signature with Permission*

William J. Kelly III (admitted *pro hac vice*)
501 South Cherry Street, Suite 1100
Denver, CO 80246
Telephone:  (720) 236-1801
Facsimile:   (720) 236-1799
Email: wkelly@kellylawpartners.com

*Counsel for Defendant RE/MAX, LLC*

RIFKIN WEINER LIVINGSTON LLC

By: */s/ Charles S. Fax*
*/Signature with Permission*

Charles S. Fax (D.C. Bar No. 198002)
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Facsimile: (301) 951-0172
Email: cfax@rwlls.com

*Counsel for Defendant Jewish National
Fund*

DAVID ABRAMS, ATTORNEY AT LAW

By: */s/ David Abrams*
*/Signature with Permission*

David Abrams (Bar No. NY0201)
305 Broadway, Suite 601
New York, NY 10007
212-897-5821
dnabrams@gmail.com

*Counsel for Defendant Efrat Foundation USA*

JONES DAY

By: */s/ Eric Snyder*
*/Signature with Permission*

Eric Snyder (D.C. Bar No. 1001610)
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3435
esnyder@jonesday.com

*Counsel for Defendant Norman Braman*

DAVID I. SCHOEN

By: */s/ David I. Schoen*
*/Signature with Permission*

David I. Schoen (D.C. Bar No. 391408)
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: dschoen593@aol.com

*Counsel for Defendant American Friends of Bet El Yeshiva*

THE AMERICAN CENTER FOR LAW AND JUSTICE

By: */s/ Jay Alan Sekulow*
*/Signature with Permission*

Jay Alan Sekulow (D.C. Bar No. 496335)
Benjamin P. Sisney (D.C. Bar No. 1044721)
201 Maryland Avenue, N.E.
Washington, D.C. 20002
Email: sekulow@aclj.org
Email : bsisney@aclj.org
Telephone: (202) 546-8890
Facsimile: (202) 546-9309

*Co-Counsel for Defendant Gush Etzion Foundation*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BASSEM AL-TAMIMI et al., | |
| Plaintiffs, | Case No. 16-cv-445 (TSC) |
| v. | |
| SHELDON ADELSON et al., | **Oral Argument Requested** |
| Defendants. | |

**OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT
PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. iv

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ................................................................................................... 4

I.      The Allegations in the Complaint ............................................................. 4

II.     Procedural History .................................................................................... 7

        A.      This Court's Prior Dismissal Ruling ............................................ 7

        B.      Plaintiffs' Appeal ......................................................................... 7

III.    The Case on Remand ................................................................................ 8

        A.      The Remaining Defendants ........................................................... 8

        B.      Plaintiffs' Remaining Theories of Liability ................................ 11

LEGAL STANDARD .......................................................................................... 13

ARGUMENT ...................................................................................................... 14

I.      PLAINTIFFS' WAIVER OF CLAIMS PREMISED ON ISRAELI MILITARY
        ACTIVITY REQUIRES DISMISSAL OF MOST CLAIMS IN THE
        COMPLAINT ........................................................................................... 14

II.     PLAINTIFFS' CLAIMS UNDER THE ALIEN TORT STATUTE FAIL FOR
        LACK OF JURISDICTION ...................................................................... 17

        A.      Plaintiffs Fail to Overcome the Presumption Against Extraterritoriality ............ 18

        B.      The Court Should Not Extend ATS Liability To Domestic Corporations............ 24

        C.      Count II Fails to State a Claim for Primary Violations of International Law........ 27

        D.      Plaintiffs Have Failed to State a Claim for Secondary Violations of
                International Law ......................................................................... 30

        E.      Plaintiffs Fail to Establish That They Have Exhausted Their Remedies.............. 41

III.    PLAINTIFFS LACK STANDING TO BRING THIS COMPLAINT ............. 42

        A.      Plaintiffs Fail to Allege an Injury in Fact ............................................. 43

        B.      Plaintiffs Fail to Allege Injuries Fairly Traceable to Defendants' Alleged
                Actions ........................................................................................ 45

IV.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE TORTURE
        VICTIM PROTECTION ACT .................................................................... 49

        A.      Organizational Defendants are not Subject to a TVPA Claim .............. 49

        B.      Plaintiffs Fail to Allege State Action .................................................. 50

        C.      The Complaint Fails to State a Claim for Torture or Extrajudicial Killing .......... 50

        D.      Plaintiffs Failed to Exhaust Adequate and Available Remedies in Israel ........... 52

V.     PLAINTIFFS' LOCAL LAW CLAIMS SHOULD BE DISMISSED ..............................52

     A.     The Court Should Not Exercise Supplemental Jurisdiction Over the Purported State Law Claims ..................................................................................52

     B.     The Court Lacks Jurisdiction over Plaintiffs' Trespass Claims Under the Local Action Doctrine ..........................................................................................54

     C.     Plaintiffs Do Not Plausibly Allege a Civil Conspiracy ...........................55

VI.     NUMEROUS PLAINTIFFS' CLAIMS ARE TIME-BARRED .......................................57

CONCLUSION ...................................................................................................................58

# TABLE OF AUTHORITIES*

**Page(s)**

**Cases**

*Abagninin v. AMVAC Chem. Corp.*,
    545 F.3d 733 (9th Cir. 2008) ................................................................29

*Abecassis v. Wyatt*,
    704 F. Supp. 2d 623 (S.D. Tex. 2010) ...................................................29

*Abulhawa v. Dep't of Treasury*,
    No. 17-5158, 2018 WL 3446699 (D.C. Cir. June 19, 2018) ..................47

*Abur v. Republic of Sudan*,
    437 F. Supp. 2d 166 (D.D.C. 2006) .......................................................53

*Acosta Orellana v. CropLife Intern.*,
    711 F. Supp. 2d 81 (D.D.C. 2010) ...................................................56, 57

*Adhikari v. Kellogg Brown & Root, Inc.*,
    845 F.3d 184 (5th Cir. 2017) .................................................................20

*Ahmad v. Christian Friends of Israeli Cmtys.*,
    No. 13 Civ. 3376(JMF), 2014 WL 1796322 (S.D.N.Y. May 5, 2014).........................3, 17, 38

*Al Bahlul v. United States*,
    792 F.3d 1 (D.C. Cir. 2015).....................................................................40

*Al Shimari v. CACI Premier Tech., Inc.*,
    758 F.3d 516 (4th Cir. 2014) .................................................................21

*Al-Aulaqi v. Obama*,
    727 F. Supp. 2d 1 (D.D.C. 2010) ...........................................................27

*Al-Tamimi v. Adelson*,
    916 F.3d 1 (D.C. Cir. 2019) .......................................................... passim

---

* Asterisks identify the authorities on which Defendants chiefly rely.

*Am. Isuzu Motors, Inc. v. Ntsebeza*,
    553 U.S. 1028 (2008) ................................................................................15, 32, 50

*Arar v. Ashcroft*,
    585 F.3d 559 (2d Cir. 2009) ...................................................................................50

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*,
    135 S. Ct. 2652 (2015) ..................................................................................... 42-43

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................13, 17, 38

*Asociasion de Reclamantes v. United Mexican States*,
    735 F.2d 1517 (D.C. Cir. 1984) .............................................................................54

*Aziz v. Alcolac, Inc.*,
    658 F.3d 388 (4th Cir. 2011) ...........................................................................33, 37

*Balintulo v. Daimler AG*,
    727 F.3d 174 (2d Cir. 2013) ...................................................................................23

*Balintulo v. Ford Motor Co.*,
    796 F.3d 160 (2d Cir. 2015) ...................................................................................18

*Baloco v. Drummond Co., Inc.*,
    767 F.3d 1229 (11th Cir. 2014) .............................................................................33

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007) ..........................................................................................13, 57

*Berman v. Morgan Keegan & Co., Inc.*,
    455 Fed. App'x. 92 (2d Cir. 2012) .........................................................................38

*Bigio v. Coca-Cola Co.*,
    239 F.3d 440 (2d Cir. 2001) ...................................................................................29

*Bosnia v. Serbia*,
    2007 I.C.J. ...............................................................................................................40

*Brady v. Livingood*,
    360 F.Supp.2d 94 (D.D.C. 2004) ...........................................................................56

*Cardenas v. Smith*,
    733 F.2d 909 (D.C. Cir. 1984) ...............................................................................54

*Cardona v. Chiquita Brands Int'l, Inc.*,
  760 F.3d 1185 (11th Cir. 2014) ......................................................................20, 22

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
  511 U.S. 164 (1994).......................................................................................32

*Corrie v. Caterpillar, Inc.*,
  403 F. Supp. 2d 1019 (W.D. Wash. 2005)..........................................................52

*Doe v. Cisco Systems Inc.*,
  66 F. Supp. 3d 1239 (N.D. Cal. 2014) ...............................................................35

*Doe v. Drummond Co.*,
  782 F.3d 576 (11th Cir. 2015) ...........................................................22, 23, 37, 39

*Doe v. Exxon Mobil Corp.*,
  391 F. Supp. 3d 76 (D.D.C. 2019) .................................................. 25, 26, 27, 32

*Doe v. Exxon Mobil Corp.*,
  527 Fed. App'x 7 (D.C. Cir. 2013)..........................................................32, 34, 37

*Doe v. Exxon Mobil Corp.*,
  654 F.3d 11 (D.C. Cir. 2011)............................................................................32

*Doe v. Exxon Mobil Corp.*,
  69 F. Supp. 3d 75 (D.D.C. 2014) ......................................................................41

*Doe v. Exxon Mobil Corp.*,
  Civil No. 01-1357(RCL), 2015 WL 5042118 (D.D.C. July 6, 2015).............................. <u>passim</u>

*Doe v. Nestle, S.A.*,
  929 F.3d 623 (9th Cir. 2018) ......................................................................23, 26

*Doe v. Nestle USA, Inc.*,
  766 F.3d 1013 (9th Cir. 2014) ......................................................................31, 33

*Du Daobin v. Cisco Sys.*,
  2 F. Supp. 3d 717 (D. Md. 2014)......................................................................41

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*,
  48 F.3d 1260 (D.C. Cir. 1995)..........................................................................53

*El v. Wells Fargo Bank*,
  Case 2:19-cv-02538-JTF-cgc, 2020 WL 1941322 (W.D. Tenn. Mar. 12, 2020) ...................53

*Eldee-K Rental Props., LLC v. DIRECTV, Inc.*,
   748 F.3d 943 (9th Cir. 2014) ........................................................................54

*Ellul v. Congregation of Christian Bros.*,
   774 F.3d 791 (2d Cir. 2014)...........................................................................58

*European Cmty. v. RJR Nabisco, Inc.*,
   764 F.3d 129 (2d Cir. 2014)...........................................................................22

*Food & Water Watch, Inc. v. Vilsack*,
   808 F.3d 905 (D.C. Cir. 2015) ......................................................................43

*Frederick v. Hillyer*,
   82 F. Supp. 3d 435 (D.D.C. 2015) ................................................................55

*Fund Democracy, LLC v. S.E.C.*,
   278 F.3d 21 (D.C. Cir. 2002) ........................................................................45

*Giraldo v. Drummond Co.*,
   2013 U.S. Dist. LEXIS 103981 (N.D. Ala. July 25, 2013)............................39

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
   541 U.S. 567 (2004)......................................................................................53

*Haase v. Sessions*,
   835 F.2d 902 (D.C. Cir. 1987) ......................................................................42

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) .................................................................33, 55

*Hamdan v. Rumsfeld*,
   548 U.S. 557 (2006)......................................................................................40

*Harbury v. Hayden*,
   444 F. Supp. 2d 19 (D.D.C. 2006) .........................................................15, 50, 52

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*,
   190 F. Supp. 3d 1100 (S.D. Fla. 2016) .........................................................41

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   193 F.3d 781 (3d Cir. 1999)..........................................................................55

*In re Terrorist Attacks on Sept. 11, 2001*,
   718 F. Supp. 2d 456 (S.D.N.Y. 2010)...........................................................41

*In re XE Servs. Alien Tort Litig.,*
  665 F. Supp. 2d 569 (E.D. Va. 2009) ....................................................29

*\*Jesner v. Arab Bank, PLC,*
  138 S. Ct. 1386 (2018) ............................................................... passim

*Kaplan v. Cent. Bank of the Islamic Republic of Iran,*
  896 F.3d 501 (D.C. Cir. 2018) ...........................................................14

*Kemper v. Deutsche Bank AG,*
  911 F.3d 383 (7th Cir. 2018) .............................................................40

*Khulumani v. Barclay Nat. Bank Ltd.,*
  504 F.3d 254 (2d Cir. 2007)................................................15, 30, 50

*\*Kiobel v. Royal Dutch Petroleum Co.,*
  569 U.S. 108 (2013) .................................................................. passim

*Laffey v. Nw. Airlines, Inc.,*
  740 F.2d 1071 (D.C. Cir. 1984) .........................................................15

*Licci v. Lebanese Canadian Bank,*
  834 F.3d 201 (2d Cir. 2016).............................................................23

*Liu Bo Shan v. China Constr. Bank Corp.,*
  421 F. App'x 89 (2d Cir. 2011) ...................................................28, 41

*Lu v. Lezell,*
  45 F. Supp. 3d 86 (D.D.C. 2014) ......................................................58

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992)................................................................... passim

*Mastafa v. Chevron Corp.,*
  770 F.3d 170 (2d. Cir. 2014)..................................................... passim

*Mohamad v. Palestinian Authority,*
  566 U.S. 449 (2012)..........................................................................49

*Morrison v. Nat'l Australia Bank Ltd.,*
  561 U.S. 247 (2010)...................................................................... 18-19

*Morton v. D.C. Hous. Auth.,*
  720 F. Supp. 2d 1 (D.D.C. 2010) ................................................. 13-14

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014) ........................................................22

*Mujica v. Occidental Petroleum Corp.*,
  381 F. Supp. 2d 1164 (C.D. Cal. 2005) ........................................28

*National Taxpayers Union, Inc. v. United States*,
  68 F.3d 1428 (D.C. Cir. 1995) .....................................................45

*Ofisi v. BNP Paribas, S.A.*,
  278 F. Supp. 3d 84 (D.D.C. 2017) .................................17, 35, 38

*Owens v. BNP Paribas, S.A.*,
  897 F.3d 266 (D.C. Cir. 2018) .....................................................17

*Pasos v. Pan Am. Airways*,
  229 F.2d 271 (2d Cir. 1956)..........................................................54

*Perry v. Int'l Brotherhood of Teamsters*,
  118 F. Supp. 3d 1 (D.D.C. 2015) ..................................................53

*Presbyterian Church of Sudan v. Talisman Energy, Inc*,
  582 F.3d 244 (2d Cir. 2009)............................................... passim

*Price v. Socialist People's Libyan Arab Jamahiraya*,
  294 F. 3d 82 (D.C. Cir. 2002) ......................................................51

*\*Prosecutor v. Perišić*,
  No. IT-04-81-A Judgment (U.N. App. Ch. 2013) ...............34, 35, 36, 37

*Prosecutor v. Tadič*,
  No. IT-94-1-A, Judgment (U.N. App. Ch. 1999) .................34, 35, 41

*RJR Nabisco, Inc. v. European Cmty.*,
  136 S. Ct. 2090 (2016).............................................................19, 22

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*,
  682 F.3d 1043 (D.C. Cir. 2012) ....................................................57

*Sarei v. Rio Tinto PLC*,
  550 F.3d 822 (9th Cir. 2008) ........................................................42

*Sarei v. Rio Tinto PLC*,
  671 F.3d 736 (9th Cir. 2011) ...................................................31, 37

*Saucier v. Countrywide Home Loans*,
    64 A.3d 428 (D.C. 2013) ................................................................................55

*Saunders v. Davis*,
    No. 15-cv-2026(RC), 2016 WL 4921418 (D.D.C. Sept. 15, 2016)................................ 52-53

*Schlesinger v. Reservists Comm. to Stop the War*,
    418 U.S. 208 (1974)................................................................................43

*Sexual Minorities Uganda v. Lively*,
    960 F. Supp. 2d 304 (D. Mass. 2013) ................................................................39

*Siegel v. U.S. Dep't. of Treasury*,
    304 F. Supp. 3d 45 (D.D.C. 2018)................................................................46, 47

*Simon v. Eastern Ky. Welfare Rights Organization*,
    426 U.S. 26 (1976)................................................................................45, 47, 49

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)................................................................................14

*\*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004)................................................................................ <u>passim</u>

*South African Apartheid Litigation v. Daimler AG*,
    617 F. Supp. 2d 228 (S.D.N.Y. 2009)................................................................35, 41

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)................................................................................43

*Toumazou v. Turkish Republic of N. Cyprus*,
    71 F. Supp. 3d 7 (D.D.C. 2014)................................................................10, 13

*United States v. Husband*,
    312 F.3d 247 (7th Cir. 2002) ................................................................15

*Warfaa v. Ali*,
    811 F.3d 653 (4th Cir. 2016) ................................................................21

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................44, 45

**Statutes and Rules**

8 U.S.C. § 1189 ................................................................................................23

18 U.S.C. § 371 .................................................................................................53

18 U.S.C. § 981 .................................................................................................53

18 U.S.C. § 1956(a)(2) ......................................................................................53

26 U.S.C. § 7401 ...............................................................................................53

28 U.S.C. § 1332 ...............................................................................................53

28 U.S.C. § 1350 ...................................................................................13, 18, 20

28 U.S.C. § 1367(c)(3) .......................................................................................53

D.C. Code § 12-301(3) .......................................................................................58

Federal Rule of Civil Procedure 12(b)(1) .....................................................7, 42

Federal Rule of Civil Procedure 12(b)(2) ...........................................................1

Federal Rule of Civil Procedure 12(b)(5) ...........................................................1

Federal Rule of Civil Procedure 12(b)(6) ...........................................................5

**Other Authorities**

*Israel and the Palestinians: Can the settlement issue be solved?* BBC News (Nov. 18,
    2019), https://www.bbc.com/news/world-middle-east-38458884 ........................................16

Defendants Sheldon Adelson, Lawrence Ellison, John Hagee, Dr. Irving Moskowitz, Haim Saban, Norman Braman, American Friends of Ariel, American Friends of Bet El Yeshiva, Christian Friends of Israeli Communities, Efrat Development Foundation, The Falic Family Foundation, Inc., Friends of the Israel Defense Forces ("FIDF"), Gush Etzion Foundation, Honenu National Legal Defense Organization, The Hebron Fund, Jewish National Fund ("JNF-USA"), Bank Leumi USA, RE/MAX, LLC, Hewlett Packard Enterprise Co. ("HPE"), and Motorola Solutions, Inc. ("Motorola") (collectively "Defendants") respectfully submit this omnibus memorandum of law in support of their motions to dismiss Plaintiffs' Amended Complaint (the "Complaint" or "AC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

All of the listed Defendants fully join this brief.  In addition, all of these Defendants except FIDF join a separate omnibus brief being filed concurrently raising independent grounds for dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5).  Appendix A to this Memorandum includes arguments specific to certain Defendants, and other Defendants will submit separate memoranda.

## PRELIMINARY STATEMENT

The Complaint in this action invokes the Alien Tort Statute ("ATS") and the Torture Victim Protection Act ("TVPA") in seeking to hold Defendants liable for the conflict between Palestinians and Jewish settlers in the West Bank.  It purports to allege a conspiracy among certain Defendants, unidentified settlers in Israel and in the area referenced in the Complaint as the "Occupied Palestinian Territories" ("OPT"), and the Israeli military "to expel all non-Jews from the OPT."  AC at 103.  In violation of basic federal pleading rules, the Complaint presents a generalized and undifferentiated account of what Plaintiffs perceive to be abuse of largely

unnamed Palestinians by unnamed settlers as well as the Israeli military since at least 1967, and fails to provide specific allegations tying that abuse to the Defendants that remain in this action.

At the threshold, Plaintiffs have waived many of their claims. This Court previously dismissed the Complaint's claims for raising intractable political questions such as the legality of settlements in the West Bank and whether the actions of the Israeli military constitute genocide.

On appeal, in order to avoid dismissal under the political question doctrine, Plaintiffs altered their theory of liability and waived all claims premised upon alleged conduct of the Israeli military. Relying on this concession, the Court of Appeals reversed and remanded, holding that, to the extent the Plaintiffs' claims only require determining whether Israeli settlers are committing genocide, they do not necessarily present political questions.

Plaintiffs remain bound by their waiver. Thus, Plaintiffs' claims predicated on military action – and the Defendants whose supposed liability is based solely on alleged assistance to the Israeli military – must be dismissed.

Plaintiffs have also failed to state an ATS claim and thus cannot invoke federal jurisdiction under the ATS. First, the claim is based solely on extraterritorial conduct, failing the test set forth in *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013). In that case, the Supreme Court made it clear that ATS claims must "touch and concern the territory of the United States . . . with sufficient force to displace the presumption against extraterritorial application" of the statute. *Id.* at 125. Here, Defendants allegedly supported non-parties whose conduct occurred entirely in Israel, the West Bank, and Gaza, and allegedly caused injury only there.

Second, the Complaint fails to plead any of the other essential jurisdictional prerequisites for an ATS claim. As a judge in this district recently held (and the U.S. government recently argued to the Supreme Court), federal courts lack subject matter jurisdiction over ATS claims

against domestic corporations under the reasoning of *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1407 (2018), which held that ATS suits may not be maintained against foreign corporations. *Jesner*'s reasoning also counsels against recognizing secondary liability under the ATS.

Third, the Complaint fails to allege any facts establishing specific violations of international law or Defendants' participation in any such violations.  Instead, the Complaint generally alleges that Defendants engaged in conduct – namely, the provision of routine banking or commercial services and products, donation of funds to lawful charities, and engagement in political advocacy – that does not create ATS liability under the applicable legal standards.  In *Ahmad v. Christian Friends of Israeli Cmtys.*, No. 13 Civ. 3376(JMF), 2014 WL 1796322 (S.D.N.Y. May 5, 2014), a case based on allegations of financial support to settlers by U.S. organizations that are remarkably similar to those asserted here (and that included at least one of the same defendants), the court held that those allegations failed to state a claim under the ATS.

Plaintiffs also fail to satisfy basic federal subject matter jurisdiction standing requirements.  The sprawling, unfocused Complaint fails to connect any Plaintiff's injury to any legally cognizable wrongdoing by any Defendant, in violation of basic standing principles.

Further, the handful of Plaintiffs who bring suit under the TVPA fail to state a claim. That statute has a state-action requirement, which cannot be satisfied given the waiver of claims arising from Israeli military activity.  Even if the waiver were not sufficient to dispose of this claim, the claim could be brought only against the individual Defendants in this case (not corporations or other legal entities) and then only after available local remedies had been exhausted – which Plaintiffs do not allege they have done.  The TVPA also does not cover claims for property or economic damage, which is all that most of these Plaintiffs purport to allege, and no Plaintiff alleges commission of a predicate violation by any individual Defendant.

Moreover, there is no independent jurisdictional basis for Plaintiffs' local-law claims for civil conspiracy and aggravated trespass, which in any event also fail to state a claim.

Finally, many of the claims are time-barred.

## **BACKGROUND**

### I.   **The Allegations in the Complaint**

The Complaint asserts a vast conspiracy among certain Defendants, unidentified settlers in Israel and the OPT, and the Israeli military.  AC at 12-13, 16, ¶ 124 (referring to settlement leaders as co-conspirators), ¶¶  213-14 (identifying the Israel Defense Force ("IDF") as a cohort of the settlers); AC, Ex. C at 1 (identifying the Israel Air Force ("IAF") as a "perpetrator" with the IDF, settlers, and Israel-based non-governmental organizations).

Plaintiffs claim to be American citizens or Palestinian nationals who themselves or whose relatives allegedly have suffered physical injury, death, or property damage or loss as a result of Israeli settlement activity.  *Id.* ¶ 29.  Some of these Plaintiffs are not named, but are instead referred to as a "Village Council" or as a family that allegedly suffered damages.  *Id.* at 18; *see also* AC caption.  The Complaint contends that, since at least 1967, Israeli settlers, aided by the IDF or IAF, have "threaten[ed] and intimidate[d] the local Palestinian population on a daily basis" resulting in "the expulsion of approximately 400,000 Palestinians from the OPT" and "the demolition or confiscation of 49,000 Palestinian homes," as well as the denial of medical care and the destruction of schools, mosques, and hospitals in the West Bank and Gaza.  AC at 16, ¶¶ 78, 92, 176.  Settlers allegedly committed a long list of misdeeds including "daily violent attacks on Palestinian homeowners and farmers[,] . . . the slaughtering of livestock and the poisoning of water wells and destruction of electric grids . . . [, and] devastation of the Palestinian agricultural sector, especially destruction of olive groves."  *Id.* ¶ 79.  Plaintiffs seek $1 billion in damages from Defendants based on injuries alleged to have been suffered by

4

Palestinians generally as a result of "war crimes, crimes against humanity, genocide, and other atrocities that were being committed on a daily basis by violent settlers and the Israeli army," *id.* ¶ 232, and establishment of settlements in the West Bank or Gaza encouraged by Israeli government officials, *see, e.g.*, *id.* at 30-31, ¶¶ 29, 80-81, 83, 85, 88, 91.

The Defendants in this case are *not* the unidentified settlers or IDF members whom Plaintiffs accuse of wrongdoing.  Rather, they are U.S. individuals, tax-exempt charities, and corporations, most of whom allegedly have "knowingly" supported Israeli settlers' alleged illegal activities for decades in connection with the expansion of settlements.  *Id.* ¶¶ 33-77.  Setting aside a single vague and conclusory allegation as to Defendant JNF-USA's personnel's "participation" in unspecified "physical destruction of many villages" and "military operations,"[1] *id.* ¶ 54, *none* of the named Defendants is alleged to have engaged in any violent actions causing injuries in the West Bank and Gaza or elsewhere.  Nor is any Defendant alleged to have taken any property from any Plaintiff.  Indeed, there is no explanation in the Complaint of how the conduct of any particular Defendant can be traced to any particular injury to any particular Plaintiff.

The Defendants are at most alleged to be *secondarily* liable for the actions of unidentified settlers simply by providing financial or moral support or routine banking or commercial services to these persons.  Plaintiffs claim that Defendants allegedly "know" that this support "causes" criminal mistreatment of Palestinians based on "common knowledge," public

---

[1] In fact, although not germane to this Rule 12(b)(6) motion, even this claim does not implicate JNF-USA, which is a U.S. charity, but rather, alleges purported activity by a separate and distinct Israeli entity based in Jerusalem, Keren Kayemet L'Yisroel, which in English is also called "Jewish National Fund."  *See* Declaration of Russell F. Robinson ¶ 9, CEO of JNF-USA, filed with Defs.' Omnibus Mem. of Law in Supp. of Mot. to Dismiss Pursuant to Federal Rule 12(b)(2) for Lack of Personal Jurisdiction and 12(b)(5) for Insufficient Service of Process.

statements by media, NGOs, international organizations, and in the case of the bank defendants, so-called "Know Your Customer" protocols. *Id.* ¶¶ 151, 205, 212.

In substance, the Complaint thus alleges Defendants are liable either for: (1) donating or raising funds for U.S. tax-exempt charitable organizations that in turn donate money to settlements and IDF veterans, (2) advocating in support of Israeli settlement policies, or (3) engaging in normal business transactions with settlers, settlements, and parts of the Israeli government, without any allegation that the Defendants direct or control the actions of either these settlers or the Israeli state. *Id.* ¶¶ 32-77; *see also id.* ¶ 184. The purported goal of the alleged conspiracy is "the expulsion of all non-Jews from OPT [sic] and the creation of new segregated 'Jewish-only' cities and villages." *Id.* at 12.

The Complaint contains four Counts. In Count I, Plaintiffs purport to allege a civil conspiracy by certain Defendants "to expel all non-Jews from the OPT." *Id.* at 103. In Count II, Plaintiffs allege that Defendants themselves committed "war crimes, crimes against humanity and genocide." *Id.* at 145. Plaintiffs separately allege "aiding and abetting the commission of war crimes" in Count III, *id.* at 180, which "relies upon and specifically tracks the allegations made in Count II, i.e., the commission of war crimes," *id.* ¶ 228. Finally, in Count IV, Plaintiffs allege an "aggravated and ongoing trespass against all defendants who have been trespassing on private Palestinian property during the occupation."[2] *Id.* at 184.

---

[2] Count I is brought against Defendants Adelson, Hagee, Leviev, Moskowitz, Abrams, and all remaining Charitable Entity Defendants. *See id.* at 103 (noting exclusion of certain individual Defendants and Defendants listed in Count IV). While Construction/Support Defendants are mentioned in Count I, Count I's heading excludes them along with the other Defendants named in Count IV. Accordingly, conspiracy allegations have not been lodged against the Construction/Support Defendants (but even if the allegations had been made, they must be dismissed for the reasons described below). Count II is brought against all Defendants. *See id.* at 145. Count III is brought against Defendants Abrams, Adelson, Braman, Ellison, Gilbert, Hagee, Moskowitz, Saban, G4S North America, RE/MAX, LLC, Bank Leumi USA, and the

II.     **Procedural History**

A.       <u>**This Court's Prior Dismissal Ruling**</u>

By Order dated December 15, 2016, the Court instructed Defendants to file a single

memorandum of law limited to Defendants' contention that the Court lacks subject matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  After evaluating the allegations of

the Complaint, the Court agreed with Defendants that all of Plaintiffs' claims present non-

justiciable political questions such as "the limits of state sovereignty in foreign territories where

boundaries have been disputed since at least 1967," and "whether the actions of Israeli soldiers

and private settlers in the disputed territories constitute genocide and ethnic cleansing."  Mem.

Op. at 6, ECF 120 (Aug. 29, 2017).  Plaintiffs appealed.

B.       <u>**Plaintiffs' Appeal**</u>

On appeal, Plaintiffs significantly altered the theory of liability they had argued to this

Court.  In their reply brief, Plaintiffs "expressly waiv[ed] any theory of liability premised upon

the conduct of Israeli soldiers."  *Al-Tamimi v. Adelson*, 916 F.3d 1, 9 n.5 (D.C. Cir. 2019).  As

Plaintiffs explained, "[t]he lower Court here does not have to decide if military activity engaged

in in the [disputed territory] is illegal.  The reason – it is the belligerent settlers who have: a)

stolen thousands of acres of private Palestinian property; b) burned down olive groves; c)

poisoned water wells and livestock; d) forged deeds to Palestinian properties; and e) forcibly

removed 400,000 Palestinians from the [disputed territory]."  *Id.* (quoting Appellants' Reply Br.

at 2).

---

JNF-USA.  *See id.* ¶ 228.  Count IV is brought against Bank Leumi USA and the
Construction/Support Defendants.  *Id.* ¶ 235.

Relying on this concession, the D.C. Circuit reversed.  The Court indicated it would defer to the U.S. Government's concern that "[g]iven the level of political and military support provided Israel by the American government, a judicial finding that the Israeli armed forces had committed the alleged offenses would implicitly condemn American foreign policy by suggesting that the [government's] support of Israel is wrongful."  *Id.* at 13 (internal quotation marks and citation omitted).  Plaintiffs' concessions, however, resolved those issues, such that the potential political questions could be reduced to: (1) "who has sovereignty over the disputed territory?" and (2) "are Israeli settlers committing genocide?"  *Id.* at 10.  The Court of Appeals concluded that, while the first is a jurisdiction-stripping political question, the second is not. According to the Court, the District Court "could rule in the plaintiffs' favor on at least Counts I, II and III, without touching the sovereignty question, if it concluded that Israeli settlers are committing genocide."  *Id.* at 13-14.  The Court acknowledged that it might be necessary "to make a sovereignty determination in order to resolve some of the property-based allegations in Count IV," but for now, "none of [the] claims can be dismissed on this basis."  *Id.* at 14.  The Court of Appeals consequently remanded the case for further proceedings consistent with its decision, including Plaintiffs' waiver.

## III.    The Case on Remand

Plaintiffs are bound for all purposes by their concessions regarding their theory of liability on appeal.  Accordingly, allegations premised on conduct by the Israeli military are expressly waived.

### A.    <u>The Remaining Defendants</u>

Plaintiffs have voluntarily dismissed a number of Defendants, including the foreign corporate Defendants against whom an ATS suit may not be brought pursuant to *Jesner*. Defendants remain, however, in each of the five categories set out in the Complaint.

8

The first category is comprised of eight individuals based in the United States that allegedly donated funds to U.S. tax-exempt entities (the "Donor Defendants").[3]  *See* AC ¶¶ 32-40.  Equating settlement support with criminal conduct, the Complaint asserts that "individual donors knew and intended that their donations" would be used in support of illegal settler activities, *id.* ¶ 105, that "necessarily entail the ethnic cleansing of all Palestinian families living near OPT settlements," *id.* ¶ 32.  The Complaint (including Exhibit C, which purports to describe Plaintiffs' individual injuries) does not contain any non-conclusory allegations of any specific donation by a Donor Defendant, or the transmission of any such donation to a specified recipient, that caused any alleged injury to any Plaintiff.

The second category, identified in the Complaint as "Settlement and IDF Advocate/Promoter," is comprised of one person, Defendant Elliott Abrams.[4]  *Id.* ¶ 41.

The third category of Defendants consists of U.S. tax-exempt charitable entities ("Charitable Entity Defendants").[5]  *Id.* ¶¶ 42-54.  Plaintiffs claim that certain of these Defendants allegedly provided funds to support settlement expansion by transferring money to Israeli settlements and that these transfers of funds were conducted "knowing that those funds would be used by settlement leaders to arm the local settlement population and have them engage in ethnic

---

[3] The Donor Defendants are Sheldon Adelson, Norman Braman, Lawrence Ellison, Daniel Gilbert, John Hagee, Lev Leviev, Dr. Irving Moskowitz, and Haim Saban.  *Id.* ¶¶ 32-40.

[4] Elliott Abrams is represented by the Department of Justice and does not join this brief.

[5] The Charitable Entity Defendants are American Friends of Ariel, American Friends of Bet El Yeshiva, American Friends of Har Homa, Christian Friends of Israeli Communities, Efrat Development Foundation, Falic Family Foundation, Friends of the Israel Defense Forces, Gush Etzion Foundation, Honenu National Legal Defense Organization, The Hebron Fund, and the JNF-USA.  *Id.* ¶¶ 42-54.  American Friends of Har Homa is listed in the case caption, a single footnote, and the "illustrative" "Causal Chain of Damages for Har Homa Plaintiffs," but is not referenced in any allegation made by the Plaintiffs or included in the "Defendants" section of the Complaint.  *Id.* at 4, 18.

cleansing and wanton property destruction." *Id.* ¶ 103. Other Charitable Entity Defendants, such as FIDF, are alleged solely to be liable for contributions to the Israeli military, and thus have *no* allegations tying them to Plaintiffs' alleged injuries under Plaintiffs' new theory of liability. *Id.* ¶ 49. As with the Donor Defendants, the Complaint does not contain any non-conclusory factual allegations regarding any specific money transfers to a particular recipient that related to any alleged injury suffered by any Plaintiff.

The sole remaining defendant in the fourth category – "Defendant Banks" – is Bank Leumi USA. *Id.* ¶ 55. Most of the allegations in the Complaint fail to distinguish between Bank Leumi USA and the two now-dismissed foreign bank defendants – Bank Leumi Le-Israel and Bank Hapoalim – in violation of the prohibition against group pleading. *See, e.g.*, *id.* ¶ 240 ("BL/BH have also knowingly engaged in a 30-year pattern of aggravated and ongoing trespass by expanding their physical presence in the OPT."); *see also Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014). The Complaint's numerous allegations concerning banking operations in settlement areas, such as ATMs, *e.g.*, AC ¶¶ 135, 152, 240, presumably refer to the dismissed Israeli banks rather than Bank Leumi USA and cannot support a theory of liability against Bank Leumi USA. Regardless, there are no factual allegations that link the bank's routine business activities purportedly in support of settlement expansion to any alleged injury suffered by a particular Plaintiff.

The Complaint makes conclusory allegations that "Bank Leumi officials based in America have transferred millions of dollars every year to various settlements knowing (by virtue of the recognized banking protocol 'Know Your Customer') that the funds would be used to expand OPT settlements." *Id.* ¶ 55. But there is no allegation, nor could there be, that "Know Your Customer" rules require banks to investigate the *recipient* of funds transferred from a

customer (except reasonably to ensure that the recipient is not a sanctioned entity or individual and report suspicions of unlawful activity) or to "know" the use to which a particular funds transfer would be put by the recipient.  Moreover, the Complaint lacks any allegation regarding any specific transfer of funds by Bank Leumi USA from the United States to Israel; nor does it identify any specific transferor or recipient.

The last category of Defendants originally contained U.S. and foreign corporations (collectively, the "Construction/Support Defendants"), several of which allegedly provide construction, real estate development, and infrastructure services to settlements in the West Bank and Gaza; and others that allegedly provided support services and products to other Defendant companies, the settlements (such as security-related services and products), or to the Israeli government (such as buses and equipment for Israeli prisons and military technology for the Israeli army allegedly used in the "Gaza invasions").  *Id.* ¶¶ 57-77.  Only five U.S. corporations remain in this category:  RE/MAX, LLC, AFI USA, G4S North America, HPE, and Motorola. *Id.*  However, the Complaint still lumps the original group of "Construction/Support" Defendants together, largely fails to offer any particularized allegations regarding the purported wrongdoing by these remaining Defendants, and does not distinguish between these U.S. companies and any foreign affiliates that since have been dismissed.  Further, the Complaint relies at least in part on claims of assistance to the Israeli military that were waived on appeal and fails to include allegations against the so-called "Construction/Support" Defendants that connect these Defendants' business activities to any alleged injury suffered by a Plaintiff.

### B.       Plaintiffs' Remaining Theories of Liability

While Plaintiffs have not dropped any of their original four claims for relief, their waiver of claims based on Israeli military activities necessarily limits (if not precludes altogether) their theories of liability.  The injuries alleged are generalized grievances by "Palestinians" as a group,

rather than any identified damage suffered by any identified Plaintiff, and to the extent the

Complaint attempts to identify any harm suffered by any particular Plaintiff, these harms are

largely alleged to be caused by the Israeli military.  Based on these allegations, the majority of

Plaintiffs' claims fall squarely within the waiver on appeal of "any theory of liability based on

the conduct of the Israeli military."  *Al Tamimi*, 916 F.3d at 13.

The Complaint also retains its original pleading deficiencies.  Notably, there is no

explanation of how the conduct of *any* particular Defendant (as opposed to the Israeli military)

can be traced to *any* particular injury to *any* particular Plaintiff.  As might be expected from the

generic nature of this entire pleading, the Complaint asserts, in sweeping terms, that the

expansion of settlements in the West Bank and Gaza over decades would not have occurred

without encouragement and funding from Defendants, *see, e.g.*, AC ¶ 86, and that "each one of

the Plaintiffs named herein can trace the cause of his damages from violent settlers in nearby

settlements back through Israel-based settlements and their bank accounts to U.S. 501(c)(3)

entities and wealthy U.S. donors," *id.* at 17.  Yet, Plaintiffs' Complaint does not include such

"tracing," and conclusory assertions alone are not enough to state a claim under any of Plaintiffs'

legal theories.

What the Complaint does make clear is that the place of every injury allegedly suffered

by any Plaintiff is Israel or the OPT.  There is no allegation that any Plaintiff suffered any injury

in the United States.  With respect to the Donor Defendants and the Charitable Entity

Defendants, the allegations of U.S. activities are limited to (a) financial support of entities in

Israel that are not subject to any U.S. sanctions and (b) public advocacy in favor of settlements in

Israel.  The Complaint acknowledges that the sole focus of these Defendants' alleged actions,

and the actions of the other Defendants, was in Israel and the West Bank and Gaza, not the

United States.  There is also no allegation regarding Bank Leumi USA beyond routine transfers

of funds from U.S. persons to unidentified non-party settlers or settlements; and as for the

Construction/Support Defendants, there is no allegation that any of them engaged in any activity

in the United States that directly contributed to any injury to any Plaintiff.

Based on these allegations, the Complaint asserts that the Defendants should be held

liable and required to pay one billion dollars for participating in an alleged conspiracy that:

violated international law and the law of nations under the ATS, 28 U.S.C. § 1350, AC ¶¶ 181-

227; committed torture and extrajudicial killings under the TVPA, *id.* ¶ 3; and committed civil

conspiracy and aggravated trespass under District of Columbia law, *id.* ¶¶ 234-55.  There are no

well-pleaded facts that give rise to a cognizable claim under any of these theories.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A claim is plausible when

the factual content allows the Court to "draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Id.*  While the Court must accept as true well-pleaded allegations of

fact, it need not accept legal conclusions couched as factual allegations.  *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 554, 554-58 (2007).  "A pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.' . . .  Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556

U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).  Further, a

complaint cannot "lum[p] all the defendants together in each claim" without providing "each

defendant with fair notice of each claim and its basis."  *Toumazou*, 71 F. Supp. 3d at 21 (internal

quotation marks omitted); *see also Morton v. D.C. Hous. Auth.*, 720 F. Supp. 2d 1, 9 n.3 (D.D.C.

2010) (group pleadings" that fail to "plead facts with the requisite specificity" do not survive a motion to dismiss (internal quotation marks omitted)).

## ARGUMENT

As set forth below, the Court should dismiss the Complaint because: (1) Plaintiffs waived claims premised on Israeli military activity; (2) the Court lacks subject matter jurisdiction over the ATS claims; (3) Plaintiffs lack standing; (4) the Complaint fails to state a claim under the TVPA; (5) Plaintiffs' local law claims fail; and (6) numerous Plaintiffs' claims are time-barred.[6]

## I.   PLAINTIFFS' WAIVER OF CLAIMS PREMISED ON ISRAELI MILITARY ACTIVITY REQUIRES DISMISSAL OF MOST CLAIMS IN THE COMPLAINT

The Court of Appeals noted in evaluating whether any political questions raised in the Complaint could be extricated that "[t]he plaintiffs have done this work for us with respect to one issue, expressly waiving any theory of liability premised upon the conduct of Israeli soldiers." *Al-Tamimi*, 916 F.3d at 9 n.5 (citing Appellants' Reply Br. at 2). Despite this clear waiver and the Court of Appeals' reliance on it, Plaintiffs now seek to have it both ways, informing the Court that they "reject Defendants' fanciful characterizations of the scope of the purported waiver and Defendants' conduct." Pls.' Resp. to Defs.' Mot. for a Status Conference at 2 n.1, ECF 150 (Apr. 1, 2020).

---

[6] Since the ATS is purely jurisdictional, the Court can address the deficiencies in Plaintiffs' ATS claims at the threshold. *See Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 516 (D.C. Cir. 2018); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction." (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998))). Further, while lack of standing is a defect in subject matter jurisdiction, it was not addressed in the Court's political question ruling. Absence of subject matter jurisdiction may, of course, be raised at any time, and is therefore appropriately addressed in this motion, which raises all 12(b) grounds for dismissal that the Court did not include in its prior briefing order.

14

Plaintiffs' position is indefensible.  Of course, Plaintiffs are bound by their waiver.  It is now law of the case and subject to the mandate rule.  As the D.C. Circuit has recognized, "[a]dherence to the rule that a party waives a contention that could have been but was not raised on [a] prior appeal, . . . is, of course, necessary to the orderly conduct of litigation.  Failure to follow this rule would lead to the bizarre result . . . that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost."  *Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1089-090 (D.C. Cir. 1984) (internal quotation marks and citations omitted); *see also United States v. Husband*, 312 F.3d 247, 251 (7th Cir. 2002) ("[P]arties cannot use the accident of remand as an opportunity to reopen waived issues." (internal quotation marks and citation omitted)).  Here, Plaintiffs' position is even weaker – they *affirmatively* waived any claim "premised on the conduct" of the Israeli military, and the D.C. Circuit *relied* on that waiver to avoid an otherwise-serious political question problem in their case.  *Al Tamimi*, 916 F.3d at 9 n.5.

As a consequence of Plaintiffs' waiver, no Complaint allegations premised on conduct by the Israeli military can be used to support Plaintiffs' claims.  At a minimum:

- **The TVPA claim (Count II) must be dismissed for failure to allege state action**: "[T]he plain language of the TVPA limits liability to those acting under color of law of a foreign nation," *Harbury v. Hayden*, 444 F. Supp. 2d 19, 41 (D.D.C. 2006), *aff'd on other grounds*, 522 F.3d 413 (D.C. Cir. 2008), which in turn requires a showing that the defendant "acts together with state officials or with significant state aid," *Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 260 (2d Cir. 2007), *aff'd sub nom. Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008).  Plaintiffs' waiver of claims premised on Israeli military activity forecloses any argument that the state action requirement of a TVPA claim is satisfied.  *See also infra* Section IV.B.

- **Defendants who are solely alleged to have provided support to the Israeli military must be dismissed from this case**: Defendants FIDF, Ellison, and Saban will submit a separate memorandum explaining that Plaintiffs' waiver of claims based on conduct of the Israeli military requires dismissal of the Complaint as to them in its entirety.

- **Allegations that the other Defendants provided support to the Israeli military cannot support Plaintiffs' claims**: These include allegations regarding donations by Defendants to or in support of the IDF, *see, e.g.*, AC ¶¶ 184, 210, and sales of equipment or supplies to the IDF, *e.g.*, *id.* ¶ 172; AC, Ex. C at 3 ("The IAF pilots['] precision bombing was coordinated by IDF and G4S ground personnel.  They utilized HP/Motorola sophisticated tracking systems surveillance devices.").  The Court should disregard such allegations when determining whether Plaintiffs have met their burden of pleading (which they have not).

- **Plaintiffs may not assert claims for injuries allegedly perpetrated by the Israeli military:** As discussed *infra* at Section III.B, *all* of the Plaintiffs for whom there are allegations in the Complaint or its exhibits allege the involvement of the Israeli military in their injuries in some way.  The majority of named Plaintiffs reside in Gaza where there are no settlements,[7] and complain exclusively of acts by the IDF, primarily bombing by the Israeli Air Force during periodic military hostilities.  The claims of such Plaintiffs must be dismissed because they may not recover based on those injuries, and have no standing to sue over injuries that settlers allegedly inflicted on others.  This leaves a small number of Plaintiffs who make only conclusory allegations that are insufficient to establish a concrete and particularized injury in fact, among other pleading deficiencies.  *See infra* Section III.

The remaining allegations in the Complaint are largely generalized and non-specific allegations that Plaintiffs, over the span of decades, were injured or expelled from family land by Israeli settlers, and that Defendants, merely by engaging in routine commercial and charitable activities benefiting settlers, are liable for the settlers' conduct.  *E.g.*, AC ¶ 140.  There is no serious attempt to allege how each Defendant is responsible for any Plaintiff's injuries, or indeed even to distinguish among Defendants in many instances.[8]

---

[7] *See Israel and the Palestinians: Can the settlement issue be solved?*, BBC News (Nov. 18, 2019), https://www.bbc.com/news/world-middle-east-38458884 (noting that Israel "dismantled" all settlements in Gaza "when it withdrew from the territory in 2005").

[8] For example, the Complaint repeatedly lumps together allegations regarding groups of foreign and U.S. corporate defendants, failing to distinguish between actions allegedly taken by parents as opposed to subsidiaries as well as actions taken by entirely unrelated corporate entities.  The subsequent dismissal of the foreign corporate Defendants makes it unclear which of the original allegations – which largely involve conduct outside of the United States – even purport to concern the remaining Defendants.  *See supra* at Background Section III.A (discussing group allegations regarding Bank Leumi USA and the now dismissed Bank Leumi Le-Israel B.M. and

Rather, Plaintiffs' allegations essentially boil down to the following *ipse dixit* assertion:  any support given to the Israeli settlers is a legal cause of any alleged act by a settler that harmed Plaintiffs, and Defendants "must" have known that their support would cause this harm because the alleged activities of the settlers in the West Bank and Gaza are public knowledge.  As explained below, this theory is far too speculative and conclusory to survive a motion to dismiss.  *See Ahmad v. Christian Friends of Israeli Cmtys.*, No. 13 Civ. 3376(JMF), 2014 WL 1796322 (S.D.N.Y. May 5, 2014) (rejecting Anti-Terrorism Act ("ATA") and ATS claims against charities that provided funds to settlers, which the plaintiffs argued supported attacks and the illegal occupation of territory in the West Bank and Gaza); *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 276 (D.C. Cir. 2018) (affirming dismissal of ATA claims against BNP Paribas relating to alleged funding of al Qaeda through Sudan based on "conclusory allegations that do not meet *Twombly*'s plausibility standard with respect to the need for a proximate causal relationship between the cash transferred by [BNPP] to [Sudan] and the terrorist attacks by [al Qaeda] that injured plaintiffs." (alteration in original) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013)); *see also Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 109 (D.D.C. 2017) (dismissing substantially similar ATA and ATS claims against BNPP for failure to satisfy *Iqbal* and *Twombly*), *order vacated as to other defendant*, 285 F. Supp. 3d 240 (D.D.C. 2018).

## II.   PLAINTIFFS' CLAIMS UNDER THE ALIEN TORT STATUTE FAIL FOR LACK OF JURISDICTION

The ATS provides that "[t]he district courts shall have original jurisdiction of any civil

---

Bank Hapoalim B.M); AC at 27 (group allegations against "HP/Motorola officials," a category that includes dismissed foreign corporate entities and remaining U.S. Defendants that are not affiliated with each other).

action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.  "The ATS is 'strictly jurisdictional'" in that it does not create any cause of action itself.  *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1397 (2018) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713 (2004)).  In addition to (a) overcoming the presumption against extraterritorial application, which Plaintiffs fail to do, and (b) establishing they are aliens, which most Plaintiffs also fail to do,[9] Plaintiffs must also establish that "(1) the complaint pleads a violation of the law of nations; . . . [(2)] customary international law recognizes [the asserted] liability [of the particular type of] defendant; and [(3)] the theory of liability alleged by plaintiffs (*i.e.*, aiding and abetting, conspiracy) is recognized by customary international law [or 'the law of nations']."  *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 165-66 (2d Cir. 2015) (alterations in original) (quoting *Mastafa v. Chevron Corp.*, 770 F.3d 170, 179 (2d. Cir. 2014)); *see Doe v. Exxon Mobil Corp.*, Civil No. 01-1357(RCL), 2015 WL 5042118, at *2 (D.D.C. July 6, 2015).  "[A] defect in any of these jurisdictional predicates [is] fatal to a plaintiff's claims."  *Balintulo*, 796 F.3d at 166.  Here, the Complaint's ATS claims in Counts I,[10] II, and III fail several aspects of this inquiry, and must therefore be dismissed.

A.   <u>**Plaintiffs Fail to Overcome the Presumption Against Extraterritoriality**</u>

It is a "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United

---

[9] The ATS claims fail on this inquiry alone, as the Complaint almost entirely fails to allege the nationality of each Plaintiff.  *See* Ex. A, Demonstrative Chart.  The Plaintiffs who are alleged to be U.S. nationals (Saad Malley, Linda Kateeb, *see* AC ¶ 29, Susan Abulhawa, AC, Ex. C at 46-47, and Waddah Khalid Sofan, *see id.* at 48) are barred from bringing ATS claims.

[10] Although Count I is pleaded as a common law claim, it also refers to violations of international law.  To the extent it alleges a conspiracy to violate international law, it must meet the requirements of the ATS.  To the extent it relies on common law, it fails as well for the reasons discussed in Section V.C, *infra*.

States." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (internal quotation

marks omitted) (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)).  The

Supreme Court has made clear that the ATS must be interpreted in light of the usual

"presumption that United States law governs domestically but does not rule the world." *Kiobel*

*v. Royal Dutch Petroleum*, 569 U.S. 108, 115 (2013) (internal quotation marks and citation

omitted).  Accordingly, the ATS does not confer jurisdiction for the claims asserted by Plaintiffs

here in Counts I, III, and IV "seeking relief for violations of the law of nations occurring outside

the United States." *Id.* at 124.

The Court made clear in *Kiobel* that a defendant's "mere corporate presence" in the

United States is not enough to overcome the presumption against extraterritoriality.  *Id.* at 125.

Rather, a federal court has jurisdiction under the ATS only for claims that "touch and concern

the territory of the United States . . . with sufficient force to displace the presumption against

extraterritorial application."  *Id.* at 124-25 (citing *Morrison*, 561 U.S. at 264-72).  Under this

standard, the Complaint fails.

> **1.     The Alleged Violations of International Law Took Place Outside the United States and Therefore Cannot be the Basis of ATS Claims**

To overcome the presumption of extraterritoriality under the ATS, there must be a

sufficient domestic "territorial event" that is within "the 'focus' of congressional concern."

*Morrison*, 561 U.S. at 266; *Kiobel*, 569 U.S. at 124-25 (describing the need for sufficient

domestic connection to overcome the presumption and citing *Morrison*).[11]  The Complaint here

alleges no domestic tort that satisfies *Kiobel* or *Morrison*.

---

[11] *See also RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2101 (2016) (describing *Kiobel* and *Morrison* as following the same "framework" of "looking to the statute's 'focus'" to determine whether the case involves "a permissible domestic application").

The focus of congressional concern in enacting the ATS is clear from the face of the statute: "tort[s] . . . committed in violation of the law of nations." 28 U.S.C. § 1350. Three primary violations of international law were "[u]ppermost in the legislative mind" when Congress enacted the ATS: offenses against ambassadors, violations of safe conducts, and piracy. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 716-17, 720 (2004). Thus, the only "territorial event" capable of displacing the presumption of extraterritoriality in an ATS case is a primary violation of international law. *See Kiobel*, 569 U.S. at 127 (Alito, J., concurring) ("[A] putative ATS cause of action will fall within the scope of the presumption against extraterritoriality – and will therefore be barred – unless the domestic conduct is sufficient to violate an international law norm that satisfies *Sosa*'s requirements of definiteness and acceptance among civilized nations.").

The ATS claim should be dismissed under this principle. Any violations of international law are alleged to have occurred in the West Bank and Gaza, not the United States. As in *Kiobel*, Plaintiffs' request for "relief for [alleged] violations of the law of nations occurring outside the United States is barred." 569 U.S. at 124; *see also Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185, 1191 (11th Cir. 2014) (rejecting ATS claim where the primary international law violations occurred in Colombia, because "[t]here is no allegation that any torture," or "any other act constituting a tort in terms of the ATS," "occurred on U.S. territory"); *accord Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 197 (5th Cir. 2017) ("[T]he ATS's focus is the 'tort . . . committed in violation of the law of nations or a treaty of the United States.'" (citation omitted)).

### 2. Plaintiffs Allege No Domestic Conduct That Could Even Potentially Overcome the Presumption Against Extraterritoriality

Some courts have allowed for the possibility that significant U.S. connections could displace the presumption, even if the primary violation of international law itself occurs abroad.[12]  But even this more flexible view of the presumption against extraterritoriality would not save the Complaint because the alleged facts fail to establish that the domestic conduct in furtherance of the purported underlying violation of international law meets the significance requirement imposed by *Kiobel*.

Absent "exceptional" circumstances, "the presumption will not be displaced without allegations of *substantial and specific* U.S.-based conduct relevant to the ATS claims."  *Exxon Mobil*, 2015 WL 5042118, at *8 (emphasis added).  In *Exxon Mobil*, the court concluded that the presumption was not displaced by "routine business practices" in the United States.  *Id.* at *13.  Neither was the presumption displaced by "generalized" allegations that funds provided to Indonesian security forces "necessarily came from the United States."  *Id.*[13]

Plaintiffs' theory is that the Defendants, through domestic conduct, have assisted in the commission of international law violations by others, all of which allegedly occurred abroad.  As

---

[12] *See Al Shimari v. CACI Premier Tech., Inc.*, 758 F.3d 516, 528-29 (4th Cir. 2014) (allegations of torture at a U.S. military base in Iraq by U.S. citizen employees of a U.S. corporation pursuant to a contract negotiated in the United States with the U.S. government and U.S.-based managers who "encouraged" their employees to commit the misconduct involved "extensive 'relevant conduct' in United States territory"); *see also Warfaa v. Ali*, 811 F.3d 653, 660 (4th Cir. 2016) (describing *Al Shimari* as "the rare case to rebut the presumption").

[13] The court did, however, find "substantial and specific allegations of U.S.-based conduct" that decision-makers in the United States "knew . . . would have a substantial effect on the commission of the underlying offenses."  *Id.*, at *14.  Among other actions, the plaintiffs in *Exxon Mobil* alleged that "executives in the United States 'planned and authorized the deployment of military security personnel'" that committed the alleged violations of international law.  *Id.* (citation omitted).  Nothing approximating such domestic conduct is alleged here, nor could it be against these Defendants.

discussed further below, the question of whether the ATS even permits aiding and abetting liability – and, if so, what standard applies for imposing such liability – is unresolved in this Circuit and is far from clear.  *See infra* Section II.D.  Even if aiding and abetting liability might be available under the ATS, specific allegations of domestic conduct would meet *Kiobel*'s requirements only "if such conduct . . . aided and abetted a violation of the law of nations." *Mastafa v. Chevron Corp.*, 770 F.3d 170, 191 (2d Cir. 2014); *European Cmty. v. RJR Nabisco, Inc.*, 764 F.3d 129, 142 (2d Cir. 2014) (to overcome presumption in the RICO context, the domestic conduct must "satisf[y] *every essential element* to prove a violation") (emphasis added), *rev'd on other grounds*, 136 S. Ct. 2090 (2016).

Nothing of the sort is alleged here.  Instead, Plaintiffs rely on the fact that the Defendants are citizens of the United States, domiciled in the United States, or "have offices in America." AC ¶ 1.  But "mere corporate presence" is not enough.  *Kiobel*, 569 U.S. at 127.  While courts have been divided over whether U.S. citizenship is completely irrelevant or just a minor factor in the analysis, there is broad agreement that citizenship is not a *significant* factor in overcoming the presumption.  *Compare Mastafa*, 770 F.3d at 189 (finding defendant's U.S. citizenship irrelevant), *and Cardona*, 760 F.3d at 1189 (same), *with Mujica v. AirScan Inc.*, 771 F.3d 580, 594 n.9 (9th Cir. 2014) (finding citizenship relevant but "not dispositive"), *and Doe. v. Drummond Co.*, 782 F.3d 576 (11th Cir. 2015) (same).

Plaintiffs' conclusory allegations that funding flowed from the United States to settlements through certain tax-exempt entities fare no better.  It is telling that the most concrete allegation of domestic conduct that Plaintiffs highlight is that the Donor and Charitable Entity defendants "held meetings with settlement leaders, IDF representatives, and international conglomerate representatives in this judicial district and elsewhere within the United States" and

"sent money to settlements" from the United States.  AC ¶ 1(h).  Such alleged domestic activities

bear no connection, let alone a "substantial and significant" one, to the acts of torture and

genocide the Plaintiffs allege.  Merely providing funds to or engaging in routine business

transactions with a foreign entity from within the United States does not displace the *Kiobel*

presumption.  *See Balintulo v. Daimler AG*, 727 F.3d 174, 192 (2d Cir. 2013) (rejecting ATS

claim that U.S. companies circumvented sanctions against apartheid South Africa by using their

subsidiaries to "continu[e] to supply the South African government with their products"); *Exxon*

*Mobil*, 2015 WL 5042118, at *13.[14]

Indeed, Courts have found that transfers of funds through U.S. entities have sufficiently

"touched and concerned" the United States only in cases that involved transfers to entities

sanctioned by the government or that were affiliated with foreign organizations designated as

"terrorists" pursuant to Section 219 of the Immigration and Nationality Act, 8 U.S.C. § 1189.

*See Licci v. Lebanese Canadian Bank*, 834 F.3d 201, 216 (2d Cir. 2016) (involving bank

transfers of funds to an entity affiliated with Hezbollah, a designated foreign terrorist

organization); *Doe v. Nestle, S.A.*, 929 F.3d 623, 642 (9th Cir. 2018), *cert. petition granted*, No.

19-416.  Plaintiffs do not and cannot make such allegations here.

Plaintiffs' other allegations concerning Bank Leumi USA and the Construction/Support

Defendants come no closer to alleging domestic conduct that could displace the *Kiobel*

presumption.  Where the Plaintiffs mention some U.S. connection, it generally has little to do

---

[14] The *Mastafa* court, for example, found the plaintiffs' claim that a defendant financed international law violations by Saddam Hussein impermissibly extraterritorial, even though "much of the decisionmaking" was "necessarily made in the United States" at the defendant's headquarters.  770 F.3d at 190; *see also Doe v. Drummond Co.*, 782 F.3d 576, 598 (11th Cir. 2015) (allegations that defendants "made funding and policy decisions in the United States" related to international law violations in Colombia insufficient to displace presumption against extraterritoriality).

with the alleged international law violations, but instead concerns "routine business practices," *Exxon Mobil*, 2015 WL 5042118, at *13, with at most an attenuated relationship to the alleged offenses.  *See*, *e.g.*, AC ¶ 55 (alleging that Bank Leumi USA is a U.S. subsidiary of Bank Leumi Le-Israel without identifying any tie between Bank Leumi USA and the alleged provision of banking services to settlements, much less any connection between Bank Leumi USA and any violent settler activities), ¶ 69 (alleging generic "lobbying activities" by HPE in the United States, without any attempt to tie U.S.-based activities to any alleged violations).

For the reasons discussed *infra* at Section II.D, Plaintiffs' allegations do not state a claim for aiding and abetting liability.  But even if they did, they are insufficient to plausibly allege that Defendants aided and abetted international law violations *from within the United States*.  *Cf. Mastafa*, 770 F.3d at 186 (requiring a preliminary "glimpse" at the plausibility of aiding and abetting violations before crediting alleged U.S.-based aiding-and-abetting conduct for purposes of displacing the presumption against extraterritoriality).  Thus, their ATS claim fails to allege domestic conduct sufficient to overcome the presumption against extraterritoriality, and it must, therefore, fail.

### B.      The Court Should Not Extend ATS Liability to Domestic Corporations

The Supreme Court has explained that the ATS confers jurisdiction only for claims based on a "narrow set of violations of the law of nations, admitting of a judicial remedy and at the same time threatening serious consequences in international affairs."  *Jesner*, 138 S. Ct. at 1397 (quoting *Sosa*, 542 U.S. at 715).  As noted above, *see supra* Section II.A, when Congress passed the ATS in 1789, only three violations of international law met this standard: violations of safe conducts, infringement of the rights of ambassadors, and piracy.  *Id.*  Although the Court in *Sosa* allowed the possibility that other violations of international law could become cognizable under the ATS, it warned lower courts to exercise "great caution" and "vigilant doorkeeping" in

recognizing new causes of action.  *Sosa*, 542 U.S. at 728-29.  In *Jesner*, the Supreme Court

reiterated this warning, 138 S. Ct. at 1398, before concluding that foreign corporate defendants

are not subject to suit under the ATS, *id.* at 1402.

 *Jesner's* rationale demonstrates that ATS suits may not be maintained against domestic

corporations either.  Judge Lamberth recognized as much in *Doe v. Exxon Mobil Corp.*, 391 F.

Supp. 3d 76, 93 (D.D.C. 2019), where he declined to recognize domestic corporate liability

under the ATS based on the Supreme Court's reasoning in *Jesner*.  As the *Jesner* plurality

describes, *Sosa* created a two-step test for evaluating the availability of a common-law cause of

action under the ATS.  First, a plaintiff must demonstrate at the threshold that "the alleged

violation is 'of a norm that is specific, universal, and obligatory.'"  *Jesner*, 138 S. Ct. at 1399

(plurality opinion) (quoting *Sosa*, 542 U.S. at 732).  If that requirement is satisfied, "it must be

determined further whether allowing this case to proceed under the ATS is a proper exercise of

judicial discretion, or instead whether caution requires the political branches to grant specific

authority before corporate liability can be imposed."  *Id.* (citing *Sosa*, 542 U.S. at 732-33 & n.20-

21).

 At *Sosa* step one, the limited circumstances in which corporations have been held liable

for international law violations "fall[] far short" of meeting the "specific, universal, and

obligatory" standard.  *Jesner*, 138 S. Ct. at 1401 (Kennedy, J., plurality opinion).  In evaluating

the foreign policy and separation of powers considerations at the heart of *Sosa* step two, the

*Jesner* majority stated that the "Court's general reluctance to extend judicially created private

rights of action . . . extends to the question whether the courts should exercise the judicial

authority to mandate a rule that imposes liability upon artificial entities like corporations," and is

in fact heightened in the ATS context.  *Id.* at 1402-403.  Noting that "there is an argument that a

proper application of *Sosa* would preclude courts from ever recognizing any new causes of action under the ATS," the majority concluded that "absent further action from Congress it would be inappropriate for Courts to extend ATS liability to foreign corporations." *Id.* at 1403.[15]

This Court should join *Exxon Mobil* in declining to extend ATS liability to domestic corporate defendants for the same reasons that the *Jesner* court cited in holding that the ATS does not permit claims against foreign corporations. *Exxon Mobil*, 391 F. Supp. 3d at 85.[16]  The *Jesner* plurality concluded that international law "falls far short of establishing a specific, universal, and obligatory norm of corporate liability."  138 S. Ct. at 1401-402.  That point does not depend on the nationality of the corporation.  The Supreme Court has repeatedly stated that "[w]hether corporate defendants should be subject to suit" is "a question for Congress, not [the judiciary], to decide." *Id.* at 1403 (citation omitted).  And, when courts do create causes of action, they look to analogous statutes for guidance. *Id.  Jesner* concluded that the TVPA "reflects Congress' considered judgment of the proper structure for a right of action under the ATS," so it was "all but dispositive" that the TVPA limits liability to natural persons. *Id.* at 1403-404.  Since the TVPA draws no distinction between foreign and domestic corporations, this comparison must also be "all but dispositive" here.

---

[15] In separate concurrences, Justices Alito, Gorsuch, and Thomas all expressed doubt as to whether it would *ever* be appropriate for the Court to recognize a new cause of action under the ATS.  *See id.* at 1408 ("Courts should not be in the business of creating new causes of action under the [ATS].") (Thomas, J., concurring); *id.* at 1409-10 ("I am not certain that *Sosa* was correctly decided.") (Alito, J., concurring); *id.* at 1412 ("I would end ATS exceptionalism.  We should refuse invitations to create new forms of legal liability.") (Gorsuch, J., concurring).

[16] *See also Nestle*, 929 F.3d at 626-633 (Bennett, J., dissenting from denial of rehearing en banc) (arguing that claims against corporate defendants are not cognizable under the ATS); Br. of United States as Amicus Curiae in Supp. of Pet. for a Writ of Cert. at 8, *Nestle v. Doe* (2020) (Nos. 19-416 and 19-453) ("The reasoning of [the Supreme] Court with respect to foreign corporations in *Jesner* forecloses liability for domestic corporations as well.").

*Jesner* also pointed to the foreign policy dangers of corporate liability, and the same concerns have arisen in cases against U.S. corporations.[17]  *See, e.g.*, *Exxon Mobil*, 391 F. Supp. 3d at 85-86.  And the availability of actions against individual corporate employees, which makes corporate liability "not essential to serve the goals of the statute," applies equally to domestic corporations as well.  *Id.* at 92 (citing *Jesner*, 138 S. Ct. at 1405).

### C.    Count II Fails to State a Claim for Primary Violations of International Law

The Complaint also fails to allege that Defendants committed any violation of international law.  Count II should therefore be dismissed against all Defendants.[18]

Plaintiffs allege in Count II that all Defendants violated international law by committing war crimes, crimes against humanity, and genocide.[19]  To establish liability for such international

---

[17] Imposing domestic corporate ATS liability post-*Jesner* would create a means of circumventing *Jesner* in cases involving multinational companies and place domestic companies at a disadvantage vis-à-vis their foreign counterparts.  Enterprising plaintiffs could in effect sue a foreign corporation simply by naming the U.S. subsidiary of a foreign corporation as a defendant – as Plaintiffs have done, for example, by including Bank Leumi's U.S. subsidiary without any non-conclusory factual allegations of its connection to any particular monetary transfer or recipient, or linking its routine banking services to any alleged injury suffered by a specific Plaintiff.

[18] Count II is brought against all remaining Defendants, *see* AC at 145, and attempts to allege direct, or primary, violations of international law.  Count III, addressed in Section II.D, *infra*, attempts to allege secondary liability for the same violations, although the existence of secondary liability under international law is itself unsettled at best.

[19] The Complaint also alleges that Plaintiffs seek damages for emotional injuries.  *See e.g.*, AC at 180 (seeking damages in Count II premised on allegedly "witness[ing]" murder, destruction of land, and demolition of homes); *see generally* AC, Ex. C (identifying "emotional pain and suffering" damages for numerous plaintiffs); *id.* at 5, 11-12, 46-47 (seeking damages for "denial of native identity").  Such claims are not cognizable under the ATS because emotional injuries, such as intentional infliction of emotional distress ("IIED"), "do not rise to the level of international torts that are sufficiently definite and accepted among civilized nations to qualify for the ATS jurisdictional grant."  *Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 37 (D.D.C. 2010) (quoting *Ali Shafi v. Palestinian Auth.*, 686 F. Supp. 2d 23, 29 (D.D.C. 2010)) (internal quotation marks omitted).  "[T]here is not even domestic consensus as to whether a [family member] can recover for emotional injuries stemming from the death of [a close relative] much less universal agreement that such a tort is actionable."  *Id.* at 39.  Given the judicial recognition that claims for IIED are not cognizable under the ATS, courts also have rejected attempts to plead similar

law violations under the ATS, Plaintiffs must establish not only that they occurred, but that Defendants "participated, physically or otherwise directly, in the material elements of [the] crime[s] whether [individually] or jointly with others or planned, instigated, ordered, solicited, or induced the alleged violations." *Liu Bo Shan v. China Constr. Bank Corp.*, 421 F. App'x 89, 92 (2d Cir. 2011) (internal quotation marks and citations omitted).

Plaintiffs' primary liability claims clearly fail this standard. When this case was on appeal, the D.C. Circuit concluded only that Plaintiffs' genocide claim does not necessarily present a political question. *See Al-Tamimi v. Adelson*, 916 F.3d 1, 13-14 (D.C. Cir. 2019). The Court did not consider or address whether the allegations actually plead a claim of genocide. In fact, the Complaint fails to provide any plausible allegation that Defendants participated in, planned, instigated, or induced genocide by Israeli settlers. Liability for genocide requires a non-conclusory allegation that Defendants themselves participated in acts such as "killing members of the group." U.N. Convention on the Prevention and Punishment of the Crime of Genocide art. II(a), Dec. 9, 1948, 102 Stat. 3045, 78 U.N.T.S. 277 (entered into force Jan. 12, 1951). Moreover, as the International Court of Justice has explained, genocide requires the "specific intent" to commit acts "with a view to the destruction of [a] group." *See* Application of the Convention on the Prevention and Punishment of the Crime of Genocide (Bosnia v. Serbia), Judgment, 2007 I.C.J. Rep. 47, ¶ 190 (Feb. 26). Plaintiffs' allegations do not come close to meeting the elements of a genocide claim.

---

claims for emotional harm that "bear a strong resemblance to" IIED. *See, e.g.*, *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1164, 1183 (C.D. Cal. 2005) (declining to recognize claims for "cruel, inhuman, and degrading treatment" because they bear strong resemblance to IIED). Accordingly, any request for emotional damages should be dismissed.

Similarly, beyond conclusory allegations, Plaintiffs have not alleged that Defendants killed innocent civilians or that they were involved in any armed conflicts, as required (among other allegations) to state a claim for war crimes. *In re XE Servs. Alien Tort Litig.*, 665 F. Supp. 2d 569, 588 (E.D. Va. 2009). Moreover, many Plaintiffs assert claims solely based on property damage, property loss, and trespass,[20] which as pleaded are insufficient to give rise to subject matter jurisdiction under the ATS. *See Bigio v. Coca-Cola Co.*, 239 F.3d 440, 448 (2d Cir. 2001) (discriminatory theft of land and property by private actor cannot state an ATS claim). Finally, they have not alleged that Defendants directly engaged in any crimes against humanity, which are defined as murder, extermination, enslavement, enforced sterilization, or other inhumane acts "committed as part of a widespread or systematic attack directed against any civilian population." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 741 (9th Cir. 2008) (quoting Rome Statute of the International Criminal Court, art. 7.1, 37 I.L.M. 999, 1004 (1998)).

Throughout the Complaint, Plaintiffs explicitly concede that they cannot allege primary violations of international law by *Defendants*, even as they purport to assert a claim for such direct violations. According to Plaintiffs, all Defendants "have been acting as friendly and supportive *collaborators* with security coordinators and armed settlers in any number of settlements to commit . . . breaches of Customary International Law." AC ¶ 200 (emphasis added). Their claims, at best, allege actions that bear on secondary – not primary – liability. They are not particularized, and they certainly do not assert primary violations of international law. *See Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 565-66 (S.D. Tex. 2010).

---

[20] For the convenience of the Court, attached as Exhibit A to the Declaration of Alexis L. Collins in Supp. of Mot. to Dismiss Pursuant to Federal Rules 12(b)(1) and 12(b)(6), filed herewith, is a Demonstrative Chart categorizing Plaintiffs based on a number of their particular pleading and standing deficiencies. The deficiencies identified in the Demonstrative Chart are not intended to be an exhaustive list of why each individual Plaintiff's allegations fail.

Plaintiffs' diagrams of "causal chains" further illustrate their failure to allege any primary violations of international law by Defendants.  AC at 18.  For example, the diagrams purport to show that actions by Donor Defendants subsequently influenced actions of U.S. 501(c)(3) organizations, which influenced Israeli-based "funds," which subsequently influenced specific settlements in the territories, which either directly or indirectly through "armed settlers" and "security coordinators" assisted by IDF military forces committed violations of international law. This described causal chain does not purport to claim that any alleged injuries were inflicted by Defendants.  Instead, the harm was allegedly inflicted by others who are not defendants in this matter.

Because Plaintiffs allege only that Defendants engaged in indirect acts to support the purported international law violations, they fail to state a claim for primary ATS violations in Count II.

**D.**   **Plaintiffs Have Failed to State a Claim for Secondary Violations of International Law**

As with corporate liability claims, claims for secondary violations of international law fail to meet the requirements set out by the Supreme Court for recognizing new causes of action under the ATS.  Moreover, even if such claims were viable under the ATS, neither aiding and abetting nor conspiracy are independent torts; rather, each is a "theory of liability" against those who have indirect roles in the commission of international law violations.  *Mastafa v. Chevron Corp.*, 770 F.3d 170, 195 (2d Cir. 2014); *Khulumani v. Barclay Nat. Bank Ltd.*,, 504 F.3d, 254, 260 (2d Cir. 2007).  As a result, to the extent that Plaintiffs have failed to establish that this Court has jurisdiction over the underlying ATS claim for any of the reasons already shown, their claims

for aiding and abetting (Count III) and conspiracy (Count I)[21] necessarily fail as well.  Finally,

even assuming that the Court could reach the merits of Plaintiffs' secondary liability claims, they

would still fail to state a claim under international law.

### 1. The Court Should Not Extend ATS Liability Over Secondary Liability Claims

The Supreme Court has never recognized the availability of secondary liability under the

ATS, and the Court's reasoning in *Sosa* and *Jesner* counsels against recognizing such liability.

*See supra* Section II.B; *Jesner*, 138 S. Ct. at 1403 ("[F]ederal courts must exercise 'great

caution' before recognizing new forms of liability under the ATS." (quoting *Sosa*, 542 U.S. at

728)).

*First*, at *Sosa* step one, it is unclear whether secondary liability is sufficiently recognized

under public international law to constitute "a norm that is 'specific, universal, and obligatory.'"

*Jesner*, 138 S. Ct. at 1399 (plurality opinion) (quoting *Sosa*, 542 U.S. at 732).  International

tribunals and courts have never come to a universal consensus on what standards should apply to

such claims.[22]  Under *Sosa*, where, as here, international law is unclear or unresolved on the

---

[21] It is unclear whether Plaintiffs' "conspiracy" claim in Count I even purports to allege a conspiracy in violation of the law of nations, as opposed to some kind of domestic common law conspiracy, but this discussion will assume that it does.  *See infra* Section V.C.

[22] For example, following *Sosa*, but before *Jesner*, the Ninth Circuit declined to decide between conflicting standards for secondary liability that are found in international law, but instead applied a "purpose" standard that all scholars and sources of law agree would incur liability.  *See Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 765 (9th Cir. 2011) ("[A]t least purposive action in furtherance of a war crime constitutes aiding and abetting that crime."), *vacated on other grounds*, 133 S.Ct. 1995 (2013); *also Doe v. Nestle USA, Inc.*, 766 F.3d 1013, 1024 (9th Cir. 2014) (same).  The Second Circuit also adopted a purpose standard because there was "a sufficient international consensus for imposing liability" on that basis, in contrast to a more lenient standard that had been applied in various international tribunals but for which "no such consensus exists."  *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 259 (2d Cir. 2009).

standards to be applied, courts should not create "new and debatable violations of the law of nations."  542 U.S. at 728.

*Second*, at *Sosa* step two, the same separation of powers concerns articulated by five justices in *Jesner* apply here as well.  *See* 138 S. Ct. at 1403; *see also Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 85-88 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) (rejecting the "incongruous" result that aiding-and-abetting liability could apply to ATS claims brought by aliens, because such claims are not even available to U.S. citizens proceeding under the Torture Victim Protection Act).[23]  Indeed, "Congress kn[ows] how to impose aiding and abetting liability when it cho[oses] to do so."  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176 (1994).  And it has not done so in the ATS.

The U.S. government also has consistently argued against creating aiding and abetting liability under the ATS.  *See, e.g.*, Br. of United States as Amicus Curiae in Supp. of Pet. for a Writ of Cert. at 13-17, *Nestle v. Doe* (2020), (Nos. 19-416 and 19-453) (consistent with fundamental separation-of-powers principles, whether aiders and abettors "should be subject to suit [is] 'a question for Congress, not [this Court], to decide.'" (quoting *Jesner*, 138 S. Ct. at 1403) (alterations in original))[24]; Brief of United States as Amicus Curiae in Support of Petitioners at 6-16, *Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008) (No. 07-979)

---

[23] The panel majority in *Exxon Mobil* disagreed with Judge Kavanaugh, but the decision subsequently was vacated.  *See* 527 Fed. App'x 7 (D.C. Cir. 2013).  The issue is therefore open in this Circuit.  Although Judge Lamberth held on remand prior to the Supreme Court's decision in *Jesner* that both aiding and abetting and corporate liability claims are cognizable under the ATS, *Exxon Mobil*, 2015 WL 5042118, at *5, *Jesner* now requires a different analysis and a different result – which Judge Lamberth recognized when he subsequently rejected domestic corporate liability post-*Jesner*, *Exxon Mobil*, 391 F. Supp. 3d at 76.

[24] On July 2, 2020, the Supreme Court granted the petition for certiorari in *Nestle v. Doe*, No. 19-416.

(stating that aiding-and-abetting liability under the ATS interferes with foreign policy and should not be recognized).

The Court should follow this reasoning and decline to recognize the availability of secondary liability under the ATS.  Absent definitive guidance from the Supreme Court or the D.C. Circuit after *Jesner*, this Court should not attempt to navigate the turbid crosscurrents of international law to find a civil claim whose contours, and very existence, are so uncertain.  If the Court were nevertheless to embark on that exercise, the Complaint does not allege facts that would support secondary liability under the standards followed by at least the majority of courts to address the issue.

## 2. Count III Fails to State a Claim for Aiding and Abetting under the ATS

In Count III, Plaintiffs purport to assert a claim for aiding and abetting the commission of war crimes as if it were a common law claim, and cite *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), for the elements of aiding and abetting.  AC ¶ 229.  But even if the Court were to recognize secondary liability under the ATS – which it should not for the reasons outlined in the prior section – the standard would necessarily be based on international principles and not *Halberstam*'s discussion of domestic common law.  *See Presbyterian Church*, 582 F.3d at 244 (construing claim for aiding and abetting war crimes under international law standards); *Aziz v. Alcolac, Inc.*, 658 F.3d 388 (4th Cir. 2011) (same); *Doe v. Nestle USA Inc.*, 766 F.3d 1013 (9th Cir. 2014) (construing claim for aiding and abetting slavery using international law standards); *Baloco v. Drummond Co., Inc.*, 767 F.3d 1229 (11th Cir. 2014) (construing claim for aiding and abetting murder using international law standards).  Plaintiffs have made no effort to properly allege aiding and abetting claims under international law.

For such allegations of aiding and abetting, the D.C. Circuit has referred to the standards enunciated by the International Criminal Tribunal for the Former Yugoslavia (ICTFY) Appeals Chamber in *Prosecutor v. Perišić*, Case No. IT-04-81-A Judgment (U.N. App. Ch. 2013).  *See Doe v. Exxon Mobil Corp.*, 527 Fed. App'x 7 (D.C. Cir. 2013) (remanding the case for further consideration "in light of intervening changes in governing law regarding . . . the standard to be applied for aiding and abetting liability," citing *Perišić*).

In *Perišić*, the ICTFY Appeals Chamber held that "the *mens rea* required to support a conviction for aiding and abetting is knowledge that assistance aids the commission of criminal acts, along with awareness of the essential elements of these crimes."  Case No. IT-04-81-A, ¶ 48.  With regard to the *actus reus*, the Appeals Chamber found that aiders and abettors must "carr[y] out acts specifically directed to assist, encourage or lend moral support to the perpetration of a certain specific crime (murder, extermination, rape, torture, wanton destruction of civilian property, etc.), and this support has a substantial effect upon the perpetration of the crime."  *Id*. at ¶ 26 (citing *Prosecutor v. Tadič*, Case No. IT-94-1-A, ¶ 229 (U.N. App. Ch. 1999)).

Importantly, the Appeals Chamber held that "in most cases, the provision of general assistance which could be used for both lawful and unlawful activities will not be sufficient" to satisfy the *actus reus* requirement.  *Id*. ¶ 44.  Instead, the prosecutor must show "evidence establishing a direct link between the aid provided by an accused individual and the relevant crimes committed by principal perpetrators."  *Id*.  The Complaint fails to satisfy these standards.

          a.      **Plaintiffs Fail to Allege That Defendants Satisfy the *Actus Reus* Requirements**

Plaintiffs here have failed to demonstrate – or even allege – that Defendants satisfy the *actus reus* requirement for aiding and abetting liability under international law, which requires

more than allegations that Defendants provided some kind of vague general assistance in the commission of war crimes.  *See Doe v. Cisco Systems Inc.*, 66 F. Supp. 3d 1239, 1248 (N.D. Cal. 2014).  Instead, Plaintiffs must show that Defendants specifically directed assistance toward the violation of international law, and that Defendants' actions had a "substantial effect upon the perpetration of the crime."  *Perišić*, Case No. IT-04-81-A, ¶ 26 (citing *Prosecutor v. Tadič*, Case No. IT-94-1-A, ¶ 229).  Further, "aiding and abetting liability may only be found where assistance is provided to a criminal's human rights abuses, not simply the criminal him or herself."  *Doe v. Exxon Mobil Corp.*, No. CV 01-1357(RCL), 2015 WL 5042118, at *9 (D.D.C. July 6, 2015) (citing *South African Apartheid Litigation v. Daimler AG*, 617 F. Supp. 2d 228, 257 (S.D.N.Y. 2009)).  "[M]erely providing financing as part of an ordinary commercial transaction does not satisfy the *actus reus* requirement" for aiding and abetting liability.  *Id.* (citing *In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d 1301, 1350 (S.D. Fla. 2011)).  For example, in *Ofisi v. BNP Paribas, S.A.*, 278 F. Supp. 3d 84, 109 (D.D.C. 2017), *order vacated as to other defendant*, 285 F. Supp. 3d 240 (D.D.C. 2018), the court concluded that allegations that an international bank provided banking services to a state sponsor of terrorism in violation of U.S. sanctions were "too tenuous to establish liability under the ATS" for terrorist attacks allegedly supported by that state absent non-conclusory allegations that the attacks "probably would not have occurred absent [the bank's] conduct."  *Id.*

Here, there are no allegations that Defendants were physically present for the alleged acts.  To satisfy the *actus reus* requirement, therefore, Plaintiffs would have to demonstrate, at a minimum, that Defendants engaged in acts "specifically directed to assist" specific crimes by the only remaining alleged primary violators of international law – the "armed settlers" – and that assistance had a substantial effect on those settlers' alleged commission of war crimes, genocide,

or crimes against humanity.  *See Perišić*, Case No. IT-04-81-T, at ¶ 26; *see also Presbyterian Church*, 582 F.3d at 259.  A showing that Defendants had provided general assistance that could be used for any purpose, such as money, vehicles, or even military hardware, would not suffice. *Cisco Systems. Inc.*, 66 F. Supp. 3d at 1248.  Instead, it must be the "sole reasonable interpretation" that Defendants provided the assistance specifically for the commission of international crimes rather than for any other purpose.  *Perišić*, Case No. IT-04-81-A, ¶ 47.

Plaintiffs have not made, and cannot make, any such allegations.  They allege, for example, that the Donor Defendants donated funds to 501(c)(3) organizations, including the Charitable Entity Defendants, and that the Bank Defendants transferred those funds to unspecified accounts in Israel.  But Plaintiffs do not allege that those funds were earmarked or used in the alleged international law violations, much less had a substantial effect on their perpetration.  Nor do they allege that the Construction/Support Defendants provided products or services specifically for the commission of violations of international law by armed settlers.[25] This claim, as a result, should be dismissed.

      b.      **Plaintiffs Fail to Allege that Defendants Acted with the Requisite** ***Mens Rea***

While the international law standard for *mens rea* for secondary liability claims, if they exist at all, is unclear (which is why the Court should not recognize such a claim at all under the ATS, *see supra* Section II.D), the prevailing view of the cases permitting such claims requires that the Defendants act with more than mere knowledge.  *Perišić* identified the *mens rea* required to support a conviction for aiding and abetting as being more than knowledge of crimes

---

[25] If such allegations were deemed sufficient, it would transform ATS aiding and abetting into "an omnipresent blanket of liability that could chill a wide range of economic and First Amendment activity."  *State of Israel*, 400 F. Supp. 2d at 118.

committed by others, but in addition, "knowledge that [the defendants'] assistance aids the commission of criminal acts, along with awareness of the essential elements of these crimes." Case No. IT-04-81-A, ¶ 48; *see Doe v. Exxon Mobil Corp.,* 527 Fed. App'x. 7 (D.C. Cir. 2013) (referencing *Prosecutor v. Perišić* as potentially providing the appropriate standard in an unpublished opinion).  Most courts, however, have required the defendant to act with the purpose of assisting in the international law violation.  The leading case is the Second Circuit's *Presbyterian Church*, which holds that:

> [T]he mens rea standard for aiding and abetting liability in ATS actions is purpose rather than knowledge alone.  Even if there is a sufficient international consensus for imposing liability on individuals who *purposefully* aid and abet a violation of international law, no such consensus exists for imposing liability on individuals who *knowingly* (but not purposefully) aid and abet a violation of international law.

582 F.3d at 259.  The Fourth Circuit agreed with this standard in *Aziz v. Alcolac, Inc*., 658 F.3d 388, 398 (4th Cir. 2011).  It held that:

> [A]dopting the specific intent [*i.e.*, purpose] *mens rea* standard for accessorial liability explicitly embodied in the Rome Statute hews as closely as possible to the *Sosa* limits of 'requir[ing] any claim based on the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to the features of the 18th-century paradigms [the Supreme Court has] recognized.'

658 F.3d at 400-01 (quoting *Sosa*, 542 U.S. at 725); *see also Sarei*, 671 F.3d at 765 (in the Ninth Circuit, "*at least* purposive action in furtherance of a war crime constitutes aiding and abetting that crime"); *but see Doe v. Drummond Co., Inc*., 782 F.3d 576, 609 (11th Cir. 2015) (adopting a knowledge standard based on the federal common law standard without reference to international law).

Whatever the *mens rea* standard is, Plaintiffs fail to meet it.  They merely allege that Defendants "had to know" of purported violations. *See, e.g.*, AC at 11-12, 51, 90, 99, 121, 122,

132, 134, 137, 146, 158, 161, 163, 165, 167, 178.  But these repeated "had to know" allegations are insufficient as a matter of law.  *See Ahmad v. Christian Friends of Israeli Communities*, 2014 WL 1796322, at *5 (dismissing ATS claim in part because the allegations were "insufficient to establish that Defendants possessed knowledge that the funds transferred to the Settlers would be used to aid terrorist activity"); *Ofisi*, 278 F. Supp. 3d at 109 ("Allegations that [bank] 'should have known' will not suffice in [the *mens rea*] context.").

Plaintiffs also make conclusory statements that, for example, "U.S. donors/entities knew and intended that increased financial assistance would promote wholesale violence directed at the local Palestinian population and therefore accelerate settlement expansion."  AC at 16.  This speculation is not backed by any factual allegations that would make this claim plausible.  As a result, the Court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

With respect to Bank Leumi USA, Plaintiffs rely on the "Know Your Customer" ("KYC") banking protocol to allege scienter.  *See*, *e.g.*, AC ¶ 55.  Even if courts accepted such theories as sufficient to allege knowledge of misconduct, *see, e.g.*, *Berman v. Morgan Keegan & Co., Inc.*, 455 Fed. App'x. 92, 95 (2d Cir. 2012) (finding KYC "obligations are, standing alone, far from sufficient to support a strong inference" of knowledge), the only information that Bank Leumi USA was required to examine under KYC protocols that could potentially lead to knowledge that its customers engaged in the purported international law violations is U.S. government terrorist watch lists.  Plaintiffs fail to even identify any specific customers, much less allege that any bank customers appeared on a U.S. government terrorist watch list.

Most importantly, KYC protocols do not require banks to investigate the recipients of funds transferred by their customers – here the settlers who Plaintiffs allege were actually

engaged in the purported war crimes – or investigate or "know" to what use the recipients puts the transferred funds, except to reasonably ensure that the recipients are not sanctioned or designated entities or if the transfer itself raises suspicions.  Plaintiffs' political opinions about certain alleged activities undertaken by settlers or the publications that they cite to support their views – even assuming that Plaintiffs could allege that Bank Leumi USA has actual knowledge of them – do not constitute the type of red flags that could establish scienter or that banks could be required to accept as reliable in the context of what is essentially a political debate about the legitimacy of Israel's settlement activities.  Thus, Plaintiffs' allegations cannot plausibly allege scienter on the part of Bank Leumi USA.

### 3.  Plaintiffs Fail to State a Claim for Conspiracy under the ATS

Count I of the Complaint purports to allege that certain Defendants participated in a "civil conspiracy to expel all non-Jews from the OPT" in violation of, among other things, "Customary International Law principles."  AC ¶ 119.  To the extent that this claim purports to allege a violation of international law, as opposed to a common law conspiracy claim, it must satisfy the ATS criteria.[26]  *Drummond Co.*, 782 F.3d at 598; *Mastafa,* 770 F.3d at 178 (2d. Cir. 2014) (evaluating conspiracy claim under ATS); *Presbyterian Church*, 582 F.3d at 260 (same); *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 323 (D. Mass. 2013) (same); *Giraldo v. Drummond Co.*, 2013 U.S. Dist. LEXIS 103981 (N.D. Ala. July 25, 2013) (same).  As explained below, it does not.

The Supreme Court has made clear that "the only 'conspiracy' crimes that have been recognized by international war crimes tribunals (whose jurisdiction often extends beyond war

---

[26] To the extent that this Count purports to assert claims pursuant to local laws, it similarly fails to state a claim.  *See infra* Section V.

crimes proper to crimes against humanity and crimes against the peace) are conspiracy to commit genocide and common plan to wage aggressive war." *Hamdan v. Rumsfeld*, 548 U.S. 557, 610 (2006).  The International Military Tribunal at Nuremberg "pointedly refused to recognize as a violation of the law of war conspiracy to commit war crimes" because "'[t]he Anglo-American concept of conspiracy was not part of European legal systems and arguably not an element of the internationally recognized laws of war.'"  *Id.* at 610, 702 (quoting T. Taylor, *Anatomy of the Nuremberg Trials: A Personal Memoir* 36 (1992)); *Al Bahlul v. United States*, 792 F.3d 1, 10 (D.C. Cir. 2015) (U.S. government conceded that conspiracy is not a violation of the international laws of war).

In Count I, Plaintiffs fail to specify what international laws they claim to have been violated in the conspiracy "to expel non-Jews from the OPT."  AC at 103.  They certainly have not made any allegations regarding a conspiracy to commit genocide or to wage aggressive war.[27]  Plaintiffs also fail to allege an agreement whose object was the expulsion of non-Jews from the OPT.  "Although 'a conspirator [need] not agree to commit or facilitate each and every part of the offense,' she must 'reach an agreement with the specific intent that' the conspiratorial goal be completed."  *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395 (7th Cir. 2018) (quoting *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016)).  Since Plaintiffs have made no allegations regarding a conspiracy that is cognizable under international law, this claim – if it is even intended to be brought under the ATS – must be dismissed.  *See South African Apartheid*

---

[27] Ethnic cleansing, while of course deplorable, is a different human rights violation than the crime of genocide.  *See Bosnia v. Serbia*, 2007 I.C.J. ¶ 190.

*Litig.,* 617 F. Supp. 2d 228, 263 (S.D.N.Y. 2009) (declining "to recognize conspiracy as a distinct tort to be applied pursuant to [ATS] jurisdiction").[28]

Nor have Plaintiffs alleged a joint criminal enterprise, which is "[t]he analog to a conspiracy as a completed offense in international law." *Presbyterian Church*, 582 F.3d at 260. Even if they had, however, courts have generally declined to recognize claims for joint criminal enterprise liability under the ATS. *See, e.g.*, *id.* (holding that, even if a joint criminal enterprise were cognizable under international law, plaintiffs had failed to state a claim); *Liu Bo Shan*, 421 Fed. App'x. at 94 n.6 (same); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100 (S.D. Fla. 2016) (dismissing joint criminal enterprise claim); *Du Daobin v. Cisco Sys.*, 2 F. Supp. 3d 717, 729 (D. Md. 2014) (same); *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 494 (S.D.N.Y. 2010) (same). Most importantly, Plaintiffs would not have satisfied the pleading standard for those courts that do permit such claims, which parallel the requirements for a conspiracy claim. *See Tadič*, Case No. IT-94-1-A, ¶¶ 227-28; *see also infra* Section V.C. Because Plaintiffs have not alleged a conspiracy that is cognizable under international law, Count I, to the extent it purports to arise under the ATS, should be dismissed.

### E.      Plaintiffs Fail to Establish That They Have Exhausted Their Remedies

Even if the Complaint pled an ATS claim, which it does not, it could not be asserted in a U.S. court before local remedies at the place of injury – Israel – had been exhausted. *Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 89 (D.D.C. 2014) ("Support for some form of exhaustion

---

[28] And to the extent any such concept exists under international law, Defendants' alleged conduct fails to meet the high standard for liability. *See Prosecutor v. Tadič*, Case No. IT-94-1-A, Appeal Judgment, ¶¶ 188, 206 (July 15, 1999) (culpability through "participation in the realisation of a common design or purpose," requires the "intention to participate" in that common purpose).

requirement for claims arising under the ATS has grown in recent years."); *see also Jesner*, 138 S. Ct. at 1430-31 (Sotomayor, J., dissenting) ("Courts also can dismiss ATS suits for a plaintiff's failure to exhaust the remedies available in her domestic forum . . . ."); *Kiobel*, 569 U.S. at 133 (Breyer, J., concurring) (arguing that "[f]urther limiting principles such as exhaustion" should apply to ATS claims).

"The rule that local remedies must be exhausted before international proceedings may be instituted is a well-established rule of customary international law." *Sarei v. Rio Tinto PLC*, 550 F.3d 822, 829 (9th Cir. 2008) (quoting *Interhandel* (Switz v. U.S.), Preliminary Objections, 1959 I.C.J. 6, 26–27 (Mar. 21)). This is particularly true "[w]here the 'nexus' to the United States is weak." *Id*. at 824. As explained *infra* at Section IV.D, Plaintiffs have failed to exhaust available remedies in Israeli courts. Accordingly, their ATS claims should be dismissed on this ground as well.

## III.   PLAINTIFFS LACK STANDING TO BRING THIS COMPLAINT

Plaintiffs also lack standing, which provides another basis for dismissal pursuant to Rule 12(b)(1). *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ("[T]he defect of standing is a defect in subject matter jurisdiction"). "[S]tanding is '[o]ne element' of the Constitution's case-or-controversy limitation on federal judicial authority, expressed in Article III of the Constitution." *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

To qualify as a party with standing to litigate, each Plaintiff bears the burden of showing (1) "injury in the form of 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent;'" (2) that the injury is "fairly traceable to the challenged action . . . and not . . . th[e] result [of] the independent action of some third party not before the court;" and (3) that it is "likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Arizona State Legislature*, 135 S. Ct. at 2663 (internal

quotation marks omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal

citations omitted).

Despite a Complaint that extends for 200 pages and includes a separate exhibit that

purports to be a database of Plaintiffs' "initial damages," *see* AC, Ex. C, Plaintiffs have failed

adequately to allege their standing to sue because none of the Plaintiffs satisfies all three

elements of the constitutionally mandated standing requirement.  The Complaint therefore must

be dismissed.

> **A.**      **Plaintiffs Fail to Allege an Injury in Fact**

A plaintiff bears the burden of establishing an "injury in fact" that is both "concrete *and*

particularized" and that involves an invasion of a legally protected interest.  *Spokeo, Inc. v.

Robins*, 136 S. Ct. 1540, 1545, 1548 (2016).  "For an injury to be 'particularized,' it 'must affect

the plaintiff in a personal and individual way.'"  *Id.* at 1548 (citation omitted).  The injury must

also be "concrete," *i.e.*, "'real,' and not 'abstract."  *Id.* at 1548.

The Complaint – which does not purport to be a class action or seek class certification –

names 80 Plaintiffs, but the body of the Complaint contains specific allegations regarding only a

handful.  Instead, the majority of the Complaint recites generalized harms purportedly suffered

by the Palestinian population over the course of decades.  *See, e.g.*, AC at 143-44, 180 & ¶¶ 233,

249-253.  Such "generalized grievances" are not sufficiently "concrete and particularized" to

constitute an injury in fact for any Plaintiff.  *Schlesinger v. Reservists Comm. to Stop the War*,

418 U.S. 208, 217, 227 (1974); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914

(D.C. Cir. 2015) ("A particularized injury is 'personal, individual, distinct, and differentiated –

*not generalized or undifferentiated*.'") (emphasis added).

When Plaintiffs amended their Complaint, they attempted to cure this pleading defect by including as Exhibit C a purported "initial damages database" that contains allegations regarding 11 Plaintiffs discussed in the Complaint and 66 other named Plaintiffs.  Exhibit C, however, similarly fails to allege non-conclusory facts that are sufficient to establish a concrete and particularized injury in fact for the vast majority of Plaintiffs.  There are three Plaintiffs for whom there are *no* allegations in either the Complaint itself or Exhibit C to the Complaint.[29] Moreover, all 77 Plaintiffs for whom there are some allegations of injury allege at least some involvement of the Israeli military in their injuries.  51 of those 77 Plaintiffs, in particular, allege direct attacks by the Israeli military, such as aerial bombardments by the Israeli Air Force or shootings by Israeli soldiers.[30]  Their claims, even if validly alleged, must be dismissed because they are based on actions of the Israeli military, and Plaintiffs have waived all such claims.  *See supra* Section I.

The remaining 26 Plaintiffs who are not alleged to have been injured solely by the Israeli military largely plead only formulaic injuries.  Additionally, many of the allegations claim the loss of "family" land, even though a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties.'"  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).[31]  And the Plaintiffs who allege injuries to their own property may not recover for such injuries under either the ATS or the TVPA.  *See supra* Section II.C, *infra* Section IV.C.

---

[29] *See* Ex. A, Demonstrative Chart at 1.  Conversely, a number of individuals listed in Exhibit C are not listed as Plaintiffs at all in the Caption of the Complaint.  Ex. C at 7 (Abu Rahma), 21-22 (Musa), 27 (Abu-Rahmeh), 32-33 (Shaalan), 33 (M. Hamdan), 33 (Atwan).  Since they are not Plaintiffs to the suit, their claims, if any, are not before the Court.

[30] *See* Ex. A, Demonstrative Chart at 2-9.

[31] *See* Ex. A, Demonstrative Chart at 9.

The organizational Plaintiffs – the various "Village Councils" and the Association for Farmer's Rights and Palestine's Environment – also fail to establish any injury in fact since they allege no non-conclusory, concrete, and individualized injuries to themselves or their members.[32] AC, Ex. C at 16-17, 47.  To the extent that the organizations assert standing on their own behalf, the Complaint contains no allegations establishing a "concrete and demonstrable injury to the organization's activities."  *National Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (quotation omitted).  Alternatively, if the organizations purport to rest standing on behalf of their members, the Complaint's allegations are insufficient because they fail to establish the identity and standing of those members.  *Fund Democracy, LLC v. S.E.C.*, 278 F.3d 21, 25 (D.C. Cir. 2002) (rejecting standing of organization plaintiff because it "ha[d] not shown that any of [the individuals] it claims as 'members' have standing to sue in their own right").

**B.      Plaintiffs Fail to Allege Injuries Fairly Traceable to Defendants' Alleged Actions**

Article III standing requires, at a "minimum" that Plaintiffs "establish that, in fact, the asserted injury was the consequence of the defendants' actions."  *Simon*, 426 U.S. at 44, 45. Thus, plaintiffs resting claims on indirect causal chains must allege facts from which it "*reasonably could be inferred* that, absent the" complained-of conduct, "there is a *substantial probability*" that plaintiffs would not have suffered the alleged harm.  *Warth*, 422 U.S. at 504 (emphasis added).  Plaintiffs' reliance on the independent conduct and choices of non-parties only heightens the speculative nature of their allegations.  *Simon*, 426 U.S. at 45 & n. 25 (affirming dismissal of complaint for lack of standing because plaintiffs' theory of causation "depends upon unalleged and unknown facts about [third parties]").  Plaintiffs seek to satisfy this

---

[32] *See* Ex. A, Demonstrative Chart at 10, 12.

element through diagrams in the Complaint, *e.g.* AC at 18, and Exhibit C, which Plaintiffs claim

"traces the causal chain for each of the Plaintiffs' damages complained of herein," AC at 17

n.16.  But neither contains well-pleaded factual allegations sufficient to establish any Plaintiff's

standing, let alone all Plaintiffs' standing.

At the outset, neither of these sources identifies a causal chain for any specific alleged

injury of a Plaintiff with any particularity.  Consider Abbas Hamideh.  AC, Ex. C at 2-3.  One

entry in Exhibit C claims that Plaintiff Hamideh was injured after the One Israel Fund (which is

not a Defendant to this action) transferred money to either Bank Leumi, Bank Hapoalim, or the

JNF-USA, to any of five settlements or the IDF or the JNF-USA, and then on to settlers from

those settlements, and/or "IDF/G4S personnel/BL/BH/HP/Motorola/RE/MAX/Volvo," all of

whom are listed as "Israeli based Eventuating Perpetrators," that are alleged to have confiscated

or taken some other action with respect to the Plaintiff's family land.  *Id.*  Needless to say, the

Complaint makes it impossible to trace Plaintiff Hamideh's injuries to any particular Defendant.

There is another equally convoluted entry for the same Plaintiff on the same page in Exhibit C.

The other entries in Exhibit C and in the Complaint are equally opaque.  *See generally* AC, Ex.

C; AC at 18.  Plaintiffs do not allege that any particular donor or company provided goods to

particular settlers who were involved in specific wrongdoing.  Because the Court can only

"speculate about the actual path of the funds, the various intermediate steps, the ultimate

recipients, and their relationship to . . . Plaintiffs' property," or physical injury, the Complaint

should be dismissed on this ground alone.  *Siegel v. U.S. Dep't. of Treasury*, 304 F. Supp. 3d 45,

53 (D.D.C. 2018) (property expropriation claims by Palestinians against U.S. government based

on its provision of funding to Israel failed to satisfy causation element of standing).

46

Furthermore, even if the causal chains provided sufficient information to satisfy the requirement that the harms are "fairly traceable" as a general matter, they cannot be traceable "to the challenged action" when they are "th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)).  The allegations by Plaintiffs are *expressly* based on the independent action of third parties:  either settlers who are not before this Court, or the Israeli military, whose conduct cannot be a basis of liability because of Plaintiffs' waiver on appeal. *Siegel*, 304 F. Supp. 3d at 55 (claims by Palestinians of property expropriation by settlers against U.S. government based on its provision of funding to Israel failed because "independent decisions" that would be made by settlers and Israeli military are "'sufficiently uncertain to break the chain of causation'"); *Abulhawa v. Dep't of Treasury*, No. 17-5158, 2018 WL 3446699, at *4 (D.C. Cir. June 19, 2018) (affirming dismissal because plaintiffs' theory of causation "depends on a long chain of improbable assumptions").  The IDF or the IAF is listed as the "Receiving/Distributing Entity" in all but 15 of the entries on Exhibit C.  *See* AC, Ex. C at 1, 3-12, 14-49.  And *all* of the injuries relate to alleged acts of violence or theft *not* by Defendants, but by the Israeli military and Israeli settlers.  *See generally id*.

Moreover, with the dismissal of the foreign corporations, much of the alleged wrongdoing and related injuries is not even alleged, even unsuccessfully, to have been committed by the Defendants before this Court now.  To the extent Plaintiffs do not claim the Israeli military perpetrated their injuries, they largely allege that their injuries were inflicted by G4S personnel – even though the foreign G4S entities have been dismissed from this litigation and there are no non-conclusory allegations tying any of the moving Defendants to G4S activity. *See generally* Ex. A, Demonstrative Chart.

47

Since Plaintiffs fail to plausibly allege a conspiracy, *see infra* Section V.C, when relying

on third party conduct, "it becomes the burden of the plaintiff to adduce facts showing that those

choices have been or will be made in such manner as to produce causation." *Lujan*, 504 U.S. at

562. To satisfy their burden as to standing, therefore, Plaintiffs must demonstrate that the

Defendants' financial or commercial support *caused* those third-party actors to act. Plaintiffs

have not even attempted to make this showing. For the most part, the Complaint relies on

speculative or conclusory statements that Defendants "must have known" what would happen.

*See, e.g.*, AC ¶ 183 ("[T]hese donors had to know what that funding would result in, i.e., ethnic

cleansing of all Palestinian neighbors living near the settlements as a result of wholesale violence

being directed at them. . ."); *see also id.* at 11-12 & ¶¶ 40, 97, 113, 146, 148, 162, 202, 205, 208,

212, 225. And in those limited circumstances where a direct causal link is alleged, the allegation

itself is patently speculative and dependent entirely on independent decisions by third parties.

For example, Plaintiffs allege: "The settlements were able to purchase sophisticated and

expensive military hardware, forcibly expel their Palestinian neighbors, build new housing

accommodations, hire full-time security coordinators, and purchase expensive HP/Motorola

surveillance devices *only because of the massive financial aid they received from the U.S. tax-

exempt entities*." AC ¶ 129 (emphasis added); *see also id.* ¶ 149 (alleging settlement growth

"was made possible because of the massive funding provided by the U.S. based 501(c)(3)s and

their donors"); ¶ 176 (alleging the purported settlement growth conspiracy was successful

"primarily because of the tremendous financial assistance given by the U.S. tax-exempt entities

and their donors").

These statements make clear that the Plaintiffs' theory of causation rests on generalized

speculation that the Defendants' alleged provision of support was received by or benefitted

whichever non-Defendant actors committed the claimed wrongs, that those individual actors actually used the Defendants' purported support or resources to harm the plaintiffs, and that the individual actors would not have committed their wrongful acts without the Defendants' provision of support or resources.  Where, as here, "speculative inferences are necessary to connect [a plaintiff's] injury to the challenged actions of [defendants]," *Simon*, 422 U.S. at 45, Plaintiffs simply cannot meet their pleading burden.  This flaw is fatal to Plaintiffs' standing in this case.  As a result, this Court lacks subject matter jurisdiction over the Plaintiffs' claims, and the Complaint must be dismissed.

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE TORTURE VICTIM PROTECTION ACT

Seemingly in passing, Plaintiffs who are U.S. citizens attempt to invoke the TVPA against all Defendants in Count II.  AC ¶ 3.  The TVPA allows an action for damages against "an individual who, under actual or apparent authority, or color of law, of any foreign nation" subjects an individual to torture or extrajudicial killing.  28 U.S.C.§ 1350 note, § 2(a).  It also provides that "[a] court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred."  28 U.S.C. § 1350 note, § 2(b).  Plaintiffs have not alleged facts sufficient to satisfy any of the TVPA's requirements.

### A.   Organizational Defendants are not Subject to a TVPA Claim

As a preliminary matter, this issue affects only the individual defendants.  The Supreme Court has held that only natural persons can be liable under the TVPA.  *Mohamad v. Palestinian Authority*, 566 U.S. 449 (2012).  Accordingly, the TVPA claim must be dismissed as to all corporate or other organizational defendants.

### B.    Plaintiffs Fail to Allege State Action

"[T]he plain language of the TVPA limits liability to those acting under color of law of a foreign nation." *Harbury v. Hayden*, 444 F. Supp. 2d 19, 41 (D.D.C. 2006), *aff'd on other grounds*, 522 F.3d 413 (D.C. Cir. 2008).  This, in turn, requires a showing that the defendant "acts together with state officials or with significant state aid." *Khulumani v. Barclay Nat. Bank Ltd.*, 504 F.3d 254, 260 (2d Cir. 2007), *aff'd sub nom. Am. Isuzu Motors, Inc. v. Ntsebeza*, 553 U.S. 1028 (2008); *see also Arar v. Ashcroft*, 585 F.3d 559, 568 (2d Cir. 2009) (allegations that U.S. officials conspired with Syrian officials to have defendant tortured failed to state TVPA claim where "[a]t most, it [wa]s alleged that the defendants encouraged or solicited certain conduct by foreign officials," not that they acted under color of Syrian law).  There are no allegations in the Complaint that any of the Defendants acted under the color of law.  Nor could there be, since any argument that Defendants acted in concert with the Israeli government such that their actions could fairly be considered under "color of law" is foreclosed by Plaintiffs' waiver of claims premised on Israeli military activity.  *See Al-Tamimi*, 916 F.3d at 13 n.5.

### C.    The Complaint Fails to State a Claim for Torture or Extrajudicial Killing

The Complaint also lacks allegations sufficient to state a claim for torture or extrajudicial killing against the individual defendants.  The TVPA is mentioned only in one paragraph of the Complaint, AC ¶ 3, which does not even identify the Plaintiffs making the claim, much less the basis upon which they do so.  Three Plaintiffs who claim to be U.S. citizens, Saad Malley, Linda Kateeb, AC ¶ 29, and Susan Abulhawa, AC, Ex. C at 47, complain only of property loss or damage, as do the two other Plaintiffs identified in the Caption as residing in the United States: Abdur-Rahim Dudar and Ali Ali.  AC, Ex. C at 3, 5, 31, 43, 46.  Property loss or damage cannot be the subject of a TVPA claim.

"Extrajudicial killing" is a deliberate killing not judicially authorized, but does not include a killing "that, under international law, is lawfully carried out under the authority of a foreign nation."  28 U.S.C. § 1350 note, § 3(a).  In the case of an extrajudicial killing, the lawsuit may be brought by the decedent's "legal representative" or a person "who may be a claimant in an action for wrongful death."  *Id.* § 2(a)(2).  "Torture" means an act against a person "in the offender's custody or physical control" causing severe pain or suffering, when the act is taken for certain specified purposes.  *Id.* § 3(b)(1).  To constitute torture, a foreign state "must impose suffering cruelly and deliberately, rather than as the unforeseen or unavoidable incident of some legitimate end."  *Price v. Socialist People's Libyan Arab Jamahiraya*, 294 F. 3d 82, 93 (D.C. Cir. 2002) (finding allegations of torture insufficient to survive a motion to dismiss).

Wherever the word "torture" appears in the Complaint, it is solely in a conclusory fashion.  Paragraph 29, for example, alleges that unidentified Plaintiffs have "relatives" who "are still incarcerated as political prisoners and have been tortured like Plaintiff Al-Tamimi."  AC ¶ 29; *see also* AC ¶ 212 (alleging "torture of political prisoners" with no details or identification of a particular relevant Plaintiff).  Further, allegations of torture of "political prisoners" necessarily implies action by Israeli state actors (for which Plaintiffs have waived their claims) rather than actions by Israeli settlers.  And Plaintiff Al-Tamimi, who does not appear to be a U.S. citizen based on the Complaint and public information, does not claim to have been tortured by any of the individual Defendants.  AC, Ex. C at 10 (alleging torture "by G4S personnel").  Another Plaintiff, Waddah Khalid Sofan, who purports to be American, alleges bodily injury sustained during a protest in 1989, not torture or an extrajudicial killing.  *Id.* at 48.

Put simply, no Plaintiff alleges the elements of a TVPA claim.  To the extent the Complaint purports to assert such a claim, it should be dismissed.

### D.     Plaintiffs Failed to Exhaust Adequate and Available Remedies in Israel

Finally, any TVPA claim fails because Plaintiffs have failed to exhaust the remedies available to them in Israeli courts as required by the statute.  Plaintiffs make the conclusory allegation that the remedies they seek "are not available in the OPT or Israel," but not a single Plaintiff alleges that he or she has attempted to pursue legal remedies under the law of Israel or any facts showing that remedies are not available.  AC ¶ 3(a).  As in *Harbury*, Plaintiffs "ha[ve] neither alleged nor established that [they have] ever pursued and/or exhausted [their] remedies . . . in the place in which the conduct giving rise to the claim occurred."  444 F. Supp. 2d at 41 (dismissing claim that failed to allege exhaustion of remedies).

There is also no question that remedies are available to Americans or Palestinians for personal injuries and property damage in the courts of Israel.  The court so held in *Corrie v. Caterpillar, Inc.*, 403 F. Supp. 2d 1019 (W.D. Wash. 2005), a lawsuit by the family of a U.S. citizen killed by an Israeli army bulldozer in the Gaza Strip.  There, the court held that "Israeli tort law provides adequate remedies for plaintiffs injured as a result of tortious conduct."  *Id.* at 1025-26.

## V.   PLAINTIFFS' LOCAL LAW CLAIMS SHOULD BE DISMISSED

The Court also should dismiss Count I and IV of the Complaint, which purport to plead conspiracy and aggravated trespass claims under District of Columbia law.

### A.     The Court Should Not Exercise Supplemental Jurisdiction Over the Purported State Law Claims

If the Court dismisses Plaintiffs' ATS claims, the Court also should dismiss Plaintiffs' claims under District of Columbia law.  The ATS is the only basis for federal jurisdiction that is available to the non-U.S. citizen Plaintiffs.  Plaintiffs' citation of a host of criminal statutes is irrelevant here.  "As a general rule, criminal statutes do not create a private right of action,

meaning they cannot be relied on by a civil plaintiff to state a claim for relief." *Saunders v. Davis*, No. 15-cv-2026(RC), 2016 WL 4921418, at *13 (D.D.C. Sept. 15, 2016) (citing *Keyter v. Bush*, No. 04-5324, 2005 WL 375623, at *1 (D.C. Cir. Feb. 16, 2005). Here, none of the federal criminal laws cited as grounds for exerting jurisdiction over Defendants – 18 U.S.C. § 1956(b)(2), 18 U.S.C. § 371, and 18 U.S.C. § 981 – provide for private rights of action.[33] AC ¶¶ 5-9. Thus, they cannot support federal question jurisdiction in this case.

Although the Complaint purports to invoke diversity jurisdiction, *id.* ¶ 4, both Plaintiffs and Defendants include citizens of the same state, which defeats complete diversity as required by 28 U.S.C. § 1332.[34] Moreover, both Plaintiffs and original Defendants include aliens, and "there is no alien-alien diversity jurisdiction." *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 169 n.4 (D.D.C. 2006) (Bates, J.).[35] Accordingly, the Court should decline to exercise supplemental jurisdiction over Counts I and IV. *See* 28 U.S.C. § 1367(c)(3); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1263 (D.C. Cir. 1995) ("After the district court dismissed the federal claims . . . it abused its discretion by reaching the merits of the local-law claims."); *Perry v. Int'l Brotherhood of Teamsters*, 118 F. Supp. 3d 1, 7 (D.D.C.

---

[33] *See, e.g.*, *El v. Wells Fargo Bank*, Case 2:19-cv-02538-JTF-cgc, 2020 WL 1941322, at *3 (W.D. Tenn. Mar. 12, 2020) (collecting cases), *report and recommendation adopted*, 2020 WL 1686252 (W.D. Tenn. Apr. 7, 2020) (no private right of action under 18 U.S.C. § 1956(a)(2) or Internal Revenue Code); 26 U.S.C. § 7401 ("No civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced unless the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced.").

[34] For example, Ali Ali is alleged to reside in California, AC at 7, as are Defendants Ellison, Moskowitz, and Saban, *id.* ¶¶ 35, 39, 40.

[35] The subsequent dismissal of the foreign corporate defendants does not cure the lack of diversity jurisdiction, as "[i]t has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (internal quotation marks and citation omitted).

2015) (Chutkan, J.) (declining to exercise jurisdiction over local D.C. claims after dismissing all federal claims).

B.     **The Court Lacks Jurisdiction over Plaintiffs' Trespass Claims Under the Local Action Doctrine**

Count IV of the Complaint is a claim for "trespass" on real property located in the West Bank and Gaza, not in this judicial district (or even this country).  AC ¶¶ 234-55.  Because "courts are simply not well equipped to decide property interests or rights to possession with regard to land outside their jurisdiction, particularly land located in a foreign nation," *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1521 (D.C. Cir. 1984), the longstanding "local action rule" bars jurisdiction over trespass claims concerning land located elsewhere.  *Id.* at 1521-522 (an "action for trespass is a local action"); *Cardenas v. Smith*, 733 F.2d 909, 912 (D.C. Cir. 1984) ("'[L]ocal actions' must be brought in the district where the res that is the subject matter of the action is located."); *see also Eldee-K Rental Props., LLC v. DIRECTV, Inc.*, 748 F.3d 943, 952 (9th Cir. 2014) (dismissing a claim seeking "to remedy a trespass to land" in another jurisdiction); *Pasos v. Pan Am. Airways*, 229 F.2d 271, 271-72 (2d Cir. 1956) (federal court lacked jurisdiction over claims based on "alleged trespass upon, and unlawful use and occupation of, land in Nicaragua").  Applying this jurisdictional rule, this Court should dismiss Plaintiffs' trespass claim in Count IV concerning foreign land in the West Bank and Gaza.

Even if the Court did have jurisdiction, the Complaint does not allege that any Plaintiff owns any particular, explicitly specified land or how any Defendant trespassed upon it.[36]  Rather, the Complaint contains only generalized allegations that certain Defendants built offices on land

---

[36] The only allegation with respect to Motorola, for example, is that it leased office space owned by "Veolia."

that Plaintiffs contend belonged to Palestinian individuals.  To allege a plausible trespass claim, the Plaintiffs must allege the location of the trespass, ownership of the land, and at least some instance of trespass.  They have not done so.

### C.     Plaintiffs Do Not Plausibly Allege a Civil Conspiracy

Count I purports to allege a claim for civil conspiracy.  AC ¶ 124.  Under D.C. law, a complainant must establish three elements to make a *prima facie* showing of civil conspiracy: "(1) an agreement between two or more persons[,] (2) to participate in an unlawful act, and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement pursuant to, and in furtherance of, the common scheme."  *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 446 (D.C. 2013) (quoting *Paul v. Howard Univ.*, 745 A.2d 297, 310 (D.C. 2000)). Because Plaintiffs fail to make this showing, Count I must be dismissed.

*First*, Plaintiffs fail to allege any underlying tort cognizable under D.C. law.  A claim for "[civil] conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort."  *Frederick v. Hillyer*, 82 F. Supp. 3d 435, 441 (D.D.C. 2015) (Chutkan, J.) (quoting *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983)); *see also Saucier*, 64 A.3d at 446.  Nowhere in the Complaint do Plaintiffs even invoke or identify D.C. law.[37]  *See* AC ¶¶ 102-16 (listing various federal criminal statutes), 119 (alleging that the

---

[37] To the extent that Plaintiffs ground Count I in violations of customary international law, it must be brought under the ATS.  That claim fails, however, as explained in Section II.C, *supra*. Plaintiffs may not base Count I on violations of federal criminal laws, none of which provide private rights of action.  *See* Section V.A, *supra*; *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 790 (3d Cir. 1999) ("A claim of civil conspiracy cannot rest solely upon the violation of a federal statute for which there is no corresponding private right of action."); *Hillyer*, 82 F. Supp. 3d at 441 (dismissing civil conspiracy claim where underlying statute did not provide a private right of action).

purported conspirators violated U.S., Israeli, and the customary international law principles outlined in AC, Ex. A to accomplish the goals of the alleged conspiracy).

*Second*, even if Plaintiffs had adequately alleged a cognizable unlawful act, the Complaint does not contain sufficient allegations to show the existence of an agreement among any Defendants to participate in the unlawful act.  "A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss." *Brady v. Livingood*, 360 F.Supp.2d 94, 104 (D.D.C. 2004); *see also Acosta Orellana v. CropLife Intern.*, 711 F. Supp. 2d 81, 114 (D.D.C. 2010) ("[T]he case law is clear that merely asserting the existence of an agreement without providing any facts 'suggesting that the defendants were *acting in concert* in furtherance of a shared goal' renders a complaint deficient." (emphasis added)).  While a conspiracy may be inferred in the absence of an express agreement, more is required "than mere 'parallel conduct that could just as well be independent action.'"  *Id.*

The Complaint does not come close to satisfying Plaintiffs' burden.  Plaintiffs allege that the conspiracy comprised certain "donors, tax-exempt entities, Abrams, settlement leaders, BL/BH, and construction/support firm officials," AC ¶ 124, and that the objective of the conspiracy was to transfer funds to settlements to facilitate their growth by developing infrastructure and homes, *id.* ¶¶ 127-28.  But the Complaint completely lacks any well-pleaded factual allegations establishing any actual agreement to commit the alleged unlawful acts.  The Complaint instead contains a handful of conclusory statements that Defendants and non-parties "conspired."  *See id.* ¶ 127 (Defendants "have all conspired to encourage, raise, solicit, contribute, or transfer significant sums overseas to promote settlement expansion."), ¶ 158 ("Abrams, the tax-exempt entities, donors, and BL/BH U.S.-based officials have all conspired to 'effect any object of the conspiracy,' i.e., arms trafficking and the expulsion of all non-Jews from

56

the OPT."), ¶ 161 (alleging "construction firms. . . have conspired to violate both U.S. and Israeli money-laundering statutes").

The Complaint contains vague allegations that Defendants and settlement officials participated on "similar boards and committees," held fundraising events, and conducted telephone calls and meetings. *See, e.g.*, *id.* ¶¶ 125, 132, 137, 140. But such allegations "fail to provide any indication of when or how such [a criminal] agreement was brokered, or how the . . . Defendants . . . were parties to an agreement." *Acosta Orellana*, 711 F. Supp. 2d at 113. Allegations that the Bank or other Defendants met with Construction/Support Defendants – none of whom are even charged in Count I, *see* AC at 103, ¶ 235 – engaged in routine business transactions, or discussed construction projects in the West Bank and Gaza, *see, e.g.*, *id.* ¶¶ 135-36, fare no better in demonstrating the existence of any agreement. These allegations merely reflect these Defendants engaging in routine business, not unlawful activity. When pleading a conspiracy claim, "allegations that a defendant acted in ways consistent with a conspiratorial agreement, but also equally well explained by legitimate economic incentives, do 'not suffice . . . to show illegality.'" *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051-052 (D.C. Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556-67 (2007)).

Because Plaintiffs have failed to demonstrate any underlying tort cognizable under D.C. law, or any agreement between or among Defendants, to the extent Count I raises a civil conspiracy claim, it must be dismissed.

## VI.   NUMEROUS PLAINTIFFS' CLAIMS ARE TIME-BARRED

Statutes of limitations also prevent suit by a number of Plaintiffs. Seven Plaintiffs seek damages for injuries suffered or property allegedly lost well outside of any possible limitations period for any Count, some as long ago as 1948. *See* Ex. A, Demonstrative Chart; AC, Ex. C at

2, 4-5, 11-12, 16, 22, 46-49; *see Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 799 (2d Cir. 2014) (noting that four Circuits have applied the TVPA's ten-year limitations period to ATS claims); *Lu v. Lezell*, 45 F. Supp. 3d 86, 93 (D.D.C. 2014) ("In the District of Columbia, the statute of limitations for . . . civil conspiracy is three years, and pursuant to the District's 'discovery rule,' it begins to run  . . . as soon as the plaintiff knows or should have known of an injury, its cause, and some evidence of wrongdoing.").  For thirty-four others, no time period is alleged for their purported injuries, making it impossible to ascertain if their claims – even if properly pleaded – would be subject to the time bar.  AC, Ex. C at 1-6, 8-9, 12, 13, 16-17, 19-20, 24-28, 30-31, 34-37, 39-49.  Any claim that seeks damages for alleged injuries occurring outside the limitations period should be dismissed (even if it were otherwise actionable, which none of Plaintiffs' claims are).

Plaintiffs "aggravated trespass" claims also violate any possibly applicable statute of limitations.  Although Plaintiffs do not allege when any alleged trespass occurred, they contend that it has been ongoing for more than thirty years.  AC ¶¶  236, 237.  If any trespass claim were viable in DC, it would be subject to D.C.'s statute of limitations, which is three years.  *See* D.C. Code § 12-301(3).  As the Complaint alleges ongoing trespasses in excess of thirty years, the trespass claim cannot possibly meet the statute of limitations and must be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Complaint, as against moving Defendants, in its entirety with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated:  Washington, D.C.
July 3, 2020

Respectfully submitted,


CLEARY GOTTLIEB STEEN & HAMILTON
LLP

By:  */s/ Alexis L. Collins*

Alexis L. Collins (D.C. Bar No. 474599)
2112 Pennsylvania Avenue, NW
Suite 1000
T: 202-974-1500
F: 202-974-1999
alcollins@cgsh.com

Jonathan I. Blackman (admitted *pro hac vice*)
One Liberty Plaza
New York, NY 20006
T: 212-225-2000
jblackman@cgsh.com

*Counsel for Defendant Bank Leumi USA*


COVINGTON & BURLING LLP

By:  */s/ John E. Hall*
*/Signature with Permission*

John E. Hall (D.C. Bar No. 415364)
David M. Zionts (D.C. Bar No. 995170)
Carlton E. Forbes (D.C. Bar No. 1656612)
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jhall@cov.com
dzionts@cov.com

*Counsel for Defendant Hewlett Packard*
*Enterprise Co.*


BAKER BOTTS L.L.P.

By:  */s/William H. Jeffress, Jr.*
*/Signature with Permission*

William H. Jeffress, Jr. (D.C. Bar No. 041152)
Adam Michael Dec (D.C. Bar No. 888187500)
Julie B. Rubenstein
700 K St. NW
Washington, DC 20001
Tel: (202) 639-7844
Fax: (202) 585-1004
william.jeffress@bakerbotts.com
adam.dec@bakerbotts.com
julie.rubenstein@bakerbotts.com

*Counsel for Defendants Lawrence Ellison and*
*Haim Saban*


IFRAH PLLC

By:  */s/ George R. Calhoun*
*/Signature with Permission*

George R. Calhoun (D.C. Bar No. 60641)
1717 Pennsylvania Ave., NW
Suite 650
Washington D.C., 20006
T: (202) 524-4140
F: (202) 524-4141
george@ifrahlaw.com

*Counsel for Defendant Motorola Solutions,*
*Inc.*

59

MELAND RUSSIN & BUDWICK, P.A.

By: */s/ Gabriel Groisman*
*/Signature with Permission*


Gabriel Groisman, Esquire (admitted *pro hac vice*)
(Florida Bar No. 25644)
200 South Biscayne Blvd., Suite 3200
Miami, Florida 33131
Phone: (305) 358-6363
Fax: (305) 358-1221
E-mail: ggroisman@melandrussin.com


COFFEY BURLINGTON, PL

Andrew H. Marks (D.C. Bar No. 932269)
amarks@coffeyburlington.com
yvb@coffeyburlington.com
service@coffeyburlington.com
2601 South Bayshore Drive, Penthouse One
Miami, Florida  33133
Telephone: (305) 858-2900
Facsimile:  (305) 858-5261

*Counsel for Defendant The Falic Family*
*Foundation, Inc.*

FOLEY & LARDNER LLP

By: */s/ Barry G. Felder*
*/Signature with Permission*


Barry G. Felder (D.C. Bar No. 307736)
90 Park Avenue
New York, New York 10016
T: 212-338-3540
F: 212-687-2329
bgfelder@foley.com

Michael J. Tuteur (Bar No. D00202)
111 Huntington Avenue, Suite 2500
Boston, Massachusetts 02199
T: 617-342-4016
F: 617-341-4001
mtuteur@foley.com

*Counsel for Defendant Sheldon G. Adelson*

60

SHEPPARD MULLIN RICHTER &
HAMPTON LLP

By:  */s/ Christopher M. Loveland*
*/Signature with Permission*

Christopher M. Loveland
(D.C. Bar No. 473969)
2099 Pennsylvania Ave., N.W.
Suite 100
Washington, D.C. 20006-6801
Telephone: (202) 747-1924
Facsimile: (202) 747-3832
cloveland@sheppardmullin.com

*Counsel for Defendant Dr. Irving Moskowitz*

PROSKAUER ROSE LLP

By:  */s/ Mark D. Harris*
*Signature with Permission*

Mark D. Harris (D.C. Bar No. 445900)
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3530
Facsimile: (212) 969-2900
Email: mharris@proskauer.com

Jennifer E. Tarr (D.D.C. Bar No. IL0028)
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004-2533
Telephone: (202) 416-6846
Facsimile: (202) 416-6899
Email:  jtarr@proskauer.com

*Counsel for Defendant Friends of the
Israel Defense Forces*

ZELL, ARON & CO.

By: */s/ Lawrence Marc Zell*
*/Signature with Permission*

Lawrence Marc Zell
(D.C. Bar No. 959437)
34 Ben Yehuda Street
15th Floor
City Tower Building
Jerusalem 9423001 Israel
Direct Phone: 011-972-2-633-6301
Main Telephone: 011-972-2-633-6300
Cell Phone: 011-972-52-869-9000
Email: mzell@fandz.com

*Counsel for Defendants American Friends of Ariel, Inc., Gush Etzion Foundation, The Hebron Fund, Christian Friends of Israeli Communities, Honenu National Legal Defense Organization*

LARS LIEBELER PC

By: */s/ Lars H. Liebeler*
*/Signature with Permission*

Lars H. Liebeler (D.C. Bar No. 416666)
900 7th Street, N.W., Suite 725
Washington, D.C. 20001
Direct Telephone: (202) 774-1510
Email: LLiebeler@LHL-LawFirm.com

*Counsel for Defendant John Hagee*

O'HAGAN MEYER

By: */s/ Michael E. Barnsback*
*/Signature with Permission*

Michael E. Barnsback (USDC Bar No. VA015)
411 E. Franklin Street, Suite 500
Richmond, VA 23219
PH 804-403-7100
FX 804-403-7110
mbarnsback@ohaganmeyer.com

KELLY LAW PARTNERS, LLC

By: */s/ William J. Kelly III*
*/Signature with Permission*

William J. Kelly III (admitted *pro hac vice*)
501 South Cherry Street, Suite 1100
Denver, CO 80246
Telephone:  (720) 236-1801
Facsimile:   (720) 236-1799
Email: wkelly@kellylawpartners.com

*Counsel for Defendant RE/MAX, LLC*

RIFKIN WEINER LIVINGSTON LLC

By: */s/ Charles S. Fax*
*/Signature with Permission*

Charles S. Fax (D.C. Bar No. 198002)
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Facsimile: (301) 951-0172
Email: cfax@rwlls.com

*Counsel for Defendant Jewish National Fund*

DAVID ABRAMS, ATTORNEY AT LAW

By: */s/ David Abrams*
*/Signature with Permission*

David Abrams (Bar No. NY0201)
305 Broadway, Suite 601
New York, NY 10007
212-897-5821
dnabrams@gmail.com

*Counsel for Defendant Efrat Foundation USA*


JONES DAY

By: */s/ Eric Snyder*
*/Signature with Permission*

Eric Snyder (D.C. Bar No. 1001610)
250 Vesey Street
New York, NY 10281
Telephone: (212) 326-3435
esnyder@jonesday.com

*Counsel for Defendant Norman Braman*


DAVID I. SCHOEN

By: */s/ David I. Schoen*
*/Signature with Permission*

David I. Schoen (D.C. Bar No. 391408)
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Telephone: (334) 395-6611
Facsimile: (917) 591-7586
Email: dschoen593@aol.com

*Counsel for Defendant American Friends of Bet El Yeshiva*


THE AMERICAN CENTER FOR LAW AND JUSTICE

By: */s/ Jay Alan Sekulow*
*/Signature with Permission*

Jay Alan Sekulow (D.C. Bar No. 496335)
Benjamin P. Sisney (D.C. Bar No. 1044721)
201 Maryland Avenue, N.E.
Washington, D.C. 20002
Email: sekulow@aclj.org
Email : bsisney@aclj.org
Telephone: (202) 546-8890
Facsimile: (202) 546-9309

*Co-Counsel for Defendant Gush Etzion Foundation*